**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA,

      Defendant.

**COMPLAINT**

NATURE OF THE ACTION

      This is an action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*. ("ADEA"), to correct unlawful employment practices in violation of the ADEA and to provide appropriate relief to Debbi D. Potts. As alleged with greater particularity below, Plaintiff U.S. Equal Employment Opportunity Commission ("Plaintiff," "EEOC," or "the Commission") asserts three claims against Defendants CollegeAmerica Denver, Inc., n/k/a Center for Excellence in Higher Education, Inc., d/b/a CollegeAmerica (collectively, "Defendants," "Employers," or "CollegeAmerica"): first, that CollegeAmerica unlawfully discriminated and continues to discriminate against Ms. Potts when in September 2012 it conditioned Ms. Potts' receipt of severance pay or a settlement of bonus wage claims on an overly broad, misleading, and unenforceable agreement that chills and interferes with Ms. Potts'

right to file charges and/or cooperate with the Commission and state Fair Employment Practice Agencies ("FEPAs") in violation of Sections 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4); second, that CollegeAmerica unlawfully discriminated and continues to discriminate against its employees when, since at least 2012 and continuing to this day, CollegeAmerica conditioned and continues to condition employees' receipt of severance benefits and other consideration on overly broad, misleading, and unenforceable Separation and Release Agreements that chill and interfere with its employees' rights to file charges and/or cooperate with the Commission and FEPAs and/or assist others pursuing discrimination claims against CollegeAmerica, all in violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4); and third, that CollegeAmerica unlawfully discriminated against Ms. Potts when in March 2013, and in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d), CollegeAmerica filed a lawsuit against Ms. Potts in Colorado state court in retaliation for Ms. Potts filing a charge of discrimination with the EEOC in January 2013 in which she alleged that CollegeAmerica engaged in unlawful age discrimination and retaliation.

## JURISDICTION AND VENUE

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b), which incorporates by reference Section 17 of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 217.

2.   The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3.     Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4.     At all relevant times, Defendant CollegeAmerica Denver, Inc., a Colorado for-profit corporation with headquarters located at 1385 S. Colorado Boulevard, 5th Floor, Denver, Colorado 80222, and/or its successor-in-interest, Defendant Center for Excellence in Higher Education, Inc., d/b/a CollegeAmerica, an Indiana 501(c)(3) non-profit corporation with headquarters located at 4021 South 700 East, Suite 400, Salt Lake City, Utah 84107, and having its registered office at 1385 S. Colorado Boulevard, 5th Floor, Denver, Colorado 80222, have continuously been doing business in the State of Colorado and the City and County of Denver, and have continuously had at least 20 employees.

5.     At all relevant times, CollegeAmerica has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

## STATEMENT OF FACTS

6.     Debbi D. Potts ("Potts"), a resident of the City of Fort Collins, Larimer County, State of Colorado, was employed by CollegeAmerica as Campus Director of its Cheyenne, Wyoming, campus from January 9, 2009, until her resignation on July 16, 2012.

7. On September 1, 2012, Potts and CollegeAmerica signed a single-page, single-spaced agreement (hereinafter "the Agreement," attached hereto and filed herewith as Exhibit 1) under which Potts received $7,000.

8.

9. Among other things, the Agreement states that "CollegeAmerica Denver, Inc. and all of its related entities agree to … [h]old Debbi Potts harmless for initiating contact with agencies prior to September 1, 2012."

10. The Agreement further states that "Debbi Potts agrees to:"

> 1.) Commencing on September 1, 2012, to refrain from personally (or through the use of any third party) contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance that shall bring harm to CollegeAmerica, Denver Inc. [*sic*] and any of its related companies.
>
> * * *
>
> 3.) To not intentionally with malicious intent (publicly or privately) disparage the reputation of CollegeAmerica, Denver Inc. [*sic*] or any of its related entities.

11. The Agreement does not have a severability clause.

12. On December 1 and 2, 2012, Potts and another former employee of CollegeAmerica, Kenneth Barnhart ("Barnhart"), exchanged e-mails.

13. Upon information and belief, Barnhart provided the e-mails to CollegeAmerica.

14. CollegeAmerica's General Counsel sent a letter to Potts, dated January 11, 2013, quoting the e-mails, characterizing the e-mails as a violation of the non-disparagement clause of the Agreement, and demanding return of the $7,000 payment.

15. On January 25, 2013, Potts filed with the EEOC the first of three charges of discrimination against CollegeAmerica.

16. According to CollegeAmerica's response to Potts' first charge of discrimination, CollegeAmerica received notice of the charge on March 18, 2013.

