IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-CV-01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA,

      Defendant.

---

## DEFENDANT'S MOTION TO DISMISS COMPLAINT

---

Defendant CollegeAmerica Denver, Inc. (the "College"), by and through counsel, moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff Equal Employment Opportunity Commission's ("EEOC") Complaint.

## <u>INTRODUCTION</u>

This case is not about age discrimination. It is about a one-page agreement that Debbi Potts negotiated with the College six weeks <u>after</u> she voluntarily quit her job there ("Agreement"). And it is about Ms. Potts' effort to manipulate the legal process to avoid her obligations under that Agreement.

The Agreement, dated September 1, 2012, resolved state administrative claims Ms. Potts asserted after she left the College and which the College disputed. In it, the College agreed to pay $7,000 and support Ms. Potts' unemployment claim in exchange for, inter alia, Ms. Potts' agreement not to "intentionally and with malicious intent . . . disparage the reputation of"

Defendant. (Ex. 1 to Compl. (Doc. 1-1); Ex. 1 to Mot.[1]) The agreement is not a severance or separation agreement and has nothing to do with severance.

In December 2012, Ms. Potts violated the non-disparagement clause. The College, in a letter dated January 11, 2013, notified her that she was in breach and must pay back the money or the College would file suit for breach of contract. (*See* Compl. ¶ 14; Ex. 2.) Two weeks later, Ms. Potts responded by filing with the EEOC an unfounded charge of age discrimination that alleged her severance package was less favorable than those given to younger workers. Of course, since she quit and did not receive severance, this was a baseless charge.

After the College and Ms. Potts had litigated the breach of contract suit in Larimer County Court for nine months, she filed another charge of discrimination with the EEOC, alleging for the first time that the contract lawsuit was filed in retaliation for her discrimination charge. Two days later, without even waiting for the College's response, the EEOC issued a determination finding reasonable cause to believe that the College retaliated against Ms. Potts. (*See* Compl. ¶ 23, 33.) The College requested and proceeded to conciliation with the EEOC on Ms. Potts' allegations. That conciliation was unsuccessful. Less than a week before the trial in the breach of contract lawsuit, the EEOC filed this action.

The EEOC asserts three causes of action: (1) that the Agreement be declared an invalid waiver of Ms. Potts' age discrimination claims in violation of 29 U.S.C. § 626(f) ("First Claim"), (2) that the College's form severance agreements (which Ms. Potts never received) be found to

---

[1] All exhibits cited herein are authenticated by and referred to in the Declaration of Matthew Gerber ("Gerber Decl."), which is also attached to this Motion.

violate the same section ("Second Claim"), and (3) that the lawsuit constituted improper

retaliation ("Third Claim"). All three causes of action should be dismissed.

- The Court lacks jurisdiction to hear the First Claim because there is no controversy and any controversy is moot; the College does not claim and has not claimed that the Agreement included a waiver of rights to bring an age discrimination claim. Additionally, the Claim fails as a matter of law because there is no cause of action for violation of Section 626(f). *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir. 1999).

- The Court lacks jurisdiction to hear the Second Claim because the EEOC did not specifically raise it or engage in conciliation on it, thereby failing to meet its jurisdictional prerequisites of notice and conciliation. *See EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007). Additionally, and as with the First Claim, this Claim fails because there is no cause of action for violation of Section 626(f).

- The Third Claim, alleging retaliation, fails as a matter of law because under the facts set forth in the Complaint, the allegedly retaliatory activity began <u>before</u> Ms. Potts filed her first charge with the EEOC. Thus, there is no causal connection between the protected activity and the adverse action. *See, e.g.*, *Burden v. Isonics Corp.*, No. 09-CV-01028-CMA-MJW, 2009 WL 3367071, at *7 (D. Colo. Oct. 15, 2009).

