**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv- 01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA,

      Defendant.

---

**PLAINTIFF EEOC'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF 6]**

---

      In this age discrimination case, Defendant CollegeAmerica ("CollegeAmerica") entered

into an agreement with Charging Party Debbi D. Potts ("Potts"), a former employee, on

September 1, 2012. This agreement chilled and interfered with her right to file charges of

discrimination or voluntarily cooperate in investigations or proceedings conducted by the

Plaintiff Equal Employment Opportunity Commission ("EEOC," "Commission," or "agency")

and/or state Fair Employment Practice Agencies ("FEPAs") and obstructed the EEOC's and

FEPAs' ability to enforce the Age Discrimination in Employment Act of 1968, as amended

("ADEA"), all in violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4). This is the

First Claim in this enforcement action filed by the EEOC on behalf of the public interest in the

enforcement of the ADEA, for which the EEOC seeks declaratory and injunctive relief.

[Complaint at ¶¶ 6-11, 37-39, and pp. 12-14 (ECF 1); ECF 1-1.]

Since at least 2012, the CollegeAmerica routinely used form Separation and Release Agreements that similarly chill and interfere with employees' rights to file charges and cooperate with the EEOC and/or FEPAs and obstruct the EEOC's and FEPAs' ability to enforce the ADEA, also in violation of 29 U.S.C. § 626(f)(4). This is the Second Claim in this public enforcement action, which also seeks declaratory and injunctive relief. [*Id*. at ¶¶ 24-32, 40-42, and pp. 12-14; ECF 1-2, 1-3, 1-4, 1-5.]

On March 25, 2013, the CollegeAmerica engaged in post-employment retaliation against Potts in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d), by filing a lawsuit in state court against Potts, seven days after CollegeAmerica received notice that Potts had filed her first of three charges of discrimination with the EEOC against the CollegeAmerica alleging violations of the ADEA.[1] This is the Third Claim in this public enforcement action. [Complaint at ¶¶ 12-23, 43-46, and pp. 12-14 (ECF 1); ECF 1-1.]

Pursuant to Rule 12(b)(1) and (6), CollegeAmerica seeks to dismiss the EEOC's lawsuit for lack of subject matter jurisdiction and for failure to state claims upon which relief can be granted. [Motion to Dismiss ("Motion") (ECF 6)]. *See* Fed. R. Civ. P. 12(b)(1) and (6). For all of the reasons discussed in this Response in Opposition to Defendant's Motion to Dismiss Complaint ("Response"), CollegeAmerica's Motion is meritless and should be denied in its entirety.

---

[1] CollegeAmerica's state court lawsuit against Potts is on-going but currently in abeyance, pending the outcome of this public enforcement action.

<u>**BACKGROUND**</u>

**I. THE COMMISSION HAS INDEPENDENT AND BROAD ADEA INVESTIGATIVE AND ENFORCEMENT AUTHORITY.**

The Commission's position is enhanced by its independent and comprehensive investigative and enforcement authority under the ADEA, as conferred by Congress and judicial precedent. As discussed below, the EEOC's authority complements and supports its positions concerning all three claims asserted by the agency.

The EEOC is the federal agency created and charged by Congress with the administration and enforcement of federal employment discrimination laws, including the ADEA.[2] *See* 29 U.S.C. §§ 621, *et seq*. "Although the EEOC can secure specific relief … on behalf of discrimination victims, the agency is guided by 'the overriding public interest in equal employment opportunity.'" *Gen'l. Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 326 (1980) (quoting 118 Cong. Rec. 4941 (1972)). "When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Gen'l. Tel. Co*., 446 U.S. at 326. "[T]he EEOC is not merely a proxy for the victims of discrimination." *Id*. "The EEOC exists to advance the public interest in preventing and remedying employment discrimination." *Id*. at 331. *See also EEOC v. Waffle House*, 534 U.S. 279, 296 (2002).

"The EEOC's primary role is that of a law enforcement agency." *In re Bemis Co., Inc.*, 279 F.3d 419, 421 (7th Cir. 2002). To enforce the ADEA, the Commission relies principally on

---

[2]  Originally the U.S. Department of Labor, which also is charged with enforcing the Fair Labor Standards Act, maintained enforcement and regulatory authority over the ADEA. *See* Pub. L. No. 90-202, § 7; 81 Stat. 602. Effective January 1, 1979, all functions vested by the ADEA in the Secretary of Labor were transferred to the EEOC pursuant to Reorganization Plan No. 1 of 1978, § 2, 43 F.R. 19807, 92 Stat. 3781, and § 1-101 of Executive Order No. 12106, December 28, 1978, 44 F.R. 1053.

charges and information provided voluntarily by private individuals. *See* 29 U.S.C. § 626(a), (b), (d). The filing of a charge is not a pre-requisite to an EEOC investigation. The EEOC has authority under Section 7 of the ADEA to initiate investigations on its own. 29 U.S.C. § 626; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991); 29 C.F.R. §§ 1626.4, 1626.13. Nor is a discrimination charge a pre-requisite for the Commission to initiate litigation under the ADEA. *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) (EEOC has standing to seek ADEA relief for partners who did not file charges with agency). When the ADEA has been violated, the EEOC may bring an action in the public interest to eliminate the discrimination, even without the consent of the aggrieved individuals. *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1536-37 (2d Cir. 1996) (EEOC may bring action even against the wishes of or in the absence of supposed victims). Furthermore, the EEOC may proceed with an ADEA action notwithstanding the employee's agreement to arbitrate claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). Finally, the EEOC may sue state and local governments for violations of the ADEA, while private litigants may not. 29 U.S.C. § 626(b); *Kimel v. Fla. Bd. of Regents, et al.*, 528 U.S. 62, 91 (2000). Thus, the EEOC has independent and broad enforcement authority and responsibility under the ADEA on behalf of the public interest that private individuals do not.

## II. STATEMENT OF RELEVANT FACTS.

The EEOC filed this public enforcement action on April 30, 2014. [Complaint (ECF 1).] As alleged in the Complaint, Potts was Campus Director of CollegeAmerica's Cheyenne, Wyoming, campus from January 9, 2009, until her resignation on July 16, 2012. On September 1, 2012, Potts and CollegeAmerica signed an agreement [ECF 1-1], providing, *inter alia*, that

"Debbi Potts agrees to:"

1.) Commencing on September 1, 2012, to refrain from personally (or through the use of any third party) contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance that shall bring harm to CollegeAmerica, Denver Inc. [*sic*] and any of its related companies.

\* \* \*

3.) To not intentionally with malicious intent (publicly or privately) disparage the reputation of CollegeAmerica, Denver Inc. [*sic*] or any of its related entities.

[Complaint at ¶¶ 6-11 (ECF 1).]

In a letter to Potts, dated January 11, 2013, CollegeAmerica quoted e-mails Potts exchanged with another former employee in December 2012, characterizing the e-mails as a violation of the non-disparagement clause of the agreement, and demanding the return of money CollegeAmerica paid Potts under the agreement. [*Id*. at ¶¶ 11-14.] On January 25, 2013, Potts filed her first charge of discrimination against CollegeAmerica, and CollegeAmerica received notice of the charge on March 18, 2013. [*Id*. at ¶¶ 15, 16.] Seven days later, on March 25, 2013, CollegeAmerica sued Potts in state court for alleged breach of the non-disparagement clause of the Agreement. [*Id*. at ¶17.] Potts filed a second charge of discrimination against CollegeAmerica on April 8, 2013. [*Id*. at ¶ 18.]

On August 12, 2013, CollegeAmerica stated in a pleading in the state court lawsuit that Potts "further violat[ed] the contract through her filing of additional administrative claims against the College, including multiple charges with the EEOC." [*Id*. at ¶ 19.] On August 16, 2013, Potts responded to CollegeAmerica in state court, citing and attaching EEOC Guidance regarding the statutory prohibition of employer interference with employees' rights to file charges, testify, assist, and/or participate in EEOC investigations, hearings, or proceedings. [*Id*.

at ¶ 20.] Nevertheless, on September 29, 2013, CollegeAmerica served discovery requests on Potts seeking details of all contacts with "governmental and regulatory agencies," specifically defined to include the EEOC and the Colorado Civil Rights Division. In a hearing on December 4, 2013, CollegeAmerica justified its discovery requests by asserting its state court lawsuit is broader than the brief factual allegations in its complaint. [*Id*. at ¶¶ 21, 22.] Potts filed her third charge of discrimination against CollegeAmerica on December 18, 2013. [*Id*. at 23.]

During the EEOC's investigation, CollegeAmerica provided EEOC with copies of four Separation and Release Agreements it has routinely used since at least 2012. [*Id*. at ¶¶ 24-32; ECF 1-2, 1-3, 1-4, 1-5.] These agreements contain several provisions that similarly interfere with employees' rights to file charges and voluntarily cooperate with the EEOC. [*Id*.]

On December 20, 2013, the Commission determined there was reasonable cause to believe CollegeAmerica engaged in unlawful employment practices in violation of the ADEA. The Commission attempted to resolve the matter in conciliation but those efforts were unsuccessful. [Complaint at ¶ 33-35 (ECF 1).] All conditions precedent to filing this lawsuit were met. [*Id*. at ¶ 36.]

On April 30, 2014, the EEOC filed this public enforcement action against CollegeAmerica asserting the three claims previously discussed, *supra*. at 1-2. [Complaint, ECF 1.] The EEOC seeks declaratory and injunctive relief, other relief as the Court deems necessary and proper in the public interest, and recovery of the EEOC's costs. [*Id*. at 12-14.] On June 30, 2014, CollegeAmerica filed its Motion to Dismiss. [ECF 6.]

## LEGAL STANDARDS

**I. RULE 12(b)(1).**

CollegeAmerica moves to dismiss EEOC's Complaint under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Fed. R. Civ. P. 12(b)(1) and (6). Under Rule 12(b)(1), dismissal is only appropriate if the Court lacks subject matter jurisdiction over the claims for relief asserted in the complaint. Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir.1974). In considering a motion to dismiss under Rule 12(b)(1), the Court has discretion to consider evidence outside the pleadings. *Holt v. U.S.,* 46 F.3d 1000, 1003 (10th Cir.1995).

