IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-CV-01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA,

        Defendant.

---

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

---

Despite the EEOC's voluminous response, the Complaint still fails and must be dismissed under Rules 12(b)(1) and (6). First, as much as the EEOC wishes otherwise, Defendant CollegeAmerica Denver, Inc. (the "College") does not contend that the one-off, one-page agreement that Debbi Potts entered into with the College is a waiver of her right to bring a charge, so there is no case or controversy as to the First Claim. Second, as much as the EEOC argues to the contrary, the law in the Tenth Circuit precludes the First and Second Claims, which assert a free-standing cause of action to challenge contract provisions. Similarly, the law requires the EEOC to provide notice of a specific claim and conciliation on that claim before it can file that claim in a lawsuit. It failed to do that with respect to the Second Claim, providing an additional reason to dismiss it. Third, as much as the EEOC would like to assert otherwise, the undisputed facts clearly establish that the Commission's claim for alleged retaliation is based on

conduct that occurred <u>before</u> Ms. Potts filed her first charge with the EEOC, so there can be no claim for retaliation. Thus, the Third Claim must be dismissed.

This is not a case about age discrimination or even a case about retaliation. Ms. Potts voluntarily quit and then negotiated a settlement resolving her claim for a bonus (to which she was not entitled) and her pending claim for unemployment benefits – a settlement that paid her a significant amount of money in exchange for her agreement not to disparage the College. She then almost immediately breached the non-disparagement provision of the contract. When the College sought redress for the breach, Ms. Potts responded by manipulating the federal employment discrimination process to attempt to avoid the consequences of her breach.

The EEOC's Complaint attempts to expand the scope of its authority beyond the limits established by statute and controlling Tenth Circuit law. Because the law and the facts here are against the EEOC, the Motion to Dismiss should be granted.

**ARGUMENT**

**I.** **THE EEOC'S RESPONSE FAILS TO SUSTAIN THE FIRST CLAIM**

    **A.** **The EEOC Fails to Carry Its Burden to Establish the Existence of a Case or Controversy for the First Claim.**

The EEOC has the burden of showing the existence of a case or controversy for each of its claims, including by demonstrating the existence of an injury-in-fact, causation, and redressability, which together are the elements of standing. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). It has not done so with the First Claim, which seeks declaratory and injunctive relief regarding the validity of the one-page Agreement between the College and Ms. Potts. This is because, at the time the EEOC filed this suit, the College did not contend the Agreement was a waiver under 29 U.S.C. § 626 (f) (the Older Workers Benefit Protection Act ("OWBPA")) as

alleged by the EEOC. The EEOC thus did not have standing because it did not present a redressable issue to the Court.

Statements in the underlying pleadings, uncontested admissions to Ms. Potts, repeated representations by the College and its counsel to the EEOC, judicial admissions, and multiple sworn declarations, all make clear that the College did not then, and does not now, contend that the Agreement contains a waiver of any of Ms. Potts' ADEA rights. Moreover, the College has definitively resolved any theoretical outstanding question by conclusively stating that the Agreement does not affect Ms. Potts' rights under the ADEA in any manner. The Commission cannot show there has ever been any effect on those rights. Thus, there is nothing for the Court to decide – and no case or controversy as to the First Claim.

The EEOC's sole response is that the First Claim is not moot because the College cannot meet the heightened burden placed on a defendant who ceases its conduct during the pendency of a lawsuit. The EEOC is wrong. The voluntary cessation doctrine only applies to cases intentionally mooted by a defendant for which there was originally standing at the time the suit was filed. *See WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1185 (10th Cir. 2012) (the presumption against a defendant for voluntary cessation "only applies . . . when the defendant ceases illegal activity *after* the plaintiff files suit"). "The plaintiff bears the burden to establish standing at the time the suit is filed, and if the defendant's offending conduct has ceased by that time, [the court must] dismiss for lack of redressability." *Id.* at 1185 (discussing in detail the difference between the doctrines of standing and mootness); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (refusing to apply the voluntary cessation doctrine to conduct before a complaint was filed because to hold otherwise would "make[] a

sword out of a shield"). Here, whatever the EEOC might allege, the undisputed facts establish

that, before suit was filed, the College made clear that it did not contend that the Agreement

contains a waiver of any ADEA rights.

