IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

 Plaintiff,

v.

COLLEGEAMERICA DENVER, INC., n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., d/b/a COLLEGEAMERICA,

 Defendant.

___

MEMORANDUM OPINION AND ORDER
___

Babcock, J.

 This case is before me on Defendant CollegeAmerica Denver, Inc's ("CollegeAmerica") Motion to Dismiss Complaint [Doc # 6]. After consideration of the motion, all related pleadings, and the case file, I grant CollegeAmerica's motion in part and deny it in part.

### I. Background

 This action arises out of Charging Party Debbi Potts' ("Potts") employment as campus director for CollegeAmerica's Cheyenne, Wyoming campus from January 9, 2009 until her resignation on July 16, 2012. Complaint, ¶ 6. On September 1, 2012, after her resignation, Potts and CollegeAmerica entered into an agreement (the "Agreement") which provides in pertinent part as follows:

> CollegeAmerica ... agree[s] to:
>
> 1.) Pay Potts $7,000.00.
>
> ...
>
> 3.) Hold Potts harmless for initiating contact with agencies prior to September 1, 2012.
>
> Potts agrees to:
>
> 1.) ... refrain from personally (or though the use of any third party) contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance that shall bring harm to CollegeAmerica ....
>
> ...
>
> 3.) To not intentionally with malicious intent (publicly or privately) disparage the reputation of CollegeAmerica....

*See* Ex. 1 to Complaint.

By letter dated January 11, 2013, CollegeAmerica notified Potts that it considered emails she had exchanged with another of its former employees to be in violation of the Agreement's non-disparagement clause and demanded the return of its $7,000 payment to her. Complaint, ¶14. On January 25, 2013, Potts filed the first of three charges of discrimination against CollegeAmerica with the EEOC. Complaint, ¶ 15. CollegeAmerica received notice of Potts' first charge on March 18, 2013 and filed suit against Potts alleging breach of the Agreement's non-disparagement clause in state court on March 25, 2013 (the "State Court Action"). Complaint, ¶¶ 16 & 17.

Potts filed her second and third charges of discrimination against CollegeAmerica with the EEOC on April 8, 2013 and December 18, 2013, respectively. Complaint, ¶¶ 18 & 23. In connection with Potts' discrimination charges, CollegeAmerica provided the EEOC with four

Separation and Release Agreements (the "Separation Agreements") that it has routinely used since 2012.  Complaint, ¶ 24.  All of these agreements include a release of claims provision and a non-disparagement clause.  Complaint, ¶¶ 25-31.

On December 20, 2013, the EEOC issued a Letter of Determination finding reasonable cause to believe that CollegeAmerica had engaged in unlawful employment practices in violation of the Age Discrimination in Employment Act (the "ADEA").  Complaint, ¶ 33.  The parties efforts to resolve the matter through conciliation were unsuccessful.  Complaint, ¶ 34.

On April 30, 2014, the EEOC filed this action and asserted three claims against CollegeAmerica: (1) a claim asserting that CollegeAmerica, through the Agreement, denied Potts the full exercise of her rights under the ADEA and interfered with the statutorily assigned responsibility of the EEOC and state Fair Employment Practices Agencies' ("FEPAs") to investigate charges of discrimination in violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4), Complaint ¶¶ 38-39; (2) a claim asserting that CollegeAmerica, through the Separation Agreements, denied other employees the full exercise of their rights under the ADEA and interfered with the statutorily assigned responsibility of the EEOC and FEPAs to investigate charges of discrimination in violation of Section 7(f)(4) of the ADEA, Complaint ¶¶ 41-42; and (3) a claim asserting the CollegeAmerica retaliated against Potts by filing the State Court Action in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d), Complaint ¶¶ 44-46.

College America seeks the dismissal of all of the EEOC's claims arguing that the Court lacks jurisdiction to hear the EEOC's first two claims and that all of the EEOC's claims fail to state a claim upon which relief may be granted.

## II. Standard of Review

### A. Rule 12(b)(1)

In seeking dismissal under Fed. R. Civ. P. 12(b)(1), a party may go beyond the allegations in the complaint and challenge the facts upon which subject matter jurisdiction is based. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995). In such instances, a court has wide discretion to allow affidavits and other documents without converting the motion to dismiss into a motion for summary judgment. *Id.* Once subject matter jurisdiction is challenged, the party claiming jurisdiction bears the burden of proving it by a preponderance of the evidence. *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir. 1999).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center,* 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burnett v. Mortg. Elec. Registration Sys., Inc.,* 706 F.3d 1231, 1235 (10th Cir. 2013) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, supra* (citation omitted).