17. On March 25, 2013, seven days later, CollegeAmerica filed a lawsuit against Potts in County Court, Larimer County, State of Colorado, Case No. F13C31608, Division 4D ("the State Lawsuit"), alleging breach of the non-disparagement clause of the Agreement.

18. On April 8, 2013, Potts filed the second of three charges of discrimination against CollegeAmerica.

19. On August 12, 2013, CollegeAmerica asserted in a filing in the State Lawsuit that Potts "further violat[ed] the contract through her filing of additional administrative claims against the College, including multiple charges with the EEOC."

20. On August 16, 2013, Potts filed a response to CollegeAmerica's August 12, 2013, filing, in which she stated, *inter alia*, that "[t]he Plaintiff [CollegeAmerica] has no legal standing to demand that an employee[,] current or former[,] not file an EEOC claim," and "[t]o do so would constitute a violation of anti-discriminatory laws and statutes." Potts attached to this filing a portion of EEOC Notice No. 915.002 (4/10/97) regarding "Enforcement Guidelines on non-waivable employee rights under Equal Employment Opportunity Commission (EEOC) enforced statutes," which states, in part:

> I. General Statement
>
> An employer may not interfere with the protected right of an employee to file a charge, testify, assist, or participate in any manner in an investigation, hearing, or proceeding under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq*., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*., the Age discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*., or the Equal Pay Act (EPA), 29 U.S.C. § 206(d). These employee rights are non-waivable under the federal civil rights laws.

This position is built on two cornerstones: (a) interference with these protected rights is contrary to public policy; and (b) the anti-retaliation provisions of the civil rights statutes prohibit such conduct.

II.   Background

Some employers attempt to limit an individual's right to file a charge or participate in an EEOC proceeding by requiring him or her to sign an agreement in which s/he relinquishes these statutory rights. Such language may appear in contracts requiring the use of alternative dispute resolution procedures (such as mediation or arbitration), waiver agreements, employee handbooks, employee benefits plant, and "non-compete" agreements. Notwithstanding the format or context of the agreement in which such language might appear, promises not to file a charge or participate in an EEOC proceeding are null and void as a matter of public policy. Agreements extracting such promises from employees may also amount to separate and discrete violations of the anti-retaliation provisions of the civil rights statutes.

21.   On September 29, 2013, CollegeAmerica issued discovery requests to Potts in the State Lawsuit seeking, *inter alia*, the identity of "all GOVERNMENTAL OR REGULATORY AGENCIES with whom [Potts] communicated with in any way RELATING TO or REFERRING TO" CollegeAmerica since the date of the agreement, specifics about all such contacts, and copies of "all DOCUMENTS received from, delivered to, or RELATED TO [Potts'] contacts with any GOVERNMENTAL OR REGULATORY AGENCIES regarding" CollegeAmerica since the date of the agreement (emphasis in original). CollegeAmerica's discovery requests specifically defined the term "GOVERNMENTAL OR REGULATORY AGENCIES" to include, *inter alia*, the "United States Equal Employment Opportunity Commission" and "the Colorado Civil Rights Division."

22.   During a hearing held on December 4, 2013, in the State Lawsuit, CollegeAmerica justified its discovery requests for communications with EEOC by asserting that its lawsuit is broader than the brief factual allegations in the complaint.

23. On December 18, 2013, Potts filed the third of three charges of discrimination against CollegeAmerica.

24. In responding to the charges of discrimination, CollegeAmerica provided EEOC copies of four Separation and Release Agreements it has routinely used as form severance agreements since at least 2012: (a) Separation – Non-ADEA Under 40 (attached hereto and filed herewith as Exhibit 2); (b) Separation – ADEA Age 40 and Over (attached hereto and filed herewith as Exhibit 3; (c) RIF – Non-ADEA Under 40 (attached hereto and filed herewith as Exhibit 4); and (d) RIF – ADEA Age 40 and Over (attached hereto and filed herewith as Exhibit 5).

25. All four Separation and Release Agreements have a provision entitled "Employee's Release of All Claims" that conditions the receipt of severance payments and other consideration on an employee agreeing to:

> irrevocably and unconditionally waive, abandon, [and] release … any and all … rights of any kind that Employee has, or could have had, against Released Parties, under all laws …from the beginning of the world through the Effective Date of this Agreement, whether known or unknown, and whether asserted or unasserted (the "Released Claims"), … [which] include, without limitation … any claims that are in any way related to Employee's employment with the Company or the separation of Employee's employment with the Company; … any claims for discrimination …; and any claims arising under … the Age Discrimination in Employment Act and Older Workers' Benefit Protection Act …

26. In the same entitled provision, all four Separation and Release Agreements provide that "[e]xcept as compelled by law, Employee will not assist any other private person or business in their pursuit of claims against the Company."