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... i

TABLE OF CONTENTS .............................................................................................. iv

TABLE OF AUTHORITIES ........................................................................................ v

LIST OF EXHIBITS ................................................................................................... vii

LEGAL STANDARD ................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.     THE FIRST CLAIM PRESENTS NO CASE OR CONTROVERSY, AND EVEN
       IF DID, IT DOES NOT CONSTITUTE AN INDEPENDENT CAUSE OF
       ACTION ............................................................................................................... 2

       A.     The Court Lacks Subject Matter Jurisdiction over the First Claim ....................... 2

       B.     The First Claim Fails as a Matter of Law ............................................................. 4

II.    THE SECOND CLAIM SHOULD BE DISMISSED BECAUSE THE EEOC
       FAILED TO GIVE NOTICE AND ENGAGE IN CONCILIATION ON THE
       SPECIFIC CLAIM ASSERTED, AND THE CLAIM DOES NOT CONSTITUTE
       AN INDEPENDENT CAUSE OF ACTION ....................................................... 5

       A.     The EEOC Failed to Conciliate and Give Notice. ................................................. 5

       B.     The Second Claim Also Fails as a Matter of Law ................................................. 9

III.   THE THIRD CLAIM SHOULD BE DISMISSED BECAUSE THERE WAS NO
       RETALIATION - THE ADVERSE EMPLOYMENT ACTION HAPPENED
       BEFORE THE PROTECTED ACTIVITY ...................................................... 10

CONCLUSION ............................................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
    300 U.S. 227 (1937) ............................................................................................... 1, 3

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am., Div. 998 v. Wisconsin*
    *Employment Relations Bd.*,
    340 U.S. 416 (1951) ...................................................................................................... 1

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 1

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 1

*Burden v. Isonics Corp.*,
    No. 09-CV-01028-CMA-MJW, 2009 WL 3367071 (D. Colo. Oct. 15, 2009) ................ passim

*City Ctr. W., LP v. Am. Modern Home Ins. Co.*,
    749 F.3d 912 (10th Cir. 2014) ...................................................................................... 4

*Columbian Fin. Corp. v. BancInsure, Inc.*,
    650 F.3d 1372 (10th Cir. 2011) .................................................................................... 3

*Dunlop v. Resource Sciences Corp.*,
    410 F. Supp. 836 (N.D. Okla. 1976) ......................................................................... 6, 9

*EEOC v. Outback Steakhouse of Fla., Inc.*,
    520 F. Supp. 2d 1250 (D. Colo. 2007) ............................................................ iii, 6, 8, 9

*Genberg v. Porter*,
    935 F. Supp. 2d 1094 (D. Colo. 2013) ......................................................................... 2

*Hull v. Colo. Bd. of Governors of Colo. St. Univ. System*,
    805 F. Supp. 2d 1094 (D. Colo. 2011) ......................................................................... 1

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) .................................................................................... 11

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ............................................................................... 2, 12

*Marshall v. Sun Oil Co. of Pennsylvania*,
    592 F.2d 563 (10th Cir. 1979) ............................................................................... 5, 6, 8

*Timmerman v. U.S. Bank, N.A.*,
    483 F.3d 1106 (10th Cir. 2007) .................................................................................. 11

*U.S. v. Wilson*,
    244 F.3d 1208 (10th Cir. 2001) .................................................................................... 1

*Whitehead v. Oklahoma Gas & Elec. Co.*,
    187 F.3d 1184 (10th Cir. 1999) ............................................................................. passim

**STATUTES**

29 U.S.C. § 626(b) ............................................................................................................ 7

29 U.S.C. § 626(f) ...................................................................................................... passim

Article III of the U.S. Constitution ................................................................................... 1

**RULES**

Federal Rules of Civil Procedure 12(b) ............................................................................ passim

Federal Rules of Civil Procedure 12(h) .................................................................................... 1

## <u>LIST OF EXHIBITS</u>

       The Declaration of Matthew Gerber in Support of CollegeAmerica's Motion to Dismiss, dated June 27, 2014, is attached hereto, and contains citations to each of the following exhibits, which are also attached:

1.     Agreement, September 1, 2012.

2.     Letter from Gerber to Potts, January 11, 2013,
    re: Breach of agreement dated September 1, 2012.

3.     Letter from Gerber to Quintana, May 3, 2013,
    re: Debbi Potts v. CollegeAmerica/Center for Excellence in Higher Education,
    EEOC Charge No. 32K-2013-00047.