**II. RULE 12(b)(6).**

In reviewing a decision on a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo*., 154 F.3d 1124, 1126-27 (10th Cir.1998); Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Id*. at 1127 (quoting *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir.1989)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Burnett v. Mortgage Electronic Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face if the facts alleged allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In this respect, "specific facts are not necessary" so long as the complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (citations omitted). The analysis is "context-specific" and requires the court "to draw on its judicial experience and common sense." *Id.* (citations omitted).

## ARGUMENT

## I. THE FIRST CLAIM PRESENTS A LIVE CASE OR CONTROVERSY UNDER THE ADEA AND STATES A COGNIZABLE CAUSE OF ACTION.

### A. The First Claim Presents a Justiciable Case or Controversy; It is Not Moot.

CollegeAmerica's first argument is that this Court lacks subject matter jurisdiction to hear this case, asserting the Commission's First Claim (which seeks declaratory and injunctive relief) is moot. CollegeAmerica contends this Court lacks jurisdiction because it now asserts the Agreement Potts signed does not constitute a waiver of Potts' age discrimination claims.

### 1. A Case is Not Moot Where a Defendant Voluntarily Ceases its Conduct.

It is axiomatic that a plaintiff must present a live controversy at all stages of federal court litigation, and if anything occurs to eliminate the plaintiff's injury, whether before or while a lawsuit is pending, the case must be dismissed as moot. *See e.g., Dudley-Barton v. Serv. Corp. Intern*, 653 F.3d 1151, 1152 (10th Cir. 2011). Thus, for example, if the parties settle a matter, a live controversy no longer exists. *See e.g., United Airlines, Inc. v. McDonald*, 432 U.S. 385, 400 (1977) (Powell, J., dissenting) ("The settlement of an individual claim typically moots any issues associated with it"). However, one of the major exceptions to the mootness doctrine is where a defendant voluntarily ceases the allegedly improper behavior but is free to resume the behavior at any time. *Knox v. Serv. Employees Intern. Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012)

(citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). In this situation, the Supreme Court has noted, "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Medical Soc'y*, 343 U.S. 326, 333 (1952). Accordingly, "***voluntary cessation of a challenged practice rarely moots a federal case***." *Rivers v. Doar,* 638 F. Supp.2d 333, 337 (E.D.N.Y. 2009) (internal quotation marks and citation omitted, and emphasis supplied); *see also Knox*, 132 S. Ct. at 2287 ("voluntary cessation of challenged conduct does not ordinarily render a case moot").

Where a defendant alleges it has voluntarily ceased the challenged conduct, the case is only deemed moot if (1) there is no reasonable chance the defendant could resume the offending behavior; and (2) interim events have "completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir.2010) (*quoting Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)). The party asserting mootness, CollegeAmerica in this case, bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* at 1115 (internal quotation omitted). Indeed, as this Court has explained, the Court must be "absolutely clear that the allegedly wrong behavior could not reasonably be expected to recur." *Eagle Air Med Corp. v. Martin*, No. 08-cv-00532-LTB-KLM, 2009 WL 651800 at *3 (D. Colo. Mar. 12, 2009) (Babcock, J.) (citation omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) ("a defendant claiming that its voluntary compliance moots a case bears the ***formidable burden*** of showing that it is ***absolutely clear*** the allegedly wrongful behavior could not reasonably be expected to recur") (emphasis supplied).

## 2. <u>There is No Assurance CollegeAmerica Will Not Repeat Its Conduct.</u>

CollegeAmerica has not, and cannot, meet its burden of proving it will not resume the offending behavior. CollegeAmerica's contention that the Commission's First Claim is moot is based on a declaration from its General Counsel attached to its Motion, stating, "[i]t is not our position that the Agreement constitutes a waiver of Ms. Potts' rights under the Age Discrimination in Employment Act." [Gerber Dec. at ¶ 11 (ECF 6-10).] This statement is insufficient to meet CollegeAmerica's "formidable" burden to show it is clear that its conduct will not be repeated.

First, CollegeAmerica's statement is not binding and cannot be judicially enforced. *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir.), *cert. denied*, 501 U.S. 1218 (1991); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F.Supp.2d 1, 48 (S.D.N.Y. 2001). Courts have held that even affidavits that stipulate to ceasing the conduct are insufficient to meet a defendant's burden to establish mootness. *See e.g., Thomas v. Fairway Park Apts., LLC*, No. CIV-11592-D, 2011 WL 5289780 at *2 (W.D. Okla. Nov. 2, 2011) (finding that an affidavit, stating the defendant will not evict the plaintiff, failed to carry defendant's heavy burden to establish mootness); *Upjohn Co. v. Amer. Home Products Corp.*, 598 F.Supp. 550, 555 (S.D.N.Y.1984) (narrowly-drawn affidavits claiming abandonment of allegedly wrongful conduct are insufficient to meet defendant's burden to prove it would not resume the offending conduct).

Second, CollegeAmerica's statement is vague, and it is unclear whether it even covers the scope of the EEOC's claim. CollegeAmerica's statement merely states that it is not the company's position that the Agreement constitutes a waiver of Potts' rights under the ADEA.

But as alleged in the EEOC's First Claim, CollegeAmerica conditioned the payment of $7,000 on Potts' agreement not to file charges with the EEOC or FEPAs, to not participate in any investigations or other proceedings conducted by the EEOC or FEPAs, and to not voluntarily communicate with the EEOC or FEPAs, all in violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4). [Complaint at 9-10 (ECF 1).] CollegeAmerica's statement does not aver that Potts is free to participate in EEOC investigations concerning other individual's charges or that the non-disparagement clause would not apply to any of her communications with the EEOC. A common sense inference is that if CollegeAmerica had intended the Agreement to permit Potts to file EEOC charges, participate in the EEOC investigation of her charge or the charges of other charging parties, or not be subject to a non-disparagement clause, CollegeAmerica would have stated such intention in plain language in the Agreement, rather than engage in a *post-hoc* effort to re-write the Agreement for purposes of its Motion to Dismiss.

Third, CollegeAmerica has provided no assurances that it will not take a contrary position in the future. CollegeAmerica's statement that it "does not view" the Agreement as a waiver of Potts' rights is not the same as saying that it will ***never*** assert that the Agreement constitutes a waiver of Potts' ADEA claims or waives her otherwise unfettered right to file charges of discrimination and cooperate in any proceeding conducted by the EEOC or FEPAs, whether that proceeding is based on a charge filed by Potts or anyone else.

Finally, CollegeAmerica's self-serving statement that "it is not the company's position that the Agreement constitutes a waiver of Ms. Potts' rights" is unworthy of belief. College-America filed a state court lawsuit against Potts a mere seven days after receiving notice that Potts filed a charge of discrimination with the EEOC. [Exhibit 1.] In a pleading in the state court

lawsuit, CollegeAmerica asserted that Potts "violat[ed] the contract through her filing of additional administration claims against the college, including multiple charges with the EEOC." [Exhibit 2.] Thus, it was, in fact, CollegeAmerica's position that the Agreement constituted a waiver of Potts' rights under the ADEA. Likewise, in its Motion in this lawsuit, CollegeAmerica refers to a letter it wrote to Potts after the EEOC issued its determination that CollegeAmerica had discriminated against Potts [ECF 6-6], wherein CollegeAmerica states that it has "never asserted" that the Agreement constituted a waiver of Potts' rights under the ADEA or the Older Workers Benefit Protection Act (" OWBPA"). This is flatly untrue. In fact, in the aforementioned pleading in the state court lawsuit, CollegeAmerica *did* claim that the Agreement waived Potts' right to file a charge with the EEOC when it argued "Potts "violat[ed] the contract through her filing of additional administration claims against the college, including multiple charges with the EEOC." [Ex. 2.] Thus, CollegeAmerica's claim that "the College has never asserted" the Agreement constitutes a waiver of age discrimination claims or any rights under the OWBPA or the ADEA is demonstrably false. Furthermore, CollegeAmerica's self-serving statement in its Motion in this lawsuit that it does not view the Agreement as constituting a waiver of Potts' rights under the ADEA is similarly unbelievable.

        **3. CollegeAmerica's Statement Does Not Eradicate the Effects of Its Actions.**

CollegeAmerica cannot meet the second prong of the test for mootness since its actions have not eradicated the effects of the alleged violation. *Rio Grande Silvery Minnow,* 601 F.3d at 1115. All that CollegeAmerica has stated is that it does not view the Agreement as waiving Potts' rights under the ADEA. Here, however, EEOC is seeking an injunction and declaratory relief that is broader than a mere statement that the Agreement does not waive Potts' rights under

the ADEA. EEOC is seeking a declaratory judgment that two provisions in the Agreement signed by Potts are void *ab initio* as against public policy and therefore are unlawful, invalid, and unenforceable. [Complaint at 12 (ECF 1).] CollegeAmerica has not conceded that it will not seek to enforce these two offending provisions.

Therefore, for all of the foregoing reasons, the First Claim is not moot but, rather, states a live case or controversy. Accordingly, this Court has subject matter jurisdiction. College-America's Motion to Dismiss the EEOC's First Claim pursuant to Rule 12(b)(1) must be denied.

**B. The First Claim States a Claim Upon Which Relief Can Be Granted; It Does Not Fail as a Matter of Law.**

CollegeAmerica contends that even if the Court has subject matter jurisdiction over the EEOC's First Claim (which it does, for the reasons explained in Section I.A. of this Response, *supra*. at 8-13), the Claim should be dismissed under Rule 12(b)(6) because there is no independent claim for a violation of the OWBPA, 29 U.S.C. § 626(f), relying primarily on *Whitehead v. Okla. Gas. & Elec.*, 187 F.3d 1184, 1191 (10th Cir. 1999). [Motion at 4-5 (ECF 6).] In addition, CollegeAmerica repeats its argument from Section I.A. of its Motion that whether the Agreement constitutes a waiver is not at issue, and therefore this claim is moot. [*Id*. at 5.] CollegeAmerica is mistaken, and its reliance upon *Whitehead* is misplaced.