The EEOC instead relies on cases that involve conduct that was voluntarily ceased <u>after</u>

<u>the filing of the suit</u>. However, even if the Agreement itself constituted potential wrongful

conduct by the College (it does not), any such conduct ceased prior to the time the EEOC filed

this lawsuit.

- The College did not assert a waiver in any of its three responses to Ms. Potts' charges of discrimination. (*See* Mot. at Ex. 3 (May 3, 2013), Ex. 4 (May 3, 2014), and Ex. 7 (Jan. 10, 2014).)

- The College also explicitly represented to Ms. Potts through counsel that it "has never asserted and will not assert at any time in the future that the Agreement constitutes a waiver of age discrimination claims under the Older Workers Benefit Protection Act." (*See* Mot. at Ex. 6 (Jan. 7, 2014).)

- The College further explicitly represented the same directly to the Commission by stating it "has never asserted that the September 1, 2012 agreement constitutes a waiver of any rights under the OWBPA or the ADEA. The College never asserted such a waiver in either of its responses to Ms. Potts' first two EEOC charges, nor is it doing so at this time. The College fully acknowledges that the Agreement does not contain a release under the OWBPA/ADEA, nor was the Agreement ever intended to waive such a claim (as it was instead intended to settle the state administrative claims Ms. Potts brought against the College)." (*See* Mot. at Ex. 7 (Jan. 10, 2014).)

- Finally, in a pleading filed in the state court action on December 13, 2013, over four months before the EEOC commenced this litigation, the College explicitly stated "Plaintiff does not assert that [] the parties' agreement constitutes a waiver of discrimination claims." (*See* Mot., Ex. 8 at 1 n.1.)[1]

---

[1] Admissions contained in a pleading are binding upon the party and constitute judicial admissions. *Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013).

All of these actions occurred prior to April 30, 2014, when the EEOC filed this Complaint. Thus, at that time there was nothing for the EEOC to redress by filing this suit. The EEOC has failed to carry its burden that it had standing to bring the First Claim.

Rather than acknowledge the multiple pre-suit facts demonstrating that the College did not assert a waiver, the EEOC instead ignores them, and suggests that the College's justiciability argument is dependent on the Declaration of Matthew Gerber, which the College submitted as an attachment to its motion. This argument is also without merit. The Declaration simply attested to and further supported the undisputed facts already in the record and listed above. The EEOC also tries to make the College's unequivocal position somehow seem artful, as if the College is attempting to leave the door open to a future assertion of waiver. (*See* EEOC's Resp. at 11 (taking issue with the College's position because the Gerber Declaration lacked a statement that the College "will ***never*** assert that the Agreement constitutes a waiver of Ms. Potts' ADEA claims or waives her otherwise unfettered right to file charges of discrimination and cooperate in any proceeding conducted by the EEOC or FEPAs, whether that proceeding is based on a charge filed by Potts or anyone else.").) Nothing could be further from the truth. Nevertheless, to address the EEOC's assertion, the College has provided a Second Gerber Declaration that states exactly what the EEOC claims it should. (*See* Exhibit A, Second Declaration of Matthew Gerber.)[2]

---

[2] Although this declaration is provided as a direct reply to the information requested by the EEOC in its response brief, should the EEOC claim that it needs to file a surreply for the limited purpose of addressing this declaration, the College would not oppose such a request.

To attempt to circumvent these dispositive facts, the EEOC argues that the College could somehow, at some unknown point in the future, renege on its admissions, statements, waivers, and the representations of its counsel, including both before this Court and in the operative pleading filed in the state court action, and somehow figure out a way to use the Agreement to prevent Ms. Potts from filing an additional (fourth) charge with the EEOC. This is unsupportable. A potential future injury does not meet the case or controversy requirement under Article III of the Constitution. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013) ("allegations of *possible* future injury" are insufficient to form the basis for Article III jurisdiction). Moreover, because the Agreement was entered into on September 1, 2012, the 300-day period for Ms. Potts to file additional charges under the Agreement has long since lapsed, making the EEOC's argument even more absurd.[3]

Moreover, even if there had been standing to bring the First Claim at the time this lawsuit was filed (there was not), the two declarations, in addition to all other facts in the record, make it abundantly clear that the claim is moot, even after applying the heightened standard under the voluntary cessation doctrine. *See WildEarth Guardians*, 690 F.3d at 1187 (dismissing case under voluntary cessation doctrine where "alleged unlawful conduct is not reasonably likely to recur").