Although plaintiffs need not provide "detailed factual allegations" to survive a motion to dismiss, they must provide more than "labels and conclusions" or "a formulaic recitation of the

4

elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Iqbal,* 556 U.S. at 678 (a complaint will not suffice if it tenders "naked assertions devoid of further factual enhancement"). Furthermore, allegations that are conclusory are "not entitled to be assumed true." *Iqbal,* 556 U.S. at 681.

"[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver,* 180 F.3d 1185, 1188 (10th Cir. 1999). Under Rule 12(b)(6), however, a court may properly consider materials subject to judicial notice such as court files and matters of public record and documents referred to the complaint if the documents are central to the plaintiff's case and their authenticity is not in dispute. *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (citations omitted); *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002).

### III. Analysis

### A. The EEOC's Claim Based on the Agreement

The EEOC's First Claim for Relief based on the Agreement is brought pursuant to Section 7(f)(4) of the ADEA which provides that "[n]o waiver agreement may affect the [EEOC's] rights and responsibilities to enforce this chapter ...[or]... be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the [EEOC]." 29 U.S.C. § 626(f)(4). The EEOC requests declaratory and injunctive relief to void the Agreement and enjoin CollegeAmerica from enforcing its unlawful terms. *See* Complaint, Prayer for Relief.

5

CollegeAmerica first argues that there is no justiciable controversy because it has never asserted and will never assert that Potts waived her ADEA rights via the Agreement. In support of this argument, CollegeAmerica provides evidence that it did not assert such a waiver in connection with Potts' EEOC charges or in its complaint in the State Court Action, all of which pre-date the filing of this case by the EEOC. *See* Exhibits 3, 4, 6, 7 & 8 to Motion. CollegeAmerica also provides an affidavit from Matthew Gerber, its general counsel, in which he states that CollegeAmerica does not and will never assert that the Agreement constitutes a waiver of Potts' ADEA rights to file a charge or cooperate in any proceeding involving the charge of another. *See* Exhibit A to Reply to Motion.

In response, the EEOC cites a pleading in the State Court Action in which CollegeAmerica asserted that Potts violated the Agreement by filing charges with the EEOC. *See* Exhibit 2 to Response to Motion. CollegeAmerica subsequently amended its complaint in the State Court Action to include a footnote sating that it was not asserting that the Agreement constitutes a waiver of discrimination claims or that Plaintiff violated the Agreement by filing EEOC charges. *See* Exhibit 8 to Motion. CollegeAmerica's amended complaint was filed after the EEOC issued its Letter of Determination but before this case was filed.

The EEOC also acknowledges that the Court only has jurisdiction over "live controvers[ies]," *see Mink v. Suthers,* 482 F.3d 1244, 1253 (10th Cir. 2007), but argues that its first claim is viable because it falls under the exception for cases in which a defendant voluntarily ceases allegedly improper behavior but is free to resume it once the case is dismissed. *See Knox v. Serv. Employees Int'l Union, Local 1000,* – U.S. –, 132 S.Ct. 2277, 2287 (2012). This exception is based on the principle that " a party should not be able to evade judicial

review, or to defeat a judgment, by temporarily altering questionable behavior." *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1115 (10th Cir. 2010) (citations omitted).

Because it arises out of the doctrine of mootness, the voluntary cessation exception cited by the EEOC is applicable when the behavior in question ceases after suit is filed. *See WildEarth Guardians v Pub. Serv. Co. of Colo.,* 690 F.3d 1174, 1185 (10th Cir. 2012). The party asserting mootness "bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Rio Grande Silvery Minnow,* 601 F.3d at 1116 (citations and internal quotations omitted). Conversely, when the behavior in question ceases prior to the time suit is filed, it is a question of redressability, and the burden of proof is on the plaintiff. *WildEarth Guardians, supra.*

The first determination I must make is whether CollegeAmerica's argument that there is no justiciable controversy is one of mootness or redressability. While the evidence shows that CollegeAmerica did not assert that Potts waived her ADEA rights via the Agreement on several occasions prior to the filing of this case, College America is also relying on the affidavits of its general counsel dated after the filing of this case to establish that it does not and will never assert a waiver of Potts' ADEA rights via the Agreement. I conclude then that the jurisdictional question before me regarding the EEOC's First Claim for Relief is one of mootness. CollegeAmerica therefore bears the burden of showing that "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have totally completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow,* 601 F.3d at 1115 (citation omitted).