27. All four Separation and Release Agreements have a provision entitled "No Claims filed," in which the:

> Employee represents that Employee has not filed any … administrative actions in Employee's name or on behalf of any other person or entity, against the Company or any other Released Party and that Employee is unaware of any … administrative actions filed on Employee's behalf.

28. All four Separation and Release Agreements have a provision entitled "Employee's Continued Cooperation," in which the:

> Employee agrees to cooperate with and assist the Company, as reasonably requested by the Company, with regard to any investigation, administrative action or litigation for which or about which Employee has information.

29. All four Separation and Release Agreements have a provision entitled "Compliance Disclosures," which require the following:

> Employee represents that Employee has disclosed to the Company all matters of non-compliance with regulatory requirements, and that there are no open or pending issues that fail to comply with any regulatory requirements of which Employee is aware. Employee acknowledges that Employee has been encouraged and given a full opportunity to make such disclosures. Attachment A is provided to allow Employee to disclose any matters not previously disclosed. Employee understands and agrees that if there are matters of non-compliance of which Employee is aware, and which Employee has failed to disclose, or for which Employee has failed to take appropriate action to resolve during Employee's employment with the Company, that Employee's misrepresentations will be a breach of this Agreement such that, as discussed below, the Company shall have no further obligation to make Severance Payments, the Company may recover any and all Severance Payments previously made to Employee, and Employee will be liable for the Company's costs and attorneys' fees.

30. Two of the four Separation and Release Agreements – Separation - Non-ADEA Under 40 and Separation - ADEA Age 40 and Over (Exhibits 2 and 3, respectively) – have a provision entitled "Non-Disparagement," in which the "Employee and the Company mutually agree to refrain from making negative or disparaging comments about the other or otherwise taking any action or making any comment that would harm the goodwill of the other."

31. Two of the four Separation and Release Agreements – RIF - Non-ADEA Under 40 and RIF - ADEA Age 40 and Over (Exhibits 4 and 5, respectively) – have a provision entitled "Non-Disparagement," which provides:

> Employee agrees to refrain from making negative or disparaging comments about the Company or otherwise taking any action or making any comment that would harm the goodwill of the Company. In the event Employee makes any comment or takes any action that, in the sole discretion of the Company, harms the goodwill of the Company, then the Company's obligation to make any further Separation Payments shall immediately cease.

32. All four Separation and Release Agreements have severability clauses, entitled "Invalid Provisions."

33. On December 20, 2013, and based on evidence revealed during its investigation of Potts' charges of discrimination, the Commission issued a Letter of Determination (LOD) finding reasonable cause to believe that CollegeAmerica engaged in unlawful employment practices in violation of the ADEA.

34. The Commission attempted to resolve the matter "through informal methods of conciliation, conference, and persuasion," pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b). Such efforts, however, were unsuccessful.

35. On April 4, 2014, EEOC provided CollegeAmerica notice of failed conciliation.

36. All conditions precedent to the filing of this lawsuit have been met.

## FIRST CLAIM FOR RELIEF
[Violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4), by the Agreement of September 1, 2012]

37. EEOC hereby incorporates and re-alleges each and every foregoing paragraph with the same force and effect as if fully set forth herein.

38. Since at least September 1, 2012, the Defendant Employers have engaged and continue to engage in resistance to Potts' full enjoyment of her rights secured by the ADEA. This resistance includes conditioning Potts' receipt of severance pay or a settlement of bonus wage claims on her agreement to the September 1, 2012, agreement which chills and deters the filing of charges of discrimination and interferes with her ability to communicate voluntarily with the EEOC and state FEPAs, and using the agreement to justify interfering with Potts' protected right to file charges or participate in investigations or proceedings conducted by the Commission or state FEPAs, all in violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4).

39. The unlawful employment practices complained of in the paragraphs above deny Potts the full exercise of her rights under the ADEA. Limiting Potts' right to file charges of discrimination and/or participate or cooperate with the EEOC and state FEPAs interferes with the EEOC's and the FEPAs' statutorily assigned responsibility to investigate charges of discrimination.

**SECOND CLAIM FOR RELIEF**
[Violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4),
by Routine Use of Form Separation and Release Agreements]

40. EEOC hereby incorporates and re-alleges each and every foregoing paragraph with the same force and effect as if fully set forth herein.

41. Since at least 2012, the Defendant Employers have engaged and continue to engage in resistance to its employees' full enjoyment of their rights secured by the ADEA. This resistance includes conditioning the receipt of severance benefits and other consideration on agreeing to one or more Separation and Release Agreements that include provisions that chill and deter the filing of charges of discrimination and may interfere with employees' ability to

communicate voluntarily with the EEOC and FEPAs, and using the agreements to justify interfering with employees' protected right to file charges or participate in investigations or proceedings conducted by the Commission or FEPAs, all in violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4).