4.     Letter from Gerber to Quintana, May 3, 2013,
    re: Debbi Potts v. CollegeAmerica/Center for Excellence in Higher Education,
    EEOC Charge No. 846-2013-18672.

5.     Determination in matter of EEOC and Debbi P. Potts v. CollegeAmerica,
    December 20, 2013.

6.     Letter from Werge to Potts, January 7, 2014,
    re: CollegeAmerica v. Debbi Potts, Larimer County Court, Case No. F13C31608.

7.     Letter from Martin to Sienko, January 10, 2014,
    re: EEOC and Debbi Potts v. CollegeAmerica.

8.     Amended Complaint, College America v. Potts, Case No. F13C31608,
    Feb. 4, 2014.

9.     Letter from Sienko to Martin and Werge, April 4, 2014,
    re: Debbi P. Potts v. CollegeAmerica.

## **LEGAL STANDARD**

The College seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

Article III of the U.S. Constitution provides that federal courts only have subject matter

jurisdiction over "cases and controversies." *U.S. v. Wilson*, 244 F.3d 1208, 1213 (10th Cir.

2001). "A justiciable controversy is thus distinguished from a difference or dispute of a

hypothetical or abstract character; from one that is academic or moot." *Aetna Life Ins. Co. of*

*Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). An action for a declaratory judgment

"must be a real and substantial controversy admitting of specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law would be upon a

hypothetical state of facts." *Id*. Likewise, federal courts are "without power to decide moot

questions or to give advisory opinions which cannot affect the rights of the litigants in the case

before it." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am., Div. 998 v.*

*Wisconsin Employment Relations Bd*., 340 U.S. 416, 418 (1951). "If the court determines at any

time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P.

12(h)(3).

Under Rule 12(b)(6), a complaint fails to state a claim unless it "contain[s] sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "[A] complaint still must contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory." *Hull v. Colo.*

*Bd. of Governors of Colo. St. Univ. System*, 805 F. Supp. 2d 1094, 1102 (D. Colo. 2011).

Conclusory allegations, however, must be disregarded, and "the remaining, factual allegations

[must] plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

<u>**ARGUMENT**</u>

**I.** **THE FIRST CLAIM PRESENTS NO CASE OR CONTROVERSY, AND EVEN IF DID, IT DOES NOT CONSTITUTE AN INDEPENDENT CAUSE OF ACTION**

**A.** **The Court Lacks Subject Matter Jurisdiction over the First Claim**

In the First Claim, the EEOC alleges that the Agreement between Ms. Potts and the College violates the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f), a statute that "only sets out the requirements for a waiver of ADEA claims." *Burden*, 2009 WL 3367071 at *7 (citing *Whitehead*, 187 F.3d at 1191). The EEOC seeks a declaration that the Agreement is an invalid waiver of Ms. Potts' ADEA rights.[2] There is no justiciable controversy regarding the First Claim because the College does not contend that the Agreement contains such a waiver, much less that Ms. Potts waived her ADEA rights.

The College did not assert the existence of such a waiver in its response to Ms. Potts' first charge of discrimination. (*See* Ex. 3 (College's First Response); Gerber Decl. ¶ 11.)[3] Nor did it assert such a waiver in its response to Ms. Potts' second charge of discrimination. (*See* Ex. 4 (College's Second Response); Gerber Decl. ¶ 11.) Following Ms. Potts' third charge of

---

[2] The relevant provision of the Agreement states that Ms. Potts agrees to "refrain from personally . . . contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance that shall bring harm to" the College. (Ex. 1.) This was never intended to be a waiver of ADEA rights. (*See* College's First Response, Ex. 3 at 3; Gerber Decl. ¶ 11.)