**1. CollegeAmerica Misrepresents the ADEA and *Whitehead*.**

Citing *Whitehead*, 187 F.3d at 1191, CollegeAmerica asserts the OWBPA "only sets out the requirements for a waiver of ADEA claims" and "provides minimum requirements that a waiver of ADEA rights must meet." *Id*. at 2, 4. CollegeAmerica misrepresents both the ADEA and the holding in *Whitehead*.

### a. **<u>The ADEA</u>.**

First, throughout its Motion, CollegeAmerica speaks of the OWBPA as if it were a statute

unto itself. It is not. CollegeAmerica's argument is disingenuous because it does not accurately

recognize and interpret the ADEA. As *Whitehead* recognizes, the OWBPA amended the ADEA.

187 F.3d at 1191. The OWBPA is an integrated part of the ADEA, not a free-standing,

independent statute. *See Mass. v. Bull HN Info. Sys., Inc.*, 16 F.Supp.2d 90, 105 (D. Mass. 1998)

("[a]s an amendment to the ADEA, the OWBPA was introduced into the code not as a free-

standing statute, but as multiple modifications to various existing sections of the ADEA"); *Krane*

*v. Capital One Svcs., Inc.*, 314 F.Supp.2d 589, 605, 607 (E.D. Va. 2004) (the OWBPA "was

integrated into the ADEA;" "regard[ing] the OWBPA … as if it were an independent statute, not

part of the ADEA … does not square with the text of the statute or its legislative history").

Congress did not provide, and the OWBPA amendments to the ADEA do not require, a

separate enforcement mechanism of their own because they are integrated into the ADEA and

are subject to all of the same enforcement mechanisms already built into the ADEA (charge

filing and litigation) for violations of those provisions. *Id*. at 607 ("considering that the OWBPA

was integrated into the ADEA which, in section 626(c), already provided that an aggrieved party

may seek legal or equitable relief in a court of competent jurisdiction to 'effectuate the purposes

of this chapter,' it is not surprising that Congress would have thought it unnecessary to insert that

same language in subsection (f)"); 29 U.S.C. §626(b), (c), and (f).

Second, contrary to CollegeAmerica's assertion, the OWBPA does not "only" set out

minimum requirements for a waiver of ADEA rights or claims. Rather, the OWBPA, as

integrated into the ADEA at 29 U.S.C. § 626(f), amends the ADEA in multiple respects. The

provision CollegeAmerica refers to is the first provision, which states the policy that an individual may not waive any right or claim under the ADEA unless the waiver is knowing and voluntary, and then enumerates the minimum conditions such a waiver must satisfy in order to be considered knowing and voluntary, except as otherwise provided in the second provision. 29 U.S.C. § 626(f)(1). The *fourth* provision, the distinct and specific provision on which the EEOC's First and Second Claims are based, states the policy that waivers may not affect the Commission's rights and responsibilities to enforce the ADEA or be used to justify interfering with the protected rights of employees to file charges or participate in investigations or proceedings conducted by the Commission. 29 U.S.C. § 626(f)(4).

Thus, CollegeAmerica's assertion that the OWBPA "only" sets out minimum requirements for waiver of ADEA rights or claims is incorrect.

### b. *Whitehead*.

CollegeAmerica's portrayal of the holding in *Whitehead* is also erroneous; *Whitehead* does not hold, as CollegeAmerica claims, that the OWBPA "only" sets out minimum requirements for a waiver of ADEA rights or claims. Rather, the ADEA claim at issue in *Whitehead* was premised only on the first provision of the OWBPA amendments to the ADEA, not the fourth provision, on which the EEOC's First and Second Claims are based in this lawsuit. *Whitehead* specifically noted that "the OWBPA … states, ***in relevant part***: 'An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary.... [A] waiver may not be considered knowing and voluntary unless at a minimum' it satisfies certain enumerated requirements," citing 29 U.S.C. § 626(f)(1). 187 F.3d at 1191 (emphasis supplied). Thus, the only part of the OWBPA at issue and discussed by the Tenth Circuit in

*Whitehead* was the first of the four provisions amending the ADEA, 29 USC § 626(f)(1). *Id.*

Therefore, CollegeAmerica reads *Whitehead* too narrowly; the Tenth Circuit did not hold that the OWBPA "only sets out the requirements for a waiver of ADEA claims." In fact, the OWBPA amended the ADEA in other respects, and the provision on which the EEOC's First and Second Claims are based was ***not*** at issue or discussed in *Whitehead*.

CollegeAmerica's misreading of *Whitehead* is not confined to how the OWBPA amends the ADEA. CollegeAmerica further relies on *Whitehead* for the proposition that there is no independent claim for a violation of the OWBPA. [Motion at 4-5 (ECF 6).] CollegeAmerica misinterprets *Whitehead* in this respect, as well.

In *Whitehead*, private plaintiffs principally alleged a violation of the Employee Retirement Income Security Act ("ERISA"). 187 F.3d at 1186-87. In addition, the plaintiffs claimed that releases they signed in exchange for enhanced early retirement benefits, offered as part of a reduction in force, violated the OWBPA.[3] *Id.* Plaintiffs claimed the releases did not provide the required time in which to decide if they wanted to accept or reject the offer; thus, the releases were not knowingly or voluntarily signed. *Id.* at 1191. The *Whitehead* plaintiffs brought no other separate ADEA claim. *Id.* at 1192. Plaintiffs sought negation of the signed releases, credit for all years of service in benefit calculations under the pension plan, and punitive damages. *Id.* at 1191. Thus, as the Tenth Circuit noted, the *Whitehead* plaintiffs alleged a violation of only the first of the four provisions of the OWBPA amending the ADEA. *Id.*; 29 U.S.C. § 626(f)(1). The defendants in *Whitehead* filed motions to dismiss and for summary

---

[3] One plaintiff also asserted a violation of the Veteran's Reemployment Rights Act ("VRRA"), and another plaintiff asserted a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). 187 F.3d at 1188.

judgment.[4] The district court granted the defendants' motions. *Id.* at 1188. The plaintiffs

appealed. *Id.* The Tenth Circuit affirmed the district court.[5] *Id.* at 1193.

With respect to the *Whitehead* plaintiffs' OWBPA claim, the Tenth Circuit noted the

parties agreed that "the OWBPA's establishment of minimum waiver requirements can be a

shield for plaintiffs in an ADEA action when an employer invokes the waiver as an affirmative

defense." *Id.* at 1191; 29 U.S.C. § 626(f)(1). The issue before the Tenth Circuit was "whether the

waiver provisions also are swords that provide plaintiffs with an independent cause of action for

affirmative relief, ***other than declaratory or injunctive relief to negate the validity of the***

***waiver, as it applies to an ADEA claim.***" 187 F.3d at 1191 (emphasis supplied). In other words,

the Tenth Circuit "excluded from the reach of its decision an independent claim by an aggrieved

party for declaratory or injunctive relief to negate the validity of a waiver that offended the

OWBPA" – precisely the claim at issue in this case. *Krane*, 314 F.Supp.2d at 606.

In *Whitehead*, the Tenth Circuit concluded that "[t]he OWBPA does not, by itself,

determine in the first instance whether age discrimination has occurred." *Id.* at 1192. The Court

found that the plaintiffs had not asserted a separate ADEA claim. *Id.* For that reason, the Tenth

Circuit concluded that "the district court properly dismissed Appellants' claim that a violation of

the OWBPA, by itself, establishes age discrimination." *Id.*

Therefore, *Whitehead* does not support CollegeAmerica's position in this action. The

principal claim in *Whitehead* was under ERISA. The foundation of the EEOC's present action is

solely under the ADEA statutory authority, procedures, protections, and remedies. Contrary to

---

[4] The *Whitehead* defendants filed a motion to dismiss the OWBPA and Title VII claims, and a motion for summary judgment on the ERISA and VRRA claims. 187 F.3d 1188.
[5] Plaintiff Whitehead's appeal of her ERISA and Title VII claims was held to be moot and time-barred. 187 F.3d at 1188-90, 1192-93 and fn.10.

CollegeAmerica's assertion, *Whitehead* specifically did ***not*** hold that "an aggrieved party asserting that a waiver is invalid is, under all circumstances, foreclosed from making a claim based on the OWBPA for declaratory or injunctive relief." *Krane*, 314 F.Supp.2d at 606 (citing *Whitehead*, 187 F.3d at 1191-92). In fact, under 29 U.S.C. § 626(f), plaintiffs ***can*** seek declaratory and injunctive relief for a violation of the OWBPA amendments to the ADEA respecting waivers found in § 626(f).[6] *Id.* at 609 (citing *Mass. v. Bull HN Info. Sys., Inc.,* 16 F.Supp.2d 90, 94-95, 105, 106 (D. Mass. 1998), and 143 F.Supp.2d 134, 158 (D. Mass. 2001)). This is the type of claim the EEOC brings and the relief EEOC seeks in the First (and Second) Claim for Relief. [Complaint at 9-14 (ECF 1).]

## 2. *Whitehead* Does Not Apply to The First Claim.

Contrary to CollegeAmerica's assertion [Motion at 4-5 (ECF 6)], *Whitehead* does not bar the EEOC's First Claim. *Whitehead* is distinguishable in a number of important respects.