---

[3] Moreover, as a practical matter, Ms. Potts was certainly not deterred from filing charges, having filed three. The College maintains that Ms. Potts did not have a reasonable and good faith belief for any of the charges. *See Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1296 (D. Colo. 2009).

There is simply no issue to adjudicate in the First Claim. The EEOC has failed to carry its burden to establish it has standing to bring the First Claim. Without subject-matter jurisdiction, it must be dismissed.

**B.     The EEOC Cannot Circumvent *Whitehead* and Fails to State a Claim.**

The EEOC unsuccessfully attempts to avoid the controlling case in the Tenth Circuit, *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184 (10th Cir. 1999). It attempts to make an independent cause of action out of the OWBPA by citing to distinguishable out-of-circuit district court opinions. *Whitehead*, however, clearly holds that "the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim." *Id.* at 1192; *see also* 29 U.S.C. § 626 (f)(1-4) (titled, simply, "Waiver"). The OWBPA cannot be used as an affirmative cause of action, except in one narrow circumstance not applicable here – when it is used by "plaintiffs in an ADEA action when an employer invokes the waiver," including by seeking declaratory or injunctive relief. *Id.* at 1191. For the EEOC, there is simply no other cause of action available under the OWBPA. Because the College has not asserted that the Agreement constitutes a waiver under the ADEA, but instead has unequivocally represented that Ms. Potts has never waived her ability to file charges with the EEOC, there is no declaratory or injunctive relief available. Thus, the EEOC has failed to plausibly allege a claim under the OWBPA.

The EEOC argues that *Whitehead* is distinguishable on the facts because it did not involve a situation where other ADEA claims were brought together with the independent claim for a violation of the OWBPA. In making this argument, the EEOC completely ignores the College's repeated citation to *Burden v. Isonics Corp.*, No. 09-CV-01028-CMA-MJW, 2009 WL

3367071 (D. Colo., Oct. 15, 2009), a District of Colorado decision directly applying the holding of *Whitehead* to dismiss a claim under the OWBPA. Just as the case here, the plaintiff in *Burden* brought an OWBPA claim together with a claim for retaliation under the ADEA. *Id.* at *1. Notwithstanding the existence of the retaliation claim, the Court dismissed the OWBPA claim. In doing so, it held that "whether plaintiff knowingly and voluntarily waived a right or claim under the ADEA is simply not at issue in this case," and the plaintiff thus cannot assert an OWBPA claim. *Id.* at *7. The same applies here, and the First Claim should be dismissed for failure to state a claim.

Another angle the EEOC uses to try to avoid *Whitehead* is the reliance upon two opinions from district courts outside of the Tenth Circuit: *Krane* and *Bull*. These two cases create their own minority view – that the OWBPA adopted the Congressional purpose of the ADEA, and thus a plaintiff retains an affirmative ability to enforce the OWBPA's provisions. *See Krane v. Capital One Services, Inc.*, 314 F. Supp. 2d 589 (E.D. Va. 2004); *Commonwealth of Massachusetts v. Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d 90 (D. Mass. 1998). This is not the law in the Tenth Circuit.

The majority of jurisdictions, led by the Tenth Circuit, have decided to the contrary – holding that based on the plain language of the OWBPA, a plaintiff cannot bring a separate OWBPA claim. *See Whitehead*, 187 F.3d at 1192; *EEOC v. Sears, Roebuck and Co.*, 883 F. Supp. 211, 215 (N.D. Ill. 1995) ("The fact that Congress could have created a separate cause of action, but chose not to, precludes this Court from reading one into the statute now. Accordingly, to the extent the EEOC is attempting to create a cause of action based solely on an OWBPA violation, 29 U.S.C. § 626(f), the Court concludes that such a claim must be dismissed as a