7

Based on the affidavits of its general counsel and its most recent representation in the State Court Action, I conclude that CollegeAmerica has met its burden of demonstrating that there is no reasonable expectation that it will use the Agreement to interfere with the ADEA rights of Potts or the EEOC. To the extent that CollegeAmerica previously used the Agreement in this manner, any resulting effects have been eradicated by CollegeAmerica's recent representations and assurances. The EEOC's First Claim for Relief based on the Agreement is therefore moot and must be dismissed for lack of jurisdiction. In the absence of jurisdiction, I need not address the CollegeAmerica's alternative argument that the EEOC's First Claim for Relief fails to state a claim upon which relief amy be granted.

**B. The EEOC's Claim Based on the Separation Agreements**

Like its claim based on the Agreement, the EEOC's Second Claim for Relief based on the Separation Agreements is brought pursuant to Section 7(f)(4) of the ADEA. College America first argues that the Court lacks jurisdiction over this claim because the EEOC failed to provide it with notice that the Separation Agreements purportedly violate the ADEA or to engage in conciliation with respect to these Agreements. *See* 29 U.S.C. § 626(b) ("Before instituting any action under this section, the EEOC shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion."); 29 U.S.C. § 626(d)(2) ("Upon receiving ... a charge, the EEOC shall promptly notify all persons named in such charge ... and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.").

In response, the EEOC first argues that notice and conciliation are not jurisdictional prerequisites to suit under the ADEA pursuant to *Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006). In *Arbaugh*, the Supreme Court addressed whether Title VII's definition of "employer" to include only those having fifteen or more employees was an issue of subject-matter jurisdiction or an essential element of a Title VII claim. *Id.* at 503. The Supreme Court held that Title VII's threshold number of employees was an element of a Title VII claim, not a jurisdictional issue, and adopted a bright line test that a threshold limitation on a statute's scope is jurisdictional only when Congress clearly states that it is. *Id.* at 514-516. Significant to the Supreme Court's decision was the fact that Title VII's threshold number of employees was in a definitions provision separate from Title VII's jurisdictional provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 515 (citation omitted).

Since *Arbaugh*, the Tenth Circuit has held that the exhaustion of administrative remedies remains a jurisdictional prerequisite to bringing suit under Title VII or the ADEA. *Logsdon v. Turbines, Inc.,* 399 Fed. Appx. 376, 378 (10th Cir. 2010). In so holding, the Tenth Circuit acknowledged the bright line test adopted by the Supreme Court in *Arbaugh* but concluded that it was bound to follow other Tenth Circuit authority specifically holding that the exhaustion of administrative remedies is a jurisdictional prerequisite to discrimination claims "absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Id.* at 378 n. 2 (citation omitted). Other Tenth Circuit cases have followed the holding in *Logsdon*. *See Pretlow v. Garrison,* 420 Fed. Appx. 798, 802 n. 4 (10th Cir. 2011); *EEOC v. Original Honeybaked Ham Co. of Georgia, Inc.,* 918 F. Supp. 2d 1171, 1174 n. 3 (D. Colo. 2013).

9

The Tenth Circuit did not perceive its holding in *Logsdon* to be at odds with the bright line test adopted by the Supreme Court in *Arbaugh*, and I decline to conclude otherwise based not only on this precedent but the different statutory framework at issue in this case. Specifically, unlike the definitions provision at issue in *Arbaugh*, the ADEA's exhaustion requirements are set forth in the same statutory section as its jurisdictional mandate though under different subsections. *See* 29 U.S.C. § 626(b)(c) &(d). Furthermore, the question of whether administrative exhaustion is jurisdictional is dispositive only when a defendant employer would have otherwise waived or forfeited the issue by failing to raise it in a timely manner. *Logsdon,* 399 Fed. Appx. at 378 n. 1. *See also Arbaugh,* 546 U.S. at 504 (because 15 employee minimum requirement of Title VII is not jurisdictional, it could not be asserted defensively after the conclusion of the trial on the merits). I will therefore analyze CollegeAmerica's argument regarding notice and conciliation pursuant to Rule 12(b)(1) based on the entire record before me. *See Holt, supra.*