42. The unlawful employment practices complained of in the paragraphs above deny employees the full exercise of their rights under the ADEA. Limiting employees' right to file charges of discrimination and/or participate or cooperate with the EEOC and state FEPAs interferes with the EEOC's and the FEPAs' statutorily assigned responsibility to investigate charges of discrimination.

## THIRD CLAIM FOR RELIEF
[Retaliation in Violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d)]

43. EEOC hereby incorporates and re-alleges each and every foregoing paragraph with the same force and effect as if fully set forth herein.

44. Potts engaged in conduct protected by the ADEA when she opposed practices made unlawful by the ADEA and/or when she filed charges of discrimination with the EEOC and the FEPAs on January 25, 2013, April 8, 2013, and December 18, 2013, and/or when she testified, assisted, or participated in any manner in an investigation under the ADEA.

45. The Defendant Employers engaged in unlawful employment practices in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d), when they filed the State Lawsuit against Potts in retaliation for her protected conduct.

46. As a result of the retaliation, Potts suffered harm, including but not limited to attorney's fees and costs.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining the Defendant Employers, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from:

(1) engaging in resistance to Potts' right to file charges of discrimination and participate and cooperate in investigations by the EEOC and the state FEPAs, including but not limited to (a) the entry of a declaratory judgment that the September 1, 2012, agreement was and is void *ab initio* as against public policy and was and is therefore unlawful, invalid, and unenforceable in its entirety, or alternatively, the entry of a declaratory judgment that the offending provisions of the September 1, 2012, agreement were and are void *ab initio* as against public policy and are therefore unlawful, invalid, and unenforceable; and (b) enjoining the Defendant Employers from using the September 1, 2012, agreement (or any substantially equivalent agreement) or from prohibiting Potts from filing charges with or cooperating with the EEOC or state FEPAs;

(2) engaging in resistance to employees' right to file charges of discrimination and to participate and cooperate in investigations by the EEOC and the state FEPAs, including but not limited to (a) the entry of a declaratory judgment that the offending provisions of the form Separation and Release Agreements were and are void *ab initio* as against public policy and were and are therefore unlawful, invalid, and unenforceable, and (b) enjoining the Defendant Employers from

      using the current versions of the form Separation and Release Agreements (or any substantially equivalent agreements) or from prohibiting employees from filing charges with or cooperating with the EEOC or state FEPAs; and

    (3) engaging in unlawful retaliatory practices against Potts for her conduct protected under the ADEA.

  B. Order Defendant Employers to reform their form Separation and Release Agreements so as to conform with the provisions of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4), both as to former and current employees who are subject to such agreements and any future such agreements.

  C. Order Defendant Employers to institute and carry out policies, practices and programs that provide for the full exercise of the right to file charges and participate and cooperate with the EEOC and state FEPAs, including but not limited to corrective communications with the Defendant Employers' workforce informing all employees that they retain the right to file charges of discrimination and to initiate and to respond to communications with the EEOC and state FEPAs and the addition of the same language to the Defendant Employers' anti-discrimination policies and procedures; and training for the Defendant Employers' human resources, management, supervisory personnel, and attorneys who write, negotiate, and/or execute separation agreements, on the subject of the rights of employees and former employees to file charges of discrimination and communicate with the EEOC and state FEPAs.

D.  Provide 300 days to file a charge of discrimination with the EEOC and state FEPAs for any former employee who was or is subject to any of the Separation and Release Agreements described in this Complaint (or any substantially equivalent agreement).

E.  Grant such further relief as the Court deems necessary and proper in the public interest.

F.  Award the Commission its costs of this action.

DATED: April 30, 2014.

        Respectfully submitted,

        P. DAVID LOPEZ
        General Counsel

        GWENDOLYN REAMS
        Associate General Counsel

        EQUAL EMPLOYMENT
          OPPORTUNITY COMMISSION
        131 M Street N.E., 5TH Floor
        Washington, D.C.  20507-0004

        MARY JO O'NEILL
        Regional Attorney
        Phoenix District Office

        RITA BYRNES KITTLE
        Supervisory Trial Attorney

        /s/ D. Andrew Winston
        Senior Trial Attorney
        Telephone:  303.866.1361
        E-Mail:  andrew.winston@eeoc.gov

        EQUAL EMPLOYMENT
          OPPORTUNITY COMMISSION
        Denver Field Office
        303 East 17th Avenue, Suite 410
        Denver, Colorado  80203

**PLEASE NOTE:**

**For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys.  Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.**