[3] When a defendant makes a factual attack for lack of subject matter jurisdiction, as is the case here, "the Court may consider matters outside the pleadings, and the motion is not converted to a motion for summary judgment." *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1102 (D. Colo. 2013).

discrimination, and the EEOC's issuance of its determination a mere two days later (*see* Ex. 5

(EEOC Determination)), the College went to further lengths to make explicitly clear that no

waiver existed. It wrote to Ms. Potts stating "CollegeAmerica has never asserted and will not

assert at any time in the future that the Agreement constitutes a waiver of age discrimination

claims under the Older Workers Benefit Protection Act." (*See* Ex. 6 (Jan. 7, 2014 Letter).) Three

days later, the College explicitly explained the same to the EEOC:

> The College also has never asserted that the September 1, 2012 agreement
> constitutes a waiver of any rights under the OWBPA or the ADEA. The College
> never asserted such a waiver in either of its responses to Ms. Potts' first two
> EEOC charges, nor is it doing so at this time. The College fully acknowledges
> that the Agreement does not contain a release under the OWBPA/ADEA, nor was
> the Agreement ever intended to waive such a claim (as it was instead intended to
> settle the state administrative claims Ms. Potts brought against the College).

(*See* Ex. 7 (Jan. 10, 2014 Response to EEOC) (internal citation omitted).) Moreover, the College

also explicitly acknowledged the same in its amended complaint filed in the state court action,

stating "Plaintiff does not assert that [] the parties' agreement constitutes a waiver of

discrimination claims." (*See* Ex. 8 at 1 n.1 (Am. Compl.).)

In sum, the Agreement did not waive Ms. Potts' right to file a charge with the EEOC, and

College never told the EEOC that it did. The question of whether Ms. Potts waived her

discrimination claims was never at issue. Thus, there is no case or controversy regarding the First

Claim. *See Aetna*, 300 U.S. at 240; *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372,

1376 (10th Cir. 2011) (Article III of the Constitution does not allow "federal courts to resolve

abstract issues of law," but instead mandates that "the resolution of the dispute will have

practical consequences to the conduct of the parties."). Moreover, even if there was a justiciable

controversy at some point in the past, it became moot long before the EEOC ever brought suit.

*See City Ctr. W., LP v. Am. Modern Home Ins. Co.*, 749 F.3d 912, 913 (10th Cir. 2014)

("Mooted cases must be dismissed for lack of jurisdiction."). The First Claim is a solution in

search of a problem. The Court lacks jurisdiction over it, and it should be dismissed.

### B.     The First Claim Fails as a Matter of Law

Even if the Court had jurisdiction over the First Claim, it should still be dismissed under

Rule 12(b)(6) because there is no independent claim for a violation of 29 U.S.C. § 626(f), the

OWBPA. This statute provides minimum requirements that a waiver of ADEA rights must meet,

thus providing "a shield for plaintiffs in an ADEA action when an employer invokes the waiver

as an affirmative defense." *Whitehead*, 187 F.3d at 1191. It does not, however, provide the sword

of "an independent cause of action for affirmative relief." *Id*. at 1191-92; *accord Burden*, 2009

WL 3367071 at *7 (the law "does not create an independent cause of action for affirmative relief

other than declaratory or injunctive relief to negate the validity of the waiver, as it applies to an

ADEA claim").

Here, the EEOC improperly seeks to use the OWBPA as an affirmative cause of action.