In *Whitehead*, the plaintiffs were private individuals – former employees – who principally asserted a violation of ERISA, and brought a claim under the first of four provisions of the OWBPA amending the ADEA, but did not assert any other claim under the ADEA, and sought both equitable and monetary relief. 187 F.3d at 1186-87, 1191, 1192; 29 U.S.C. § 626(f)(1). In contrast, in this case, the EEOC – the federal law enforcement agency created and tasked by Congress with enforcement of federal employment discrimination laws, including the ADEA, and possessing independent and broad investigative and enforcement powers and

---

[6] Employees cannot, however, seek money damages for such violations standing alone; to recover money damages, the OWBPA violation claim must be accompanied by a substantive claim of discrimination under the ADEA. *Krane*, 314 F.Supp.2d at 609 (citing *Bull*, 143 F.Supp.2d at 158). In this case, the EEOC also asserts another claim for discrimination under the ADEA; the Third Claim for Relief alleges post-employment retaliation in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d). [Complaint at 11-14 (ECF 1).]

responsibilities not shared by private individuals – filed this public enforcement action to vindicate the public interest in enforcement of the ADEA. In addition, the First Claim alleges a violation of the fourth provision of the OWBPA amendments to the ADEA, regarding the Commission's rights and responsibilities to enforce the ADEA and individuals' rights to file charges and voluntarily cooperate with the EEOC, 29 U.S.C. § 626(f)(4), and for which the EEOC seeks only declaratory and injunctive relief. Moreover, the EEOC asserts another claim under the ADEA; the Third Claim alleges post-employment retaliation in violation of 29 U.S.C. § 623(d) based on CollegeAmerica filing a lawsuit against Potts in state court in retaliation for her having filed a charge of discrimination (and CollegeAmerica's state court lawsuit is based on its Agreement with Potts [ECF 1-1], which the EEOC alleges in its First Claim in this lawsuit violates 29 U.S.C. 626(f)(4)). However, even if the EEOC was not asserting another claim under the ADEA, and as discussed above, *Whitehead* does not preclude, and at least two courts have expressly held, that an independent cause of action can be brought for declaratory and injunctive relief under the OWBPA. *Whitehead*, 187 F.2d at 1191; *Krane*, 314 F.Supp.2d at 606; *Bull*, 16 F.Supp.2d at 94-95, 105, 106. Furthermore, both *Krane* and *Bull* involved claims under the same provision at issue here – 29 U.S.C. § 626(f)(4). *Krane*, 314 F.Supp.2d at 595 (one claim alleged that a tender-back provision in the release had a "chilling effect" on plaintiffs' ability to file age discrimination claims against the defendant); *Bull*, 16 F.Supp.2d at 95, 107 (one claim alleged chilling effect on and interference with filing of complaint or claim with the EEOC). Therefore, *Whitehead* does not apply to this case and does not bar the First Claim.

For all of the foregoing reasons, the EEOC's First Claim states a claim upon which relief can be granted. The First Claim states a cognizable claim and does not fail as a matter of law.

Therefore, CollegeAmerica's Motion to Dismiss the First Claim pursuant to Rule 12(b)(6) should be denied.

## II. EEOC GAVE COLLEGEAMERICA NOTICE OF THE SECOND CLAIM, AND THERE WERE SUFFICIENT EFFORTS TO CONCILIATE THE SECOND CLAIM, WHICH CLAIM STATES A COGNIZABLE CAUSE OF ACTION.

### A. The EEOC Satisfied Both Notice and Conciliation.

CollegeAmerica asserts the EEOC failed to exhaust its alleged jurisdictional pre-suit obligations with respect to its Second Claim by allegedly failing to put CollegeAmerica on notice of the specific concerns EEOC had with CollegeAmerica's form severance agreements, and failing to conciliate over those deficiencies, thus allegedly depriving the Court of jurisdiction and warranting dismissal. [Motion at iii, 5-9 (ECF 6).] For the reasons explained below, College-America is wrong.

#### 1. Failure to Exhaust Administrative Remedies is Not a Question of Subject Matter Jurisdiction Under the Supreme Court's "Bright-Line" Test; The Prerequisites of Notice and Conciliation are Not Jurisdictional.

CollegeAmerica argues that the prerequisites of notice and conciliation are both jurisdictional, citing *EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F.Supp.2d 1250, 1268 n.4 (D. Colo. 2007), and *Dunlop v. Resource Sciences Corp.*, 410 F.Supp. 836, 843 (N.D. Okla. 1976). CollegeAmerica is incorrect.

Title VII contains a conciliation provision essentially identical to that of the ADEA, and interpretations of one provision are useful in cases arising under the other. *Marshall v. Sun Oil Co. of Penn.*, 592 F.2d 563, 566 (10th Cir. 1979) (citing *Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1260 (10th Cir. 1976), *affirmed per curiam by equally divided court*, 434 U.S. 99 (1977), *rehearing denied*, 434 U.S. 1042 (1978)).

In *Arbaugh v. Y&H Corp.*, the U.S. Supreme Court addressed the issue of subject-matter jurisdiction where a plaintiff alleges violations of Title VII. *See generally*, *Arbaugh,* 546 U.S. 500 (2006). Specifically, the question was whether Title VII's restriction limiting the definition of "employer" to employers with "fifteen or more employees" was a jurisdictional condition or merely an element of a Title VII claim. *Id*. at 503. The court held that the restriction was not jurisdictional. *Id*. at 516. In doing so, the court discussed the history and existence of the Commission's broad enforcement authority:

> Congress has broadly authorized the federal courts to exercise subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Title VII surely is a "la[w] of the United States." *Ibid*. In 1964, however, when Title VII was enacted, § 1331's umbrella provision for federal-question jurisdiction contained an amount-in-controversy limitation … *See* § 1331(a) (1964 ed.). Title VII, framed in that light, assured that the amount-in-controversy limitation would not impede an employment-discrimination complainant's access to a federal forum. The Act thus contains its own jurisdiction-conferring provision, which reads:

> "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3).

> Congress amended 28 U.S.C. § 1331 in 1980 to eliminate the amount-in-controversy threshold. *See* Federal Question Jurisdictional Amendments Act of 1980, § 2, 94 Stat. 2369. Since that time, Title VII's own jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3), has served simply to underscore Congress' intention to provide a federal forum for the adjudication of Title VII claims.

*Id*. at 505-06 (footnote omitted). Thus, where a plaintiff brings a Title VII claim, the court has jurisdiction under § 1331 and Title VII's own jurisdictional provision, provided that Title VII limitations such as the fifteen-employee requirement and the need to exhaust administrative remedies are not jurisdictional. *See Id.* at 513.

Similarly, the ADEA is surely a law of the United States. The ADEA defines "employer," in relevant part, as "a person engaged in an industry affecting commerce who has

twenty or more employees for each working day in each of twenty or more calendar weeks in the

current or preceding calendar year," and "any agent of such a person." 29 U.S.C. § 630(b). The

ADEA contains a jurisdiction-conferring provision authorizing actions filed specifically by the

EEOC "in any court of competent jurisdiction." 29 U.S.C. § 626(b), incorporating provisions of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and (c). The ADEA has a separate

jurisdiction-conferring provision authorizing filing of lawsuits by individuals: "Any person

aggrieved may bring a civil action in any court of competent jurisdiction for such legal or

equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 626(c)(1).

The Court, in determining whether such limitations were "jurisdictional," cautioned that

use of the term "jurisdiction" has been "less than meticulous," and that "drive-by jurisdictional

rulings" that confuse or fail to consider the difference between subject-matter jurisdiction and

failure to state a claim "should be accorded no precedential effect." 546 U.S. at 511. Moreover,

the Court was "mindful of the consequences" of its determination. *Id.* It considered the courts'

"independent obligation to determine whether subject-matter jurisdiction exists" and the fact that

"[n]othing in the text of Title VII indicates that Congress intended courts, on their own motion,

to assure that the employee-numerosity requirement is met." *Id.* at 514. The Court then

considered the proper role of judge and jury in determining issues of contested facts. *Id.* In the

end, the Court fashioned a "bright-line rule:"

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count
> as jurisdictional, then courts and litigants will be duly instructed and will not be left to
> wrestle with the issue. … But when Congress does not rank a statutory limitation on
> coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in
> character.

*Id.* at 515-16 (internal citations and quotations omitted). Applying this "bright-line rule," Title

VII's fifteen-employee limit, which appears in a "separate provision" of the statute that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," could not be a limitation on subject-matter jurisdiction. *Id*. at 515-16 (quoting *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 394 (1982)).[7]

Subsequent to *Arbaugh*, the Court held that the mandatory exhaustion requirement in the Prison Reform Litigation Act (PRLA) was subject to an affirmative defense rather than a heightened pleading standard. *See Jones v. Bock*, 549 U.S. 199, 212 (2007). The Court, in doing so, recognized that while exhaustion was mandatory, the exhaustion provision of the PRLA was not included in other screening provisions that specifically allow the courts to dismiss claims *sua sponte*. *Id*. at 214.

> [T]hat is not to say that failure to exhaust cannot be a basis for dismissal for *failure to state a claim*. It is to say that there is no basis for concluding that Congress implicitly meant to transform exhaustion from an affirmative defense to a pleading requirement by the curiously indirect route of specifying that courts should screen PLRA complaints and dismiss those that fail to state a claim.

*Id*. at 216 (emphasis added).

The Tenth Circuit has recognized in an unpublished decision that *Arbaugh* and *Jones* "undermine" its precedents which hold that administrative exhaustion is a requirement for subject-matter jurisdiction. *Logsdon v. Turbines, Inc.*, No. 09-6296, 2010 WL 4118811 at *2 n.2 (10th Cir. Oct. 20, 2010). Indeed, it recognized that "[t]he Tenth Circuit is the only circuit in which EEOC exhaustion is still considered jurisdictional." *Id*. And yet, the court continued to abide by earlier precedents, apparently under the mistaken belief that *Arbaugh* and *Jones* were not "superseding contrary decision[s] by the Supreme Court." *Id*.

---

[7] Similarly, the ADEA's twenty-employee limit appears in a separate provision of the ADEA that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts. See 29 U.S.C. § 630(b).