matter of law." (emphasis added));[4] *Williams v. General Motors*, 901 F. Supp. 252, 254 (E.D. Mich. 1995) ("a violation of OWBPA does not trigger a substantive cause of action under ADEA"); *EEOC v. Sara Lee Corp.*, 923 F. Supp. 994, 999 (W.D. Mich. 1995) ("a failure to meet the requirements does not constitute a separate cause of action and is not a violation of the ADEA"); *Syverson v. Int'l Bus. Machines Corp.*, No. C-03-04529-RMW, 2007 WL 2904252, at *5 (N.D. Cal. Oct. 3, 2007) ("The plain text of the OWBPA is consistent with those cases holding that the OWBPA only sets out the terms of an effective waiver and does not create an independent cause of action."); *Halstead v. Am. Int'l Grp. Inc.*, No. CIV-04-815-SLR, 2005 WL 885200, at *2 n.5 (D. Del. Mar. 11, 2005) (The statute, 29 U.S.C. § 626(f), "protects older employees from waiving their rights under the ADEA unknowingly or involuntarily. It does not, however, create an independent right of action."); *EEOC v. UBS Brinson, Inc.*, No. 02-CIV-3748-RMBTK, 2003 WL 133235, at *3 (S.D.N.Y. Jan. 15, 2003) ("The OWBPA Does Not Create an Independent Cause of Action.").

Even the Supreme Court has suggested it agrees with this interpretation. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998) (suggesting that the OWBPA only "governs the effect under federal law of waivers or releases on ADEA claims"); *accord Whitehead*, 187 F.3d at 1191-92 (stating that the Supreme Court's language "strongly indicates that the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a

---

[4] The holdings in *EEOC v. Sears, Roebuck, and Co.* and the other cases brought by the EEOC cited hereafter, show there is no credence to the EEOC's argument that it should be treated differently than other non-EEOC plaintiffs and be allowed to bring an independent cause of action under the OWBPA. (*See* EEOC's Resp. at 18-19.)

separate and distinct ADEA claim"); *Ambers v. Village Family Serv. Ctr., Inc.*, 329 F. Supp. 2d 1046, 1053 (D.N.D. 2004) ("The Supreme Court also appears to agree with this interpretation."). Under the applicable majority rule, the EEOC cannot assert the First Claim.

The EEOC also argues, without legal support, that the reason it should be allowed to bring the First Claim is that it is alleging a violation of subsection (4), rather than subsection (1) of the OWBPA (29 U.S.C. § 626(f)). The EEOC is wrong. None of the cases cited by either party differentiates a plaintiff's ability to bring different claims under the different four subparts of Section 626(f) – all of which fall under the umbrella title of "Waiver." Likewise, nowhere in subsection (4) are the words "chilling effect" used, nor do *Bull* and *Krane* differentiate a plaintiff's ability to bring independent violations under the different subparts of Section 626(f).[5] Under *Whitehead* and the many cases cited above that follow its majority rule, the EEOC is simply prevented from using the OWBPA as an affirmative cause of action.

The EEOC's First Claim for an independent cause of action under the OWBPA fails to state a claim upon which relief can be granted and must be dismissed. *See Whitehead*, 187 F.3d at 1192.

---

[5] Moreover, even if the Court were to apply the minority rule of *Krane* and *Bull*, those cases are readily distinguishable. The agreements at issue in those cases required the payment of attorneys' fees and tender-back in the event of the filing of an ADEA suit, thus dissuading other employees who were subject to the same provisions from asserting their rights. Here, the Agreement contains no provisions regarding attorneys' fees or tender-back, and does not apply to any individuals other than Ms. Potts. She was certainly not dissuaded from going to the EEOC. She instead filed three charges.

**II.  THE EEOC'S RESPONSE FAILS TO SUSTAIN THE SECOND CLAIM**

    **A.  The EEOC Essentially Admits It Failed to Give Notice and Conciliate, and There Is No Subject-Matter Jurisdiction over the Second Claim.**

        1.  The Law in the Tenth Circuit Must be Followed.

The EEOC acknowledges that the law in the Tenth Circuit requires that it must exhaust certain jurisdictional prerequisites under the ADEA, including notice and conciliation, before filing a lawsuit. *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012); *Pretlow v. Garrison*, 420 F. App'x 798, 802 (10th Cir. 2011); *Logsdon v. Turbines, Inc.*, 399 F. App'x 376, 378 (10th Cir. 2010) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)); *EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007).

The EEOC attaches an unpublished order from Judge Freudenthal from the District of Wyoming and suggests that this Court should ignore the Tenth Circuit's rulings on this issue due to the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). *Arbaugh*, however, did not govern the jurisdictional prerequisites of notice and conciliation that are at issue here. *See id.* at 515 (covering only the requirement that an employer have a certain number of employees before it is subject to employment discrimination laws).