**1. Notice Relating to the Separation Agreements**

In its Letter of Determination, the EEOC advised CollegeAmerica of its findings that CollegeAmerica had discriminated against Potts in violation of the ADEA and sought to use an unlawful and invalid waiver to interfere with Potts' protected rights under the ADEA. *See* Ex. 5 to Motion, p. 2. The EEOC requested that CollegeAmerica enter into a consent decree agreeing to, among other things, toll the charge-filing period for employees who signed the same or similar severance agreements and to revise its form severance agreement to comply with the ADEA and make it clear that employees retain the right to file charges and cooperate with the EEOC. *Id.*

CollegeAmerica argues that the EEOC's Letter of Determination was insufficient notice that the EEOC considered the Separation Agreements to be in violation of the ADEA because these agreements are distinguishable from Potts' post-termination Agreement referenced in the letter. *Compare* Ex. 1 to Complaint to Exs. 2-5 to Complaint. CollegeAmerica also asserts that it provided copies of the Separation Agreements to the EEOC after the EEOC issued its Letter of Determination to clarify that the Agreement was not CollegeAmerica's form severance agreement as the EEOC mistakenly believed. *See* Ex. 7 to Motion. After receiving the Separation Agreements, the EEOC did not revise or supplement its findings or otherwise notify CollegeAmerica that the scope of its investigation had expanded beyond Potts' Agreement.

In response, The EEOC argues that a charge of discrimination serves as a "jurisdictional springboard" for it to investigate whether the employer has engaged in any discriminatory practices. *See EEOC v. Gen Elec.Co.,* 532 F.2d 359, 364 (4th Cir. 1976). The EEOC acknowledges that it must nonetheless include any additional charges in its letter of determination, *see Gen Elec. Co.,* 532 F.2d at 366, but argues that it satisfied this requirement by the language in its Letter of Determination referring to employees other than Potts who signed the same or similar agreements. The EEOC also argues that CollegeAmerica knew the Separation Agreements were "on the table" because it provided them to the EEOC and knew that they, like Potts' Agreement, contained language attempting to restrict its former employees' rights under the ADEA.

One issue with the EEOC's arguments regarding notice is the chronology of events. At the time the EEOC issued its findings in the Letter of Determination, it was unaware of the existence or terms of the Separation Agreements. Thus, this letter could not serve as notice to

11

CollegeAmerica that the EEOC was alleging that the Separation Agreements violated the ADEA. I am also unpersuaded by the EEOC's argument that CollegeAmerica's actions in providing copies of the Separation Agreements automatically made them a subject of investigation despite no indication from the EEOC that this was the case. However, because notice may also be established through the conciliation process, *see EEOC v. Amer. Nat'l Bank,* 652 F.2d 1176, 1185 (4th Cir. 1976 (adequate notice was provided to defendant-employer through investigation and attempted conciliation), I will analyze this ADEA requirement before determining whether there was sufficient notice to support the EEOC's claim relating to the Separation Agreements.

### 2. Conciliation Relating to the Separation Agreements

CollegeAmerica's general counsel states in his affidavit that he attended the conciliation meeting between CollegeAmerica and the EEOC and that the EEOC did not raise any concerns regarding the Separation Agreements at this meeting. *See* Motion*,* Gerber Declaration, ¶¶ 16 & 17. Mr. Gerber further states that the focus of the conciliation meeting was squarely on Potts, the Agreement, and the Sate Court Action and that CollegeAmerica was unaware that the EEOC was challenging the legality of its Separation Agreements prior to receiving the EEOC's Complaint. *Id.* at ¶¶ 18 & 20. CollegeAmerica also notes that the letter it received from the EEOC following the conciliation meeting specifically references Potts' charges of discrimination and states that efforts to conciliate "these charges" have been unsuccessful. *See* Ex. 9 to Motion.

Although the EEOC bears the burden of proving that it engaged in conciliation relating to the Separation Agreements, it provides no evidence to counter Mr. Gerber's affidavit. Instead, the EEOC cites its statement in its Letter of Determination that it had begun conciliation in accordance with 29 U.S.C. § 626(b). Any conciliation attempts reflected in this letter, however,

were necessarily unrelated to the Separation Agreements since the EEOC was unaware of their existence or terms at this time.