Notwithstanding that it is not tied to an assertion of the waiver of an ADEA claim, the EEOC

seeks broad injunctive and declaratory relief in the First Claim, including:

> a permanent injunction enjoining the Defendant Employers, their officers, agents,
> servants, employees, attorneys, and all persons in active concert or participation
> with them from . . . engaging in resistance to Potts' right to file charges of
> discrimination and participate and cooperate in investigations by the EEOC and
> the state FEPAs, including but not limited to (a) the entry of a declaratory
> judgment that the September 1, 2012, agreement was and is void ab initio as
> against public policy and was and is therefore unlawful, invalid, and
> unenforceable in its entirety, or alternatively, the entry of a declaratory judgment
> that the offending provisions of the September 1, 2012, agreement were and are
> void ab initio as against public policy and are therefore unlawful, invalid, and
> unenforceable; and (b) enjoining the Defendant Employers from using the
> September 1, 2012, agreement (or any substantially equivalent agreement) or

4

from prohibiting Potts from filing charges with or cooperating with the EEOC or state FEPAs;

(Compl. at 12.) The EEOC does not seek to negate the validity of a waiver for a particular claim under the ADEA. That is because, as discussed in the preceding section, the question of whether the Agreement constituted a waiver is not at issue. The EEOC is instead attempting to convert the OWBPA into an affirmative cause of action, which the Tenth Circuit has rejected. *See Whitehead*, 187 F.3d at 1191; *Burden*, 2009 WL 3367071, at *7. The First Claim fails as a matter of law and should be dismissed.

## II.   THE SECOND CLAIM SHOULD BE DISMISSED BECAUSE THE EEOC FAILED TO GIVE NOTICE AND ENGAGE IN CONCILIATION ON THE SPECIFIC CLAIM ASSERTED, AND THE CLAIM DOES NOT CONSTITUTE AN INDEPENDENT CAUSE OF ACTION

### A.   The EEOC Failed to Conciliate and Give Notice.

The Second Claim seeks a declaration that parts of the College's form severance agreements are in violation of 29 U.S.C. § 626(f). These agreements were provided by the College to the EEOC in order to show the EEOC that the Agreement was nothing like the severance agreements used by the College. However, the EEOC failed to exhaust its pre-suit obligations on these specific allegations, and the Second Claim should therefore be dismissed.

Before bringing an ADEA claim, the EEOC must "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance . . . through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). This is the "primary emphasis" of the ADEA – to use informal "conciliation to resolve disputes." *Marshall v. Sun Oil Co. of Pennsylvania*, 592 F.2d 563, 565-66 (10th Cir. 1979). In fact, the EEOC is required to undertake a "full and exhaustive" conciliation in an effort to resolve matters

"wherever possible without resorting to formal litigation." *Id.* Moreover, the prerequisites that the issue be identified to the defendant and that the EEOC engage in conciliation on the issue are jurisdictional in nature. *See Outback Steakhouse*, 520 F. Supp. 2d at 1268 n.4; *Dunlop v. Resource Sciences Corp.*, 410 F. Supp. 836, 843 (N.D. Okla. 1976).

Here, the EEOC failed to conciliate with the College regarding the specific deficiencies in its form severance agreements before it filed suit. The EEOC even failed to put the College on notice of the specific issues that it had with the form severance agreements. If the EEOC had put the College on notice and conciliated before filing suit, the parties may well have avoided litigation of this issue.

Ms. Potts' charges that formed the basis for this suit were completely based on Ms. Potts' single-paged September 1, 2012 contract, which bears no resemblance to the College's seven to ten page form severance agreements. (*Compare* the Agreement (Ex. 1) *with* the form severance agreements (Exs. 2-5 to Compl. (Docs. 1-2, 1-3, 1-4, and 1-5)).)[4] Similarly, the EEOC's determination, issued a mere two days after Ms. Potts filed her third charge with the EEOC, was entirely based on the Agreement and did not identify the undertaking of any investigation, reasonable cause determination, or any ADEA violation regarding the form severance agreements. (*See* Ex. 5.) The EEOC's determination instead mentioned that it believed that the

---

[4] It is notable that the College's form agreements applicable to employees aged 40 and over include certain restrictions on waivers of ADEA claims mandated by the OWBPA, including rescission periods. (*See* Exs. 3 and 5 to Compl. (Docs. 1-3 at 13, 1-5 at 28).) By contrast, the Agreement did not include this language because it was a settlement agreement entered into after a voluntary resignation, rather than a severance agreement regarding a reduction in force or a mutual separation, and it did not include a waiver of ADEA claims.

Agreement was an "unlawful severance agreement." (*Id.*) This and other language contained in the EEOC's determination suggests that the EEOC mistakenly believed that the Agreement was in fact the College's form severance agreement. (*See id.* (requesting the entry into a consent decree "tolling the charge-filing period for employees who have signed the same or similar severance agreements [and] revision of the form severance agreement").) But the Agreement was not a form, nor was it a severance or separation agreement. (Gerber Decl. ¶¶ 4-5, 20.)

After observing the EEOC's apparent confusion regarding the nature of the Agreement, the College sought to clarify this issue for the EEOC:

> [T]he agreement that Ms. Potts signed on September 1, 2012 ("Agreement") was not in any way based on the College's form severance agreement, but was instead a post-termination settlement agreement regarding two claims Ms. Potts made to the Wyoming Department of Labor after she voluntarily resigned her employment. A copy of the form severance agreements routinely used by the College, and directions concerning their use, are enclosed as Attachment A.

(Ex. 7 at 1 (Jan. 10, 2014 Response to EEOC).) The College thus made good faith efforts to clarify that the Agreement was not a form severance agreement, putting the EEOC on notice that the College had no reason to consider that the EEOC might later suggest that the form agreements themselves were unlawful. The EEOC never responded to this clarification and never indicated it disagreed in any way with the College's explanation as to why the form severance agreements were irrelevant to this matter.

The College requested that the EEOC meet in-person to conciliate Ms. Potts' charges. (*Id.* at 3; Gerber Decl. ¶ 16.) This meeting took place at the EEOC's office in Denver on March 25, 2014. (Gerber Decl. ¶ 16.) Ms. Potts and representatives from the EEOC and the College attended the meeting. (*Id.*) Although back and forth negotiations regarding Ms. Potts' charges related to the Agreement and state court lawsuit took place, the EEOC did not identify specific

concerns with the content of the College's form severance agreements or raise the issues that form the basis of the Second Claim. (*Id.* ¶ 17-18.) Rather the negotiations related squarely to Ms. Potts, the Agreement, and the state court lawsuit. (*Id.*)

Following the meeting, the EEOC sent a letter regarding conciliation. With specific reference to the three charges filed by Ms. Potts with the EEOC, it stated that the EEOC "has determined that efforts to conciliate these charges, as required by the Age Discrimination in Employment Act of 1967, as amended, have been unsuccessful . . . [and] we are at this time reviewing these cases for possible litigation." (Ex. 9 (Apr. 4, 2014 EEOC Letter) (emphasis added).) This letter referenced only Ms. Potts' charges. It made no mention of form severance agreements, nor any suggestion of the existence of claims outside of Ms. Potts' charges.

It was not until the College received the Complaint in this case that the College learned of specific issues that the EEOC was raising regarding the form severance agreements. (Gerber Decl. ¶ 21.) The EEOC had a duty to put the College on notice of specific additional claims outside of Ms. Potts' charges of discrimination. It did not do so regarding the form severance agreements. It also failed to conciliate that issue. Instead, the EEOC simply filed suit, ignoring the primary emphasis of the ADEA – for the EEOC to use "full and exhaustive" conciliation to resolve claims without resorting to formal litigation. *Marshall*, 592 F.2d at 566.

Where the EEOC makes a "significant effort" at conciliating a claim, but "the district court finds that further conciliation efforts are required," it is proper to stay the proceedings to allow the EEOC and the employer to continue informal conciliation. *Id.* However, where the EEOC fails to conciliate or fails to put a defendant on notice of a claim, dismissal is the appropriate remedy. *See Outback Steak House*, 520 F. Supp. 2d at 1267; *Dunlop*, 410 F. Supp. at

843. "It is, after all, the EEOC's duty to put [d]efendants on notice of the scope of the charges against them in order to give every incentive and allowance for settlement of the claims prior to filing suit in court." *Outback Steak House*, 520 F. Supp. 2d at 1267. Had the EEOC conciliated here, this claim may well have been resolved without court involvement. However, because the EEOC failed to conciliate regarding the form severance agreements and failed put the College on notice "of the potential legal claims against them," the Court lacks jurisdiction over the Second Claim, and it must be dismissed. *Id.* at 1268; *Dunlop*, 410 F. Supp. at 843.

> **B.   The Second Claim Also Fails as a Matter of Law**

For the same reasons set forth above in Section I.B, even if the EEOC had not failed to conciliate and put the College on notice of the Second Claim, it should still be dismissed under Rule 12(b)(6) because there is no independent claim for a violation of the OWBPA. *Whitehead*, 187 F.3d at 1191; *Burden*, 2009 WL 3367071 at *7.

It is undisputed that Ms. Potts did not receive any of the form severance agreements referenced in the Second Claim. The EEOC is seeking nothing more than an "independent cause of action for affirmative relief" regarding these form severance agreements. In fact, the EEOC seeks even broader injunctive and declaratory relief in the Second Claim than it does in the First Claim, including:

> a permanent injunction enjoining the Defendant Employers, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from . . . engaging in resistance to employees' right to file charges of discrimination and to participate and cooperate in investigations by the EEOC and the state FEPAs, including but not limited to (a) the entry of a declaratory judgment that the offending provisions of the form Separation and Release Agreements were and are void ab initio as against public policy and were and are therefore unlawful, invalid, and unenforceable, and (b) enjoining the Defendant Employers from using the current versions of the form Separation and Release Agreements (or any substantially equivalent agreements) or from prohibiting

employees from filing charges with or cooperating with the EEOC or state FEPAs.

(Compl. at 12.) The EEOC also asks the Court to:

Order Defendant Employers to reform their form Separation and Release Agreements so as to conform with the provisions of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4), both as to former and current employees who are subject to such agreements and any future such agreements.

(*Id.*) [5] As with the First Claim, the EEOC is again attempting to convert the OWBPA into

an affirmative cause of action, which the Tenth Circuit has rejected. *See Whitehead*, 187

F.3d at 1191; *Burden*, 2009 WL 3367071, at *7. The Claim fails and should be dismissed.

## III.   THE THIRD CLAIM SHOULD BE DISMISSED BECAUSE THERE WAS NO RETALIATION - THE ADVERSE EMPLOYMENT ACTION HAPPENED BEFORE THE PROTECTED ACTIVITY

The Third Claim asserts that the College retaliated against Ms. Potts by suing her for

breach of contract after she filed her first charge with the EEOC. According to Plaintiff, the

breach of contract suit was retaliatory for Ms. Potts' protected activity of filing a charge. The

problem, however, is that even the Complaint acknowledges that the College told Ms. Potts two

weeks <u>before</u> she filed her charge with the EEOC that she had breached the Agreement and that

the College would sue her.

There are three essential elements to a retaliation claim: "(1) that the plaintiff engaged in

protected activity, (2) that the plaintiff suffered an adverse employment action, and (3) that a

causal connection exists between the protected activity and the adverse action." *Burden*, 2009

---

[5] The College certainly does not agree that its form severance agreements violate the law.

WL 3367071, at *1 (citing *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122-23 (10th Cir.

2007). Here, the facts cannot establish the third element.

The Complaint sets forth the following timeline:

- Ms. Potts resigned on July 16, 2012. (Compl. ¶ 6.)

- Ms. Potts and the College entered into the Agreement, in which Ms. Potts promised to not "(publicly or privately) disparage the reputation" of the College, and Ms. Potts received $7,000. (*Id.* ¶¶ 7, 10.)

- On December 1 and 2, 2012, Potts and another former employee of the College, Kenneth Barnhart ("Barnhart"), exchanged e-mails. (*Id.* ¶ 12.)

- On January 11, 2013, the College sent a letter to Ms. Potts, identifying the content of the e-mails as a violation of the non-disparagement clause, and unequivocally stating: "If you do not return the $7,000.00 within 30 days from the date of this letter, the college will proceed to file claims for breach of contract, defamation, and other causes of action." (*Id.* ¶ 14; Ex. 2.[6])

- On January 25, 2013, Potts filed with the EEOC her first charge of discrimination against the College. (Compl. ¶ 15.)

This timeline clearly shows that the College, in no uncertain terms, told Ms. Potts on

January 11, 2013 that it was going to sue her for breach of the non-disparagement clause if she

did not return the money she received under the Agreement. This was two weeks <u>before</u> Ms.

Potts engaged in alleged protected activity by filing a charge with the EEOC. "Logic dictates that

the defendant could not have been motivated to take an adverse action as a result of something

that happened after the alleged adverse action was taken." *Burden*, 2009 WL 3367071, at *6.

---

[6] On a Rule 12(b)(6) motion, "[i]n addition to the complaint, the court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Plaintiff's Complaint explicitly refers to the January 11, 2013 letter, which is central to the issues in this case because it shows the first instance in which the College took action against Ms. Potts for her violation of the Agreement.

Without the requisite causal connection between the alleged protected activity and the adverse action, the Third Claim of the Complaint fails to state a claim for retaliation. *Id.*

The fact that the College filed the actual breach of contract lawsuit after Ms. Potts' discrimination charge cannot change the outcome. The College told Ms. Potts on January 11 that it would give her 30 days to return the $7,000 or it would sue her for breach of contract. Potts refused to return the $7,000, and the College, as promised, filed suit for "breach of the non-disparagement clause of the Agreement" on March 25, 2013. (Compl. ¶ 17.) The Complaint here summarily concludes that the suit was filed "in retaliation" (*id.* ¶ 45), but does not plausibly suggest that the suit was filed for any purpose other than "breach of the non-disparagement clause" and the reasons set forth in the January 11, 2013 letter. Given the undisputed facts, the bare allegation in the Complaint is not enough. *See Khalik*, 671 F.3d at 1191 (stating that conclusory allegations must be disregarded, and "the remaining, factual allegations [must] plausibly suggest the defendant is liable.") The Third Claim should be dismissed.

## CONCLUSION

For these reasons, Defendant respectfully requests entry of an order dismissing this case in its entirety, and for such other relief as the Court deems appropriate.

Respectfully submitted this 30th day of June, 2014.

*s/ Craig R. May*
Raymond W. Martin
Craig R. May
Thomas E.M. Werge
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303-244-1800
Facsimile: 303-244-1879

martin@wtotrial.com
may@wtotrial.com
werge@wtotrial.com
Attorneys for CollegeAmerica

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2014, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following e-

mail addresses:

On behalf of Plaintiff EEOC:

- **D. Andrew Winston**
  andrew.winston@eeoc.gov
- **Rita Byrnes Kittle**
  rita.kittle@eeoc.gov

On behalf of Defendant CollegeAmerica:

- **Raymond W. Martin**
  martin@wtotrial.com
- **Craig R. May**
  may@wtotrial.com
- **Thomas E.M. Werge**
  werge@wtotrial.com

s/ *Kimberlee Prechodko*
Kimberlee Prechodko