The *Arbaugh* decision, however, articulated a new "bright line" rule for determining whether a statutory restriction on a particular claim is jurisdictional. *Arbaugh*, 546 U.S. 515-16. The Tenth Circuit and this Court are bound to apply the new standard. *See Hutto v. Davis,* 454 U.S. 370, 375 (1982) ("unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be"); *Currier v. Doran*, 242 F.3d 905, 912 (10th Cir. 2001) ("[a]lthough we are generally bound by the prior precedent of this court, there is an exception to this rule when that precedent is superseded by contrary decisions of the Supreme Court"); *Gately v. Mass.*, 811 F. Supp. 26, 28-31 (D. Mass. 1992) (applying intervening Supreme Court standards in face of contrary First Circuit precedent).

Indeed, the District of Wyoming recently applied the Supreme Court's "bright-line" *Arbaugh* test to the exact same administrative exhaustion requirements now challenged by CollegeAmerica. *EEOC v. Maverik, Inc*., Case No. 10-CV-212-F, at 3-4 (D. Wyo. Feb. 17, 2011) (unpublished decision, attached as Exhibit 3).[8] In so doing, the court recognized the unpublished decision of *Logsdon* was inapposite, and concurrently determined that it was compelled to follow the instructions of the Supreme Court in *Arbaugh* and *Jones. Id.* at 4. Ultimately, after applying the *Arbaugh* test, the court held that "administrative exhaustion is not a jurisdictional requirement." *Id*. In particular, the court noted, there was no "clear statutory provisions requiring exhaustion of administrative remedies as a prerequisite to subject matter jurisdiction." *Id*.

Here, the EEOC's claims for relief are brought pursuant to 28 U.S.C. § 1331 and 29

---

[8] Although *Maverik* was a case under the Americans with Disabilities Act ("ADA"), the ADA specifically incorporates the administrative procedures of Title VII. 42 U.S.C. § 12117(a) (incorporating, *inter alia*, 42 U.S.C. § 2000e-5).

U.S.C. § 626(b). [Complaint at ¶ 1 (ECF 1).] Applying *Arbaugh*, this Court has jurisdiction under § 1331 because the EEOC's claims are brought under the ADEA, a federal statute. *See Arbaugh*, 546 U.S at 513. In addition, this Court has jurisdiction directly under the ADEA. 29 U.S.C. § 626(b), incorporating sections of the FLSA, 29 U.S.C. § 216(b) and (c). Like Title VII, the jurisdictional provision of the ADEA does not contain any restrictions requiring the exhaustion of administrative remedies as a jurisdictional prerequisite. *Compare* 42 U.S.C. § 2000e-5(b) and (f)(1), and 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b) and (c). Nor do the separate provisions which speak to administrative processes contain any language stating that they are "jurisdictional" as to actions brought by the EEOC under the ADEA. *See* 29 U.S.C. § 626(a), (b), (d)(2), (e). Moreover, the question of whether EEOC fulfilled its administrative obligations prior to filing this lawsuit is highly fact specific. The fact-specific nature of exhaustion counsels against a judicial determination on a motion to dismiss. *See Arbaugh*, 546 U.S at 514; *see also Maverik,* at p. 4 (Ex. 3) (inquiry as to whether EEOC satisfied exhaustion requirements "requires the review of extraneous facts, which are not suitable for determination at this time" on a Rule 12(b)(1) motion to dismiss).

Thus, under *Arbaugh*, exhaustion of the administrative processes is an element of any Title VII or ADEA claim but not a jurisdictional pre-requisite. Consequently, CollegeAmerica's Motion to Dismiss the EEOC's Second Claim for alleged failure to exhaust the administrative pre-requisites of notice and conciliation, is a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, in which event the EEOC's Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Burnett*, 706 F.3d at 1235 (quoting *Iqbal*, 556 U.S. at 678).

With respect to notice, the Complaint specifically alleges that on March 18, 2013, CollegeAmerica received notice of Potts' first charge of discrimination [Complaint at ¶ 16 (ECF 1)], and on December 20, 2013, the EEOC issued to CollegeAmerica the EEOC's determination finding reasonable cause to believe that CollegeAmerica had engaged in unlawful employment discrimination in violation of the ADEA [*Id*. at ¶ 33].

Likewise, regarding conciliation, the Complaint specifically alleges that the EEOC attempted to resolve the matter through informal methods of conciliation, conference, and persuasion, pursuant to the ADEA, that such efforts were unsuccessful, and on April 4, 2014, the EEOC gave CollegeAmerica notice of failed conciliation. [*Id*. at ¶ 33, 34.] Finally, the Complaint alleges that all conditions precedent to filing this lawsuit were met. [*Id*. at ¶ 36.]

Therefore, the EEOC's Complaint contains sufficient factual matter, accepted as true, to establish exhaustion of the administrative pre-requisites of notice and conciliation. Accordingly, CollegeAmerica's Rule 12(b)(6) Motion to Dismiss the EEOC's Second Claim for failure to state a claim upon which relief can be granted because of the EEOC's alleged failure to exhaust the administrative pre-requisites should be denied.

If, however, this Court follows the Tenth Circuit's unpublished decision in *Logsdon,* rather than the U.S. Supreme Court decision in *Arbaugh,* then CollegeAmerica's Motion to Dismiss the EEOC's Second Claim for failure to exhaust administrative pre-requisites is, in part, a motion under Rule 12(b)(1) for lack of subject matter jurisdiction. In that event, the Court has discretion to consider evidence outside the pleadings, *Holt,* 46 F.3d at 1003.

The EEOC now discusses both the facts and the law applicable to the question of whether EEOC has exhausted the required administrative procedures of notice and conciliation.

**2. The EEOC Fully Met All Exhaustion Requirements Prior to Filing This Lawsuit; The EEOC Gave CollegeAmerica Notice and Engaged in Sufficient Efforts to Conciliate.**

The ADEA and Title VII establish similar pre-requisites to filing suit, which pre-requisites are commonly characterized as "exhaustion of administrative remedies." The standards of exhaustion applicable to private plaintiffs are not the standards of exhaustion applicable to the EEOC. *See, e.g., EEOC v. Caterpillar, Inc.,* 409 F.3d 831, 832-33 (7th Cir. 2005); *EEOC v. Hearst Corp., Seattle Post-Intelligencer Div.*, 553 F.2d 579, 580-81 (9th Cir.1977); *EEOC v. Outback Steak House of Fla., Inc.*, 520 F.Supp.2d 1250, 1262 (D.Colo. 2007).

The U.S. Supreme Court has repeatedly recognized a difference between the EEOC's enforcement role and an individual employee's private cause of action. *See EEOC v. Waffle House, Inc.,* 534 U.S. 279 (2002); *Gen'l. Tel. Co. of the NW v. EEOC*, 446 U.S. 318 (1980); *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355 (1977). The EEOC is "the master of its own case," and "not merely a proxy for the victims of discrimination." *Waffle House,* 534 U.S. at 288. Nor does the EEOC "function simply as a vehicle for conducting litigation on the behalf of private parties." *Occidental*, 432 U.S. at 368. Thus, the EEOC is not limited "to claims typified by those of the charging party." *See Gen'l. Tel. Co.,* 446 U.S. at 331. As the District of Colorado put it:

> [A]lthough private litigants are bound in a significant way by the charges they file with the EEOC, a civil enforcement suit by the EEOC is not closely circumscribed by those charges, because the EEOC, after all, is enforcing the broad rights of the public as a whole rather than those of a few individuals.

*Outback Steak House*, 520 F.Supp.2d at 1262 (citing *Caterpillar, Inc.,* 409 F.3d at 833).

The charge of discrimination is "a jurisdictional springboard" for the EEOC, providing it with a basis to investigate alleged discriminatory practices. *EEOC v. Gen. Elec. Co*., 532 F.2d

359, 364-65 (4th Cir. 1976). If the EEOC uncovers additional violations not identified in the charge, it is "neither obliged to cast a blind eye over such discrimination" nor to initiate a new charge in order to conduct a "repetitive investigation of the same facts already developed in the ongoing investigation." *Id*. at 365. The EEOC merely needs to include the additional violations in its letter of determination and afford the employer an opportunity to remedy the violation through the conciliation process. *Id*. at 366; *Hearst Corp., Seattle Post-Intelligencer Div.*, 553 F.2d at 580-81. Indeed, the EEOC may seek relief for individuals who were never even identified during the administrative process, so long as the employer was on notice of the scope of the alleged wrongdoing. *See EEOC v. UPS*, 860 F.2d 372, 374-75(10th Cir. 1988) (EEOC may seek relief for unidentified members of a known class); *EEOC v. St. Louis-San Francisco Ry. Co*., 743 F.2d 739, 743-44 (10th Cir. 1984) (concluding that EEOC could discover and seek back pay for victims of discrimination who were not previously identified as part of the administrative process); *EEOC v. Original Honeybaked Ham Co*., 918 F.Supp.2d 1171, 1180 (D. Colo. 2013) (permitting EEOC to seek relief for previously unidentified individuals where defendant was aware of conduct, perpetrator, and location).

Thus, the administrative pre-requisites for an EEOC lawsuit are: (1) a charge of Discrimination; (2) notice of the charge to the employer; (3) an investigation; (4) a determination of reasonable cause; and (5) an effort to conciliate. *See, e.g., EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir. 1996); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981) (citations omitted). The purposes of this administrative scheme are to provide notice to employers of the alleged violations and an opportunity to remedy the alleged violations through the conciliation process. *E.g., Am. Nat'l Bank,* 652 F.2d 1176.

Here, CollegeAmerica claims the EEOC failed to put it on notice in the determination of the issues the EEOC had with its form severance agreements or engage in conciliation on those issues.[9] [Motion at 5-6 (ECF 6).] The EEOC fulfilled both administrative pre-requisites.

### a. The EEOC Gave CollegeAmerica Notice of the Second Claim.

Potts filed three separate charges of discrimination with the EEOC on January 25, 2013, April 8, 2013, and December 18, 2013. [Complaint at ¶¶ 15, 18, 23 (ECF 1).] In responding to the charges during the investigation, CollegeAmerica provided EEOC with copies of four form Separation and Release Agreements. [*Id.* at ¶24; ECF 1-2, 1-3, 1-4, 1-5; Position Statement at 5 (list of attachments under #8) (ECF 6-3).] Accordingly, CollegeAmerica knew of the fact that the form severance agreements were involved in this action at all relevant times. Moreover, the Commission's position is supported by the reasonable inference that CollegeAmerica both authored the documents and knew the content of the terms and conditions expressed and contained within the documents. The documents were clearly "on the table," with College-America and the EEOC having express knowledge of the existence and content of the documents.

Furthermore, the documents were relevant to the investigation of Potts' charges and included in the investigation. The documents were part of the investigation. And by virtue of CollegeAmerica having provided the documents to the EEOC, and given the documents' relevance to the investigation, the EEOC and CollegeAmerica both knew the documents were at issue.

---

[9] CollegeAmerica's Motion does not challenge whether the EEOC fulfilled the other administrative pre-requisites - charges of discrimination, notice of the charges to Defendant, and an investigation. CollegeAmerica therefore concedes that the EEOC has met these requirements.

CollegeAmerica argues Potts' charges were based on CollegeAmerica's Agreement with Potts, which does not resemble CollegeAmerica's form severance agreements, and College-America only provided the form severance agreements to the EEOC to show that Potts' Agreement was nothing like the severance agreements used by the CollegeAmerica. [Motion at 5, 6 (ECF 6).] However, as previously discussed, *supra*. at 27-29, the EEOC's ability to investigate and determine whether CollegeAmerica's form severance agreements also violate the ADEA was not dependent upon Potts having made that specific allegation in any of her charges; rather, Potts' charges were "jurisdictional springboard[s]" providing the EEOC with a basis to investigate any discriminatory practices uncovered during the investigation, even additional violations not identified in Potts' charges. *See Gen. Elec. Co.*, 532 F.2d at 364-65. The EEOC was not "obliged to cast a blind eye over such discrimination." *Id*. at 365.

On December 20, 2013, based on evidence revealed during its investigation, the EEOC issued its determination that CollegeAmerica had violated the ADEA, and initiated conciliation. [Complaint at ¶ 33 (ECF 1); ECF 6-5.] In its determination, the EEOC stated, *inter alia*:

> The violations … appear to be such as would require prompt court action by the Commission to effectuate the purpose of the ADEA. Therefore, we strongly urge Respondent's immediate voluntary compliance through the elimination of these practices and provision of appropriate relief to the Charging Party **and any other persons adversely affected** by them, as follows: … (2) entry into a publicly-filed Consent Decree containing, *inter alia,* the following provisions: (a) tolling the charge-filing period for **employees who have signed the same or similar severance agreements**; (b) revision of the form severance agreement to comply with the terms of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) and to make clear, *inter alia,* that **employees retain the right to file charges and cooperate with the Commission**; (c) **communication with Respondent's workforce regarding their right to file charges**; … If no action is taken by Respondent within five (5) business days of receipt of this letter to eliminate the practices in question and make whole the Charging Party **and other affected persons**, the Commission will consider filing suit in the United States District Court for the District of Colorado and requesting appropriate relief, including but not limited to, any or all of the above-described remedies.

[Letter of Determination ("LOD") at 2 (ECF 6-5) (emphasis supplied).]

The EEOC's LOD was sufficient to place CollegeAmerica on notice that the EEOC was seeking remedies for and on behalf of individuals, other than Potts, who signed the same or similar agreements that similarly chilled their ability to file charges and/or cooperate with the EEOC in violation of 29 U.S.C. § 626(f)(4), which include the form severance agreements.[10] In addition, the LOD expressly stated the EEOC was beginning conciliation in accordance with the requirement of 29 U.S.C. § 626(b). [LOD at 2 (ECF 6-5).] Furthermore, the LOD advised CollegeAmerica that its failure to act may result in the initiation of litigation in federal court on behalf of Potts and other affected persons. [*Id.*]

Choosing to litigate over notice, CollegeAmerica argues the EEOC had a duty to apprise CollegeAmerica with an itemization in EEOC's determination of the specific deficiencies in the form severance agreements uncovered during EEOC's investigation. [Motion at 6 (ECF 6).] This argument is without merit. The Supreme Court has held that the courts are not permitted to impose procedural regulations that have no basis in statute. *See Pension Ben. Guar. Corp. v LTV Corp.*, 496 U.S. 633, 653-56 (1990). Here, nothing in the ADEA or EEOC's regulations require any procedure or process consistent with CollegeAmerica's argument. The ADEA simply states that "[u]pon receiving … a charge [alleging unlawful discrimination], the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of

---

[10] CollegeAmerica attempts to make an issue over whether its Agreement with Potts was a severance or some other kind of agreement and, therefore, whether any other employees signed agreements that were the same or similar. [Motion at ii, 6 n.4, 7 (ECF 6).] First, CollegeAmerica's Agreement with Potts is referred to in the Complaint simply as an "agreement." [Complaint at ¶ 7 (ECF 1).] Second, and more importantly, it does not matter what label is assigned to Potts' agreement or any other agreement at issue. What matters is the effect of those agreements and, for purposes of this lawsuit, whether they violate Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4).

conciliation, conference, and persuasion." 29 U.S.C. § 626(c)(2). The EEOC's regulation

pertaining to determinations is similarly silent:

> Whenever the Commission has a reasonable basis to conclude that a violation of the Act
> has occurred or will occur, it may commence conciliation under section 7(b) of the Act.
> Notice of commencement of conciliation will ordinarily be issued in the form of a letter of
> violation; provided, however, that failure to issue a written violation letter shall in no
> instance be construed as a finding of no violation. The Commission will ordinarily notify
> the respondent and aggrieved persons of its determination.

29 C.F.R. § 1626.15(b). This silence is compelling, especially given "the Supreme Court's recent

admonition that 'Congress' special care in drawing so precise a statutory scheme' as Title VII

makes it incorrect to infer that Congress meant anything other than what the text does say."

*EEOC v. Mach Mining, LLC*, 738 F.3d 171, 174 (7th Cir. 2013) (quoting *Univ. of Texas*

*Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2530 (2013)). This reasoning is equally

applicable to the ADEA.

CollegeAmerica's arguments that the LOD was based entirely on CollegeAmerica's

Agreement with Potts and did not identify ADEA violations regarding the form severance

agreements [Motion at 6-7 (ECF 6)] are without merit because of the LOD's language

highlighted above, which clearly indicates the EEOC was seeking relief for other individuals

who signed the same or similar agreements, similarly chilling their rights protected under the

ADEA in violation of 29 U.S.C. § 626(f)(4). [LOD at 2 (ECF 6-5).]

CollegeAmerica tries to make an issue out of the EEOC's lack of response to its letter

sent after the EEOC issued its determination [ECF 6-7], which letter CollegeAmerica

characterizes as clarifying that its Agreement with Potts was not a form severance agreement.

[Motion at 7 (ECF 6).] However, no response was necessary. The EEOC was not confused.

Furthermore, the label or purpose of CollegeAmerica's agreement with Potts is not significant.

The operative issue for this lawsuit is the impact of CollegeAmerica's agreements and whether they violate the ADEA.

More importantly, to accept CollegeAmerica's arguments concerning the Letter of Determination would contradict the purpose of the ADEA and permit CollegeAmerica to engage in wasteful litigation concerning Letters of Determination. The ADEA "is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment." *Marshall v. Sun Oil Co.*, 592 F. 2d. 563, 566 (10th Cir. 1979) (quoting *Dartt*, 539 F.2d at 1260), and dismissal is a "drastic step" that is "incompatible with the humanitarian nature of the Act." 592 F.2d at 566.

CollegeAmerica's argument that it needed more information is a classic and chronic attempt to set up a failure-to-conciliate defense, which CollegeAmerica, in fact, asserts in its Motion, and which is discussed in this Response, *infra*. at 34-38. [*Id.* at 5-9 (ECF 6).] It is exactly this kind of strategizing that, in part, led the Seventh Circuit to reject the failure-to-conciliate defense entirely. *See EEOC v. Mach Mining, LLC*, 738 F.3d 171, 178-80 (7th Cir. 2013), *cert. granted*, No. 13-1019, 2014 WL 713205 (U.S. June 30, 2014) ("*the conciliation defense tempts employers to turn what was meant to be an informal negotiation into the subject of endless disputes over whether the EEOC did enough before going to court*") (emphasis supplied).

Therefore, for all of the foregoing reasons, the EEOC gave CollegeAmerica notice of the nature and scope of the Second Claim, and satisfied its administrative pre-requisite regarding notice.

**b. The EEOC Engaged in Sufficient Efforts to Conciliate the Second Claim.**

In analyzing whether the EEOC has engaged in good faith conciliation, the Tenth Circuit takes a deferential view. *See EEOC. v. Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978). The "court should not examine the details of the offers and counteroffers between the parties, nor impose its notions of what the agreement should provide." *Id*. Rather, the form and substance of the conciliation efforts is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review. *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1102 (6th Cir. 1984); *EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 940 (N.D. Ill. 2001); *EEOC v. Dillon Cos., Inc.*, No. 09-cv-02237-ZLW-MEH, 2011 WL 1226215 at *5 (D. Colo. March 30, 2011). Moreover, the Tenth Circuit has recognized that because conciliation involves at least two parties, "we must evaluate one party's efforts with an eye to the conduct of the other parties." *EEOC v. Prudential Fed. Sav. & Loan Ass'n.*, 763 F. 2d 1166, 1169 (10th Cir. 1985). The EEOC is under no obligation to continue to engage in conciliation when the defendant refuses to engage in "any significant dialogue" or refuses to offer "any serious counterproposals." *Id*. Thus, it is not incumbent on the EEOC to continue to engage in conciliation efforts once the defendant makes clear that it will not negotiate. *Id*.; *Keco Indus., Inc.*, 748 F.2d at 1101-02.

The EEOC's obligation to engage in good faith conciliation does not require that the agency "provide comprehensive discovery to defendant." *EEOC v. Heart of America*, No. 03 C 50269, 2003 WL 22764662 at *2 (N.D. Ill. Nov. 10, 2003); *California Psychiatric Transitions, Inc.*, 725 F. Supp. 2d 1100, 1115 (E.D. Ca. 2010) (EEOC is not required to disclose evidence). Thus, "[c]onciliation is…a flexible and responsive process which necessarily differs from case to

case. The EEOC may make sufficient initial effort without undertaking exhaustive investigations or proving discrimination to the employer's satisfaction." *Prudential*, 763 F. 2d. at 1169.

The Tenth Circuit's position on conciliation is definitive; if there has been any attempt to conciliate, an action cannot be dismissed for failure to attempt to conciliate. *Marshall v. Sun Oil Co.*, 592 F. 2d. 563, 566-67 (10th Cir. 1979); *Zia Co.*, 582 F.2d at 533. Accordingly, the Tenth Circuit has "refused to dismiss cases where the EEOC failed to exhaust fully its duty to conciliate." *Prudential*, 763 F.2d at 1169 (citing *Dartt*, 539 F.2d at 1260, and *Marshall*, 592 F.2d at 566). If the Commission's conciliation efforts are found inadequate, the remedy is to stay the litigation and order the parties back to negotiations. *See Zia Co.*, 582 F.2d at 533 ("[t]he inquiry into the duty of 'good faith' on the part of the EEOC is relevant to whether the court should entertain the claim, or stay the proceedings for further conciliation efforts, not to its power over the cause"); *Prudential*, 763 F.2d at 1169 ("when the EEOC initially makes a sufficient albeit limited effort to conciliate, the minimal jurisdictional requirement of the Act is satisfied and the action is therefore properly before the court"). If there have been sufficient attempts to conciliate and the defendant has not sought a stay in order to conduct further conciliation, a motion to dismiss for failure to conciliate should be denied; there being no request for a stay, the issue of good faith is not material. *EEOC v. JBS USA, LLC*, 794 F.Supp.2d 1188, 1198 (D. Colo. 2011) (citing *EEOC v. State of Kan., Dept. of Admin.*, No. 81-4114, 1982 WL 303 at *4 (D. Kan. April 8, 1982)).

In this case, there were sufficient efforts to conciliate. When the EEOC issued its determination, it simultaneously initiated conciliation pursuant to 29 U.S.C. 626(b). [LOD at 2 (ECF 6-5).] The determination included an initial conciliation proposal that included relief for

individuals other than Potts. [*Id.*] It is undisputed that an in-person conciliation meeting was held on March 25, 2014, that the conciliation took place at the offices of the EEOC in Denver, Colorado, that the EEOC, Potts, and CollegeAmerica's General Counsel attended. [Gerber Dec. at ¶ 16 (ECF 6-10).] It is further undisputed that the parties engaged in discussions and offers were exchanged. [*Id.* at ¶ 17.] Unfortunately, no agreement was reached, resulting in the EEOC issuing a notice that conciliation had failed [ECF 6-9] and initiation of this litigation [ECF 1].

Thus, even under CollegeAmerica's version of the facts, the EEOC engaged in sufficient efforts to conciliate under Tenth Circuit law; if there has been any attempt to conciliate, an action cannot be dismissed for failure to attempt to conciliate. *Marshall,* 592 F. 2d. at 566-67; *Zia*, 582 F.2d at 533; *Prudential*, 763 F.2d at 1169.

CollegeAmerica claims that had the EEOC put it on notice and conciliated over the Second Claim, the parties may have avoided litigation of this issue. [Motion at 6 (ECF 6).] Assuming, *arguendo*, that the EEOC failed to provide notice or conciliate over the Second Claim (which the EEOC denies), CollegeAmerica's claim is a speculative litigation tactic, seeking to avoid the legally sufficient conciliation proceedings, which were consistent with the ADEA's purpose, liberal construction principles, and the Commission's comprehensive investigative and enforcement authority under the Act. Accordingly, CollegeAmerica's argument should be given no credence. If, as the CollegeAmerica argues, the conciliation only discussed Potts and her Agreement, and it is undisputed that conciliation failed, yielding no resolution, then there is absolutely no reason to believe that a wider discussion of broader relief for employees other than Potts would have successfully resulted in a settlement that avoided litigation.

What CollegeAmerica suggests would have required a piecemeal approach to

conciliation, where the parties successfully settled and conciliated the Second Claim but not the First Claim, which would have rendered the unusual result of obtaining relief on a broader claim for individuals other than Potts but no relief on the narrower claim for the Charging Party, Potts. Such a result would not have been agreeable to the EEOC. The fact is CollegeAmerica refused to agree to meaningful relief for Potts. Since the parties were unsuccessful in resolving Potts' individual claims, resolution of the broader claim on behalf of other employees was not possible.

CollegeAmerica contends that until it received the Complaint, it was not aware of the specific issues the EEOC has with its form severance agreements. [Motion at 8 (ECF 6); Gerber Dec. at ¶ 21 (ECF 6-10).] First, this is not credible. The EEOC gave CollegeAmerica notice, *supra*. at 29-34, and the EEOC engaged in sufficient efforts at conciliation under Tenth Circuit law, *supra*. at 34-37. If, however, the Court determines that a question remains regarding whether notice or conciliation was satisfied, then there is a fact issue that requires exploration through discovery. At this early stage of the litigation, without the benefit of any discovery, the EEOC is unable to meet CollegeAmerica's allegation regarding what it knew or did not know about the EEOC's concerns for the chilling effect of CollegeAmerica's form severance agreements or when CollegeAmerica learned these concerns. The parties need to be permitted the opportunity to conduct discovery on this point. Therefore, disposition of the EEOC's Second Claim at this time on CollegeAmerica's Motion to Dismiss is inappropriate.

For all of the reasons discussed, there have been sufficient efforts to conciliate, and the requirements of the ADEA have been satisfied. Accordingly, the Second Claim is properly before the Court. *Prudential*, 763 F.2d at 1169. There having been sufficient attempts to conciliate but no request by CollegeAmerica for a stay for purposes of conducting further

conciliation, the issue of good faith is not material, and CollegeAmerica's Motion should be denied. *JBS*, 794 F.Supp.2d at 1198.

For all of the foregoing reasons, the Court has subject matter jurisdiction over the EEOC's Second Claim, and CollegeAmerica's Motion to Dismiss the EEOC's Second Claim under Rule 12(b)(1) should be denied.

**B. The Second Claim States a Claim Upon Which Relief Can Be Granted; It Does Not Fail as a Matter of Law.**

Echoing its argument concerning EEOC's First Claim [Motion at 4-5 (ECF 6)], CollegeAmerica argues the EEOC's Second Claim also fails as a matter of law. [*Id*. at iii, 9-10.]

For all of the same reasons discussed in Section I.B. of this Response, *supra*. at 13-20, the EEOC's Second Claim states a cognizable claim upon which relief can be granted and does not fail as a matter of law. Accordingly, CollegeAmerica's Motion to Dismiss the EEOC's Second Claim under Rule 12(b)(6) should be denied.

**III. THE THIRD CLAIM STATES A CLAIM FOR POST-EMPLOYMENT RETALIATION UPON WHICH RELIEF CAN BE GRANTED; THE ADVERSE ACTION OCCURRED AFTER POTTS ENGAGED IN PROTECTED ACTIVITY.**

**A. Retaliation Claims Under the ADEA.**

**1. Elements.**

Section 4(d) of the ADEA makes it "unlawful for an employer to discriminate against any of his employees or applicants for employment … because such individual … has opposed any practice made unlawful by [the ADEA], or because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d). The ADEA anti-retaliation provision has been recognized as "parallel to the anti-retaliation provision of Title VII . . . , and cases interpreting

the latter provision are frequently relied upon in interpreting the former." *Passer v. Amer. Chem. Soc'y,* 935 F.2d 322, 330 (D.C. Cir. 1991).

The elements of a claim for retaliation are: (1) the plaintiff engaged in protected activity; (2) the employer thereafter engaged in materially adverse action; and (3) a causal connection exists between the protected activity and the employer's action. *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009); *McGarry v. Bd. Of Cnty. Comm'rs of Cnty. of Pitkin*, 175 F.3d 1193, 1201 (10th Cir. 1999). The Tenth Circuit liberally defines "adverse employment action." *Bragg v. Off. of the Dist. Atty., Thirteenth Judicial Dist.*, 704 F.Supp.2d 1032, 1050 (D. Colo. 2009) (citing *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212-13 (10th Cir. 2003). An employer's actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Semsroth*, 555 F.3d at 1194 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "The requisite causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *McGarry*, 175 F.3d at 1201 (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). A one and one-half month period between protected activity and adverse action may, by itself, establish causation for purposes of the *prima facie* case. *Anderson*, 181 F.2d at 1179.

### 2. <u>Former Employees are Protected</u>.

A majority of the circuits, including the Tenth Circuit, have concluded that former employees are protected from retaliation under Title VII and the parallel provisions of the ADEA

and FLSA. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 884–85 (7th Cir. 1996) (listing

circuits holding former employees protected from retaliation, and citing *Berry v. Stevenson

Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996) (Title VII), reaffirming *Rutherford v. Amer. Bank

of Commerce*, 565 F.2d 1162, 1165-66 (10th Cir. 1977) (Title VII)). The Supreme Court reached

the same conclusion in a unanimous decision in a Title VII case. *See Robinson v. Shell Oil Co.*,

519 U.S. 337, 341-46 (1997); *cf. Erie Cnty. Retirees Ass'n v. County of Erie*, 220 F.3d 193, 209

(3d Cir. 2000) (retirees can state claim under ADEA for employee benefits). Because the

ADEA's anti-retaliation provision parallels Title VII, courts have relied upon the Supreme

Court's decision in *Robinson* in interpreting the ADEA. *See Boland v. Town of Newington*, 304

Fed. Appx. 7, 9 (2d Cir. 2008) (ADEA retaliation claims analyzed in accordance with Title VII).

In the context of alleged post-termination retaliation, the Tenth Circuit specifically

recognized that "former employees, no less than present employees, need[ ] protection from

discrimination by employers resentful of the fact that a complaint ha[s] been made against them

for alleged violations of the Fair Labor Standards Act." *Rutherford*, 565 F.2d at 1165.

### B. CollegeAmerica Sued Potts in State Court Seven Days After Receiving Notice of Her First EEOC Charge; The Timing Alone Establishes a Causal Connection and Plausible Claim.

CollegeAmerica challenges the EEOC's ability to satisfy the third element of a claim for

retaliation – that a causal connection exists between Potts' protected activity and College-

America's adverse action.[11] [Motion at iii, 10-12 (ECF 6).] CollegeAmerica argues the filing of

its state court lawsuit against Potts could not have been motivated by Potts filing her first charge

---

[11] CollegeAmerica's Motion does not challenge the EEOC's ability to satisfy the first two elements of its claim for post-employment retaliation – that Potts engaged in protected activity and that Defendant thereafter engaged in materially adverse action. CollegeAmerica therefore concedes that the EEOC's Third Claim satisfies those first two elements.

of discrimination because the adverse action "began" when CollegeAmerica sent Potts a letter, dated two weeks before Potts filed her first charge of discrimination. In its letter, CollegeAmerica claimed Potts had violated the Agreement and gave her thirty days to return the money or College-America would sue. [*Id.* at 10-11; ECF 6-2.] CollegeAmerica declares the fact that it filed the actual state court lawsuit after Potts' discrimination charge "cannot change the outcome." CollegeAmerica ignores Tenth Circuit law.

Under Tenth Circuit precedent, the timing of the filing of the state court lawsuit alone – *seven days after* CollegeAmerica received notice of Potts' first EEOC charge – establishes a causal connection between Potts' protected activity and CollegeAmerica's adverse action, thereby permitting the reasonable inference and plausibly suggesting that the state court lawsuit was filed for a retaliatory purpose. *Anderson*, 181 F.2d at 1179 (a one and one-half month period between protected activity and adverse action may, by itself, establish causation for purposes of the *prima facie* case of retaliation).

Intent and motivation are quintessential questions of fact. *Crespin v. New Mexico*, 144 F.3d 641, 652 (10th Cir. 1998) (citing *United States v. Bohl*, 25 F.3d 904, 909 (10th Cir. 1994)). Questions of fact are inappropriate for determination on Rule 12(b)(6) motions to dismiss. "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's … complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Brokers Choice of Amer., Inc. v. NBC Universal, Inc.*, No. 11-1042, ___ F.3d ___, 2014 WL 3307834 at *5 (10th Cir. July 9, 2014) (citing *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quoting *Miller v. Glanz,* 1562, 1565 (10th Cir.1991)). In deciding CollegeAmerica's Rule 12(b)(6) Motion to Dismiss, the

Court must accept the factual allegations in the Complaint as true and resolve all reasonable inferences in the EEOC's favor. *Morse*, 154 F.3d at 1126-27; Fed. R. Civ. P. 12(b)(6).

The fact is that despite the thirty day deadline stated in its letter to Potts, CollegeAmerica took **no action** against Potts for ***seventy-four days***. *See* Letter (dated January 11, 2013) (ECF 6-2), and State Court Complaint (filed March 25, 2013) (Ex. 1). It is undisputed, there is no escaping, and CollegeAmerica concedes (as it must), that it did **not** file its state court action until seven days ***after*** receiving notice of Potts' first EEOC charge, the timing of which alone establishes causation and permits the reasonable inference and plausibility of retaliation.

Nevertheless, the EEOC does not rely on timing alone to establish the causation element. Other evidence also suggests CollegeAmerica filed its state court lawsuit to retaliate against Potts for her protected activity, all of which evidence was alleged in the Complaint [ECF 1].

First, in a pleading filed in the state court lawsuit on August 12, 2013, CollegeAmerica expressly asserted that Potts "violat[ed] the contract through her filing of additional administrative claims against the College, including multiple charges with the EEOC." [*Id*. at ¶ 19.] Second, on September 29, 2013, CollegeAmerica issued written discovery requests to Potts in the state court lawsuit seeking details about all of the contacts and communications between her and "all governmental and regulatory agencies," which were defined to specifically include the EEOC and the CCRD. [*Id*. at ¶ 21.] Third, in a hearing in state court on December 4, 2013, CollegeAmerica justified its discovery requests for communications between Potts and the EEOC by arguing that its lawsuit was broader than the brief factual allegations in the complaint. [*Id*. at ¶ 23.] All of this evidence, taken together, permits the reasonable inference and plausibly suggests CollegeAmerica filed the state court lawsuit against Potts in retaliation for engaging in

activity protected under the ADEA, including filing charges with the EEOC.

Courts have expressly recognized that a retaliatory lawsuit is an adverse employment action for purposes of a retaliation claim. *EEOC v. Outback Steakhouse of Florida, Inc.*, 75 F.Supp.2d 756, 758 (N.D.Ohio 1999) ("[c]ourts have held that 'a lawsuit...may be used by an employer as a powerful instrument of coercion or retaliation' and that such suits can create a 'chilling effect' on the pursuit of a discrimination claim") (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 740–41, (1983)). In *Berry v. Stevinson Chevrolet*, the Tenth Circuit found Title VII post-employment retaliation in the form of an employer's malicious prosecution against a former employee who filed an EEOC complaint. 74 F.3d at 986. *Berry* cites *EEOC v. Virginia Carolina Veneer Corp.,* 495 F.Supp. 775 (W.D. Va. 1980), which bears an uncanny resemblance to the actions of CollegeAmerica in this action. In *Virginia Carolina Veneer,* the court held that Title VII's anti-retaliation provision covers former employees, that Title VII protects employees from retaliation for filing charges, even if the charges are false or malicious, and that an employer filing a state court civil defamation action in response to a former employee's filing of an EEOC sex discrimination complaint was "unquestionably retaliatory in nature." *Id.* at 777 n.6, 778.

Here, as in *Virginia Carolina Veneer,* CollegeAmerica filed a state court civil action against Potts alleging disparagement seven days after CollegeAmerica learned Potts had filed an EEOC charge. Likewise, such action by CollegeAmerica is "unquestionably retaliatory in nature." *Id*.

For all of the foregoing reasons, the EEOC's Third Claim states a claim for ADEA post-employment retaliation upon which relief can be granted. The adverse action occurred after

Potts' protected activity. The timing of the adverse action alone establishes the causation element of a claim for retaliation, permitting a reasonable inference and plausible suggestion of retaliation. The issue of intent and motivation are issues of fact that are inappropriate for resolution on a Rule 12(b)(6) motion to dismiss. Therefore, CollegeAmerica's Motion to Dismiss the Third Claim pursuant to Rule 12(b)(6) should be denied.

## CONCLUSION

The EEOC's First Claim under 29 U.S.C. § 626(f)(4) presents a live, justiciable case or controversy; it is not moot. The First Claim also states a cognizable cause of action; it does not fail as a matter of law. Accordingly, CollegeAmerica's Rule 12(b)(1) and (6) Motion to Dismiss the First Claim should be denied.

Failure to exhaust administrative remedies is not a question of subject matter jurisdiction under the Supreme Court's "bright line" test enunciated in *Arbaugh v. YH Corp.*, 546 U.S. 500, 515-16 (2006). Thus, the pre-requisites of notice and conciliation are not jurisdictional, and CollegeAmerica's Motion to Dismiss the Second Claim (also brought under 29 U.S.C. § 626(f)(4)) for failure to exhaust the administrative pre-requisites is properly a Rule 12(b)(6) motion. Since the EEOC's Complaint contains sufficient factual matter, accepted as true, to establish exhaustion of the administrative pre-requisites of notice and conciliation, CollegeAmerica's Rule 12(b)(6) Motion to Dismiss the EEOC's Second Claim should be denied. If, however, CollegeAmerica's Motion to Dismiss the Second Claim is a Rule 12(b)(1) motion, then there is ample evidence that the EEOC gave CollegeAmerica notice of the Second Claim and engaged in sufficient efforts under Tenth Circuit law to conciliate the Second Claim, and CollegeAmerica's Rule 12(b)(1) Motion to Dismiss the Second Claim should be denied.

Furthermore, the Second Claim also states a cognizable cause of action and does not fail as a matter of law. Thus, College-America's Rule 12(b)(6) Motion to Dismiss the Second Claim should be denied.

In the EEOC's Third Claim for post-termination retaliation in violation of 29 U.S.C. § 623(d), the EEOC can establish the third element – a causal connection between Potts' protected activity and CollegeAmerica's subsequent materially adverse action – because CollegeAmerica filed a lawsuit against Potts in state court seven days after it received notice of Potts' first charge of discrimination. The timing of the adverse action alone establishes causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Nevertheless, there are additional facts that, taken together, permit the reasonable inference and plausibly suggest that College-America filed its state court lawsuit against Potts for retaliatory purposes. Consequently, CollegeAmerica's Rule 12(b)(6) Motion to Dismiss the Third Claim should be denied.

Therefore, for all of the foregoing reasons discussed in this Response, CollegeAmerica's Motion to Dismiss [ECF 6] should be denied in its entirety.

DATED: July 24, 2014.

Respectfully submitted,

/s/ D. Andrew Winston

Senior Trial Attorney
Telephone:  303.866.1361
E-Mail:  andrew.winston@eeoc.gov

STEPHANIE STRUBLE
Senior Trial Attorney
Telephone: 303.866.1381
E-Mail: stephanie.struble@eeoc.gov

EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
Denver Field Office
303 East 17th Avenue, Suite 410
Denver, Colorado  80203

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on July 24, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Raymond W. Martin, Esq.
Craig R. May, Esq.
Thomas E.M. Werge, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-4647
Telephone: 303.244.1800
martin@wtotrial.com
may@wtotrial.com
werge@wtotrial.com

Attorneys for Defendant

/s/ D. Andrew Winston