A lower court's "task, however, is not to predict what the Supreme Court might do but rather to follow what it has done." *West v. Anne Arundel Cnty., Md.*, 137 F.3d 752, 757 (4th Cir. 1998). Although the EEOC convinced Judge Freudenthal to violate this principle and ignore the Tenth Circuit's precedent issued after the *Arbaugh* decision, this Court should not fall into the same trap. The Tenth Circuit has interpreted the law and found that jurisdictional prerequisites still apply to the ADEA after the *Arbaugh* decision. *See, e.g., Logsdon*, 399 F. App'x at 378. This Court is bound to decide in the same fashion, and assess whether the EEOC met its burden to

establish that it complied with its jurisdictional prerequisites in the Second Claim.[6] Because the EEOC failed to meet its burden, the Court must therefore dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

2. *Outback Steakhouse* Applies and Justifies Dismissal Because the EEOC Failed to Provide Notice and Conciliation of its Second Claim.

The EEOC does not dispute that it was required to provide notice to the College and to conciliate its Second Claim regarding its criticism of the form severance agreements used by the College before it filed this lawsuit. (*See* EEOC's Resp. at 28 of 46.) It instead tries to convince the Court that the scope of its duties with regard to these jurisdictional prerequisites was extremely narrow. The EEOC is again mistaken.

The *Outback Steakhouse* case, which the EEOC itself favorably relies upon in its brief (EEOC's Resp. at 27 of 46), is instructive and on-point. *See* 520 F. Supp. 2d at 1262. There, the EEOC filed a lawsuit which enlarged the scope of a regional dispute with an employer into a national action without providing notice and without fully conciliating the expanded claim. *Id.* at 1268. The court placed the burden on the EEOC to establish its compliance with the "comprehensive administrative procedure" intended to allow "the fullest opportunity to resolve charges of discrimination without resorting to the courts." *Id.* at 1262. The court then evaluated the claims, determined that the EEOC failed to provide the employer with notice and a full

---

[6] In a further effort to misguide the Court from following applicable law, the EEOC cites with bold highlights to *EEOC v. Mach Mining, LLC*, 738 F.3d 171 (7th Cir. 2013), an opinion currently on certiorari to the Supreme Court. The Seventh Circuit's position on conciliation <u>is contrary to the law in every other circuit</u>, including the Tenth Circuit.

opportunity to conciliate, and dismissed the expanded claims for lack of subject matter jurisdiction.

Here, like in *Outback Steakhouse*, the EEOC improperly expanded the scope of its dispute with the College by adding the Second Claim (regarding the College's form severance agreements) without providing the College with prior notice, and without making any effort to conciliate this claim. The EEOC attempts to defend its failure to provide notice by stating that since the College provided the form severance agreements to the EEOC, they were "on the table" and thus the EEOC had unfettered access to file a lawsuit about the agreements. The EEOC's "on the table" theory is not supported by any legal authority

In *Outback Steakhouse*, the EEOC made a similar argument, by asserting that since the employer "responded to its information requests with statements putting their national practices at issue," the employer had interjected the issue into the dispute and notice should be imputed upon the employer. *Id.* at 1263. The court rejected the EEOC's argument, holding that "such inquiries are simply insufficient to put Defendants on notice that charges regarding events and personnel in [the] three-state region had the potential to lead to a nationwide civil suit." *Id.* at 1266. Likewise, here, the College provided its form severance agreements to the EEOC in order to show that the Agreement entered into with Ms. Potts was not a form severance agreement (in fact, it was not a severance agreement at all) and had no relationship whatsoever to the College's form agreements – thus making clear that the Potts Agreement was a unique settlement document, not something the College routinely used, and showing why there was no OWBPA issue in the Potts Agreement. Rather than admitting that fact, however, the EEOC has instead attempted to expand the scope of its dispute with the College, by bringing a second and unrelated

claim regarding form severance agreements without providing notice to the College. This was improper.

The EEOC then takes the precarious position that its Determination, which it issued two days after receiving Ms. Potts' third charge and without requesting or allowing any time for a response from the College, somehow should have put the College on notice of the Second Claim. (*See* Doc. 6-5.) The EEOC is again wrong. The Determination made no reference whatsoever to the form agreements. Instead the EEOC only made a determination on two enumerated issues: (1) whether the College retaliated against Debbi Potts in violation of 29 U.S.C. § 623(d); and (2) whether the College used an invalid waiver in its Agreement with Debbi Potts in violation of 29 U.S.C. § 626(f). (*Id.* at 1-2.) The Determination completely failed to identify or reference any of the form severance agreements. Indeed, the College provided the form severance agreements <u>in response to the Determination</u>, to show the College that the Potts Agreement was not a form or a severance agreement. (*See* Letter to EEOC, Doc. 6-7 (clarifying that the Agreement was not "in any way based on the College's form severance agreement[s]" and providing copies of the same for the EEOC's review).)

The EEOC suggests that notice should be imputed to the College because it asked for voluntarily compliance by providing relief to Debbi Potts "and any other persons adversely affected," to "employees who have signed the same or similar severance agreements," and to "other affected persons." What the EEOC ignores, however, is the fact that the Potts Agreement was a one-off, one-page <u>settlement</u> agreement, negotiated directly between two laypeople, Ms. Potts and the College's CEO Eric Juhlin. (*See* Doc. 6-1.) The EEOC overlooks the undisputed fact that this Agreement is not similar in any way to the much more lengthy form severance

agreements. (*Compare* Docs. 6-1 with 1-2, 1-3, 1-4, and 1-5.) The EEOC has the burden, and

just as in *Outback Steakhouse*, it has failed to demonstrate that it provided notice to the College

of the Second Claim before filing suit.[7] *See* 520 F. Supp. 2d at 1268 ("I find the EEOC's failure

to indicate with more specificity the potential national scope of the claims against Defendants

was insufficient to put them on notice of the scope of the potential for a national lawsuit against

them.").

      The EEOC also failed to conciliate the issue of the form severance agreements, instead

proceeding directly to litigating the issue in its Second Claim. The EEOC does not really dispute

that it failed to conciliate. Instead, it takes the position that it was not <u>required</u> to conciliate this

claim – at all. The EEOC is incorrect. In *Outback Steakhouse*, the court evaluated whether the

EEOC had met its jurisdictional prerequisites, including conciliation. *See id.* at 1267-68. It

evaluated the substance of the conciliation efforts, including competing affidavits submitted by

both by representatives of the EEOC and the employer. *Id.* Pointing out that it was the EEOC's

burden to establish jurisdictional standing, the court sided with the employer and dismissed the

case. *Id.* at 1268-69. Here, the EEOC has provided even less – in the face of the College's

declaration from Matthew Gerber stating that the EEOC failed at conciliation to "raise the issues

---

[7] The EEOC also argues that it did not have a duty to "apprise CollegeAmerica with an itemization in EEOC's determination of the specific deficiencies in the form severance agreements." (Resp. at 31.) The College agrees that the EEOC did not have to itemize all specific deficiencies in the form severance agreements, but points out that the EEOC did have a duty to put the College on notice that the EEOC believed that the form severance agreements violate the OWBPA. The EEOC failed to even mention or reference the form severance agreements in any way in the Determination and instead brought an entirely separate cause of action in its Complaint, without providing notice.

that form the basis of the Second Claim of the EEOC's Complaint" – the EEOC provides

absolutely nothing and its brief is completely silent on the issue. It is undisputed that this claim

was not raised in conciliation – it was raised for the first time in the Complaint.[8] If the EEOC

had conciliated on this claim, it would have provided an affidavit from its investigator who

attended the conciliation attesting to the same. It did not, because it could not. Just as it failed to

provide notice, the EEOC failed to conciliate regarding the form agreements.[9] The Second Claim

should accordingly be dismissed. *See Outback Steakhouse*, 520 F. Supp. 2d at 1268-69.

The EEOC also takes the position that it did not have to conciliate regarding the form

severance agreements because resolving that issue without also resolving the separate claims

under the Potts Agreement "would not have been agreeable to the EEOC." (EEOC's Resp. at 37

of 46.) In so stating, the EEOC turns a blind eye to its governing statute for age discrimination

claims. The "primary emphasis" of the ADEA is to use informal "conciliation to resolve

---

[8] The EEOC suggests that it should be allowed to take discovery from the College to determine "what it knew or did not know about the EEOC's concerns" with the form severance agreements. (Resp. at 37.) It provides no legal support for this proposition, and it makes no sense. The College has presented facts and sworn statements clearly demonstrating that it did not know about the EEOC's concerns and was not on notice of the Second Claim. The EEOC has responded with <u>nothing</u> – not even a competing declaration. The EEOC knows that it failed to provide notice and conciliation. It needs no discovery on what it already knows.

[9] The EEOC cites to cases including *EEOC v. Zia*, 582 F.2d 527, 529 (10th Cir. 1978) for the proposition that if it made any efforts at conciliation, dismissal is not appropriate. This argument is also without merit. Where the EEOC fails to conciliate, as is the case here with respect to its claim challenging the form severance agreements, dismissal for failure to conciliate is appropriate. *See Dunlop v. Resource Sciences Corp.*, 410 F. Supp. 836, 843 (N.D. Okla. 1976); *see also Marshall v. Sun Oil Co. of Pennsylvania*, 592 F.2d 563, 566 (10th Cir. 1979) (describing the "significant effort" required of the EEOC in conciliation to effect voluntary compliance). If the EEOC had actually made efforts to conciliate the Second Claim, but those efforts had not been made in good faith, the proper remedy would have been to stay the case pending further conciliation. *See Zia*, 582 F.2d at 529; *Marshall*, 592 F.2d at 566.

disputes." *Marshall v. Sun Oil Co. of Pennsylvania*, 592 F.2d 563, 565-66 (10th Cir. 1979). The EEOC is required to undertake a "full and exhaustive" conciliation in an effort to resolve matters "wherever possible without resorting to formal litigation." *Id.* The EEOC's self-serving statement that it would not have agreed to informally resolve its concerns about the College's form severance agreements if, for example, the College had agreed to modify the offending provisions is contrary to a guiding principle of the statute. It also makes no sense. If the College had been willing to resolve the EEOC's concerns (had they been raised), the Commission had a statutory duty to attempt in good faith to do so and to thereby narrow the issues to be addressed by this Court.

For all of the foregoing reasons, the EEOC's failure to give notice and conciliate dictates dismissal of the Second Claim.

**B.    The Second Claim Also Fails as a Matter of Law.**

For the same reasons set forth above in Section I.B, even if the EEOC had not failed to conciliate and put the College on notice of the Second Claim, it should still be dismissed under Rule 12(b)(6) because there is no independent claim for a violation of the OWBPA. *Whitehead*, 187 F.3d at 1191; *Burden*, 2009 WL 3367071 at *7.

**III.    THE THIRD CLAIM FAILS BECAUSE THE ALLEGED ADVERSE EMPLOYMENT ACTION HAPPENED BEFORE THE PROTECTED ACTIVITY PRECLUDING A CLAIM FOR RETALIATION AS A MATTER OF LAW**

The EEOC and the College agree that timing alone can be determinative of whether or not the EEOC has stated a claim for retaliation. The EEOC admits, and its Complaint acknowledges, that the College unequivocally communicated its intent to sue Ms. Potts for

breach of contract <u>two weeks before</u> Ms. Potts filed her first charge with the EEOC, and before Ms. Potts ever told the College she had any allegations regarding age discrimination.

Just as it did with its response to the first two claims, the EEOC makes no effort whatsoever to distinguish the case of *Burden v. Isonics Corp.*, 2009 WL 3367071 at *6-7, which is particularly applicable to the EEOC's retaliation claim. The plaintiff in *Burden* made exactly the same claim that Ms. Potts made in her first charge of discrimination – that other employees were offered greater severance packages than she received. The timeline was that the employer (1) allegedly gave other employees greater severance packages; then (2) informed the plaintiff that he was going to be terminated; the plaintiff then (3) engaged in the protected activity of informing the employer that he intended to seek legal counsel; and subsequently (4) the plaintiff was terminated and allegedly did not receive an adequate severance package. *Id.* The *Burden* court dismissed the retaliation claim, holding, "According to the facts alleged in the Complaint, however, it was not until AFTER the first two alleged adverse employment actions occurred that plaintiff allegedly engaged in protected activity. <u>Logic dictates that the defendant could not have been motivated to take an adverse action as a result of something that happened after the alleged adverse action was taken</u>." *Id.* at *6 (emphasis added).

Just like in *Burden*, where the employer informed the employee that it intended to terminate him prior to any protected action, the College here informed Ms. Potts it intended to file a breach of contract action against her prior to her taking any protected action. Logically, there is no causal connection between the College informing Ms. Potts of its intent to file a lawsuit, and Ms. Potts' <u>subsequent</u> filing of a charge with the EEOC.

Instead of addressing *Burden*, the EEOC relies on the case of *EEOC v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775 (W.D. Va. 1980), which the EEOC misleadingly claims "bears an uncanny resemblance to the actions of CollegeAmerica in this action." (EEOC's Resp. at 43 of 46.) To the contrary, this case bears no resemblance to the facts of this case, nor is it applicable to the analysis at hand in this Motion. In *Virginia Carolina Veneer*, the employer, after being advised of a charge of sex discrimination by a former employee, told the EEOC that it intended to "cooperate fully" with the investigation. Instead, two days later, it filed a claim for defamation against the former employee solely on the basis of her statements to the EEOC. *Virginia Carolina Veneer* did not involve a situation, as is present here, where the employer informed the former employee of its intent to sue her for an unrelated breach of contract prior to any allegations of employment discrimination. In fact, the *Virginia Carolina Veneer* case is such an extreme example of retaliation that the court entered affirmative summary judgment on retaliation in favor of the EEOC.[10] The case is completely inapposite here.

The EEOC also relies on *Anderson v. Coors Brewing Co.*, 181 F.3d 1171 (10th Cir. 1999) for the proposition that a one and a half month period between protected activity and adverse action may establish a prima facie case of causation. *Anderson* did not involve a one and a half

---

[10] The court in *Virginia Carolina Veneer* also explicitly pointed out that the employer's allegations in its defamation lawsuit were exclusively based on the former employee's statements to the EEOC – "No other defamatory writings, statements or actions were alleged in defendant's state court action. Defendant has not alleged any other basis for its state court suit." *Id.* at 776. Here, it is undisputed, and indeed admitted in the Complaint, that the College filed the state court lawsuit against Ms. Potts for her breach of a non-disparagement provision in her Agreement with the College – based on intentionally disparaging and malicious statements she made about the College to another former employee, which had nothing whatsoever to do with discrimination. (Compl. ¶ 17; State Court Am. Compl., Doc. 6-8.)

month period, but instead derived that time period from *Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584 (10th Cir. 1994). In *Ramirez*, the Tenth Circuit found that the plaintiff's circumstantial allegations were sufficient for a prima facie case where the employer's alleged adverse actions were "instituted" just one and a half months <u>after</u> the plaintiffs filed a grievance. *Id.* at 596. Here, we have just the opposite scenario, where the College "instituted" and set into motion its claim for breach of contract against Ms. Potts two weeks <u>before</u> Ms. Potts engaged in any protected action. *Anderson*, *Ramirez*, and *Virginia Carolina Veneer* do nothing to rebut the holding in *Burden*, that where a complaint shows that the adverse employment action occurred prior to the protected activity, as is the case here, a retaliation claim must be dismissed for failure to state a claim.

The EEOC's bare allegations that the state court lawsuit was retaliatory against Ms. Potts are conclusory and completely repudiated by the undisputed fact that the College had already unequivocally told Ms. Potts it was going to sue her for breach of contract before she engaged in any protected activity. The EEOC has failed to plausibly state a claim, and the Third Claim should accordingly be dismissed.

<u>**CONCLUSION**</u>

Plaintiff cannot establish jurisdiction and it fails to state a claim upon which relief can be granted. Accordingly, the College respectfully requests entry of an order dismissing the EEOC's case in its entirety and for such other relief as the Court deems appropriate.

Respectfully submitted this 11th day of August, 2014.

*s/ Craig R. May* _____
Raymond W. Martin (#8055)
Craig R. May (#32267)

Thomas E.M. Werge (#42726)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303-244-1800
Facsimile: 303-244-1879
martin@wtotrial.com
may@wtotrial.com
werge@wtotrial.com
*Attorneys for CollegeAmerica*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2014, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following e-mail addresses:

On behalf of Plaintiff EEOC:

- **D. Andrew Winston**
  andrew.winston@eeoc.gov
- **Rita Byrnes Kittle**
  rita.kittle@eeoc.gov

On behalf of Defendant CollegeAmerica:

- **Raymond W. Martin**
  martin@wtotrial.com
- **Craig R. May**
  may@wtotrial.com
- **Thomas E.M. Werge**
  werge@wtotrial.com

s/*Kimberlee Prechodko*
Kimberlee Prechodko