The EEOC also argues that it is Tenth Circuit law that if there has been any effort to conciliate, a case cannot be dismissed for lack of conciliation. This is an overstatement of Tenth Circuit law. Instead, the Tenth Circuit has said that it is appropriate to stay proceedings for further conciliation efforts where the EEOC makes a sufficient initial effort "by providing the defendant an adequate opportunity to respond to all charges and negotiate possible settlements." *EEOC v. Prudential Fed. Savings & Loan Assoc.,* 763 F.2d 1166, 1169 (10th Cir. 1985) (internal quotations and citation omitted). *See also Marshall v. Sun Oil Co. of Pa.,* 592 F.2d 563, 566-67 (10th Cir. 1979) (Labor Department made "substantial initial effort to effect voluntary compliance" in ADEA case where it informed defendant of specific allegations of misconduct and what actions were required for compliance with ADEA); *EEOC v Zia Co.,* 582 F.2d 527, 533 (10th Cir. 1978) (EEOC's "good faith" in its conciliation efforts is relevant to whether court should entertain claim or stay proceedings).

Here, there is no evidence that the EEOC made any effort to conciliate its allegations that the Separation Agreements violate the ADEA so as to justify a stay of the proceedings. By failing to make such an effort, the EEOC also failed to cure its initial failure to provide CollegeAmerica with notice of its allegations relating to the Separation Agreements. The EEOC's Second Claim for Relief must therefore be dismissed for lack of jurisdiction as a result of the EEOC's failure to satisfy the jurisdictional prerequisites of notice and conciliation. In the absence of jurisdiction, I need not address CollegeAmerica's alternative argument that the EEOC's Second Claim for Relief fails to state a claim upon which relief may be granted.

## C. The EEOC's Claim for Retaliation

In order to establish a prima facie case of retaliation under the ADEA, the EEOC must show that (1) Potts engaged in protected activity; (2) CollegeAmerica took a subsequent materially adverse action against Potts; and (3) a causal connection exists between Potts' protected activity and the adverse action taken by CollegeAmerica. *Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 1122-23 (10th Cir. 2007). CollegeAmerica argues that the EEOC cannot establish the third element of its retaliation claim as a matter of law. I disagree.

As relevant to its claim for retaliation, the EEOC's Complaint alleges:

(1) On December 1 and 2, 2012, Potts and another former employee of CollegeAmerica ...exchanged emails. Complaint, ¶ 12.

(2) By letter dated January 11, 2013, CollegeAmerica, through its general counsel, advised Potts that the emails were a violation of the Agreement's non-disparagement clause and demanded return of its $7,000 payment to her. Complaint, ¶ 14.

(3) On January 25, 2013, Potts filed her first charge of discrimination with the EEOC. Complaint, ¶ 15.

(4) On March 25, 2013, seven days after it received notice of Potts' first charge of discrimination, CollegeAmerica filed the State Court Action. Complaint, ¶¶ 16 & 17.

CollegeAmerica argues that there can be no causal connection between Potts' January 25, 2013 charge of discrimination and its filing of the State Court Action because its January 11, 2013 letter specifically advised Potts that CollegeAmerica would file claims against her for breach of contract, defamation, and other causes of action if she failed to return the $7,000 payment within 30 days. *See* Ex. 2 to Motion. As the EEOC notes though, CollegeAmerica did not file the State Court Action immediately after Potts failed to return the $7,000 within 30 days of its January 11, 2013 letter. Instead, CollegeAmerica filed the State Court Action 43 days after

14

the 30 day deadline had passed but a mere 7 days after it received notice of Potts' first charge of discrimination. In addition, CollegeAmerica raised issues relating to the charges Potts filed with the EEOC in the State Court Action. *See* Complaint, ¶¶ 19-21.

Under these circumstances, I conclude that the EEOC has pled sufficient facts to support the reasonable inference that CollegeAmerica filed the State Court Action in response to the first charge of discrimination that Potts filed with the EEOC. CollegeAmerica is therefore not entitled to the dismissal of the EEOC's Third Claim for Relief for failure to state a claim upon which relief may be granted.

### IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendant CollegeAmerica's Motion to Dismiss Complaint [Doc # 6] is GRANTED IN PART and DENIED IN PART;

2. Defendant CollegeAmerica's Motion is GRANTED with respect to the EEOC's First and Second Claims for Relief, and these claims are hereby DISMISSED for lack of subject matter jurisdiction; and

3. Defendant CollegeAmerica's Motion is DENIED with respect to the EEOC's Third Claim for Relief.

Dated: December  2 , 2014 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE