IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-CV-01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

          Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER
EDUCATION, INC., d/b/a COLLEGEAMERICA

          Defendant.

---

## DEFENDANT'S MOTION TO COMPEL

---

Defendant CollegeAmerica Denver, Inc. n/k/a Center for Excellence in Higher

Education, Inc. d/b/a CollegeAmerica ("CollegeAmerica" or the "College"), through its

undersigned counsel, moves this Court to enter an order pursuant to Fed. R. Civ. P. 37

compelling Plaintiff Equal Employment Opportunity Commission ("EEOC" or the

"Commission") to respond to the written discovery identified below.

### CERTIFICATE OF COMPLIANCE WITH RULE 37 (a)(1) AND LOCAL RULE 7.1

Defendant received Plaintiff EEOC's Objections and Responses to Defendant's First Set

of Discovery ("Initial Responses") on May 4, 2015. *See* Exhibit A.[1] Since that time, counsel for

CollegeAmerica and the EEOC have been diligently and regularly conferring regarding certain

of the objections and responses made by the EEOC, including on multiple telephone conferences

---

[1] The EEOC also served supplemental responses on July 8, 2015. *See* Exhibit B.

and numerous lengthy email communications. This conferral has resulted in the College and the EEOC resolving a substantial majority of the discovery items at issue. This Motion is being submitted only for the narrow category of remaining discovery requests for which the parties have conferred, but cannot come to an agreement.

## CASE BACKGROUND

Debbi Potts is the charging party for this matter filed by the EEOC against CollegeAmerica. *See* Compl., ECF Doc. 1, at 1 (case filed "to provide appropriate relief to Debbi D. Potts"). Ms. Potts is a former employee of the College, who resigned from her position on July 16, 2012. She later entered into an agreement with the College on September 1, 2012 (the "Agreement") wherein she agreed, *inter alia*, to not publically or privately disparage the College, in exchange for a payment of $7,000.[2] However, two months later, the College discovered that Ms. Potts had violated the Agreement by making a series of disparaging statements about the College to another former employee on social networking site LinkedIn. On January 11, 2013, the College sent Ms. Potts a letter alerting her that it was aware she had violated the Agreement, demanding return of the $7,000, and unequivocally threatening to file a lawsuit if the money was not returned within 30 days (the "Letter"). *See* Exhibit C.

Instead of returning the money, Ms. Potts filed a charge of discrimination against the College on January 25, 2013, alleging **for the very first time that she had been a victim of discrimination** based on her age. Knowing that Ms. Potts' allegations of discrimination were groundless, and consistent with the College's Letter stating unequivocally that it would file suit

---

[2] Ms. Potts claimed the College owed her money for an unpaid bonus. The College completely denied that Ms. Potts was owed any money, but agreed to pay her the $7,000 in exchange for her agreement to not disparage the College.

to obtain the return of the $7,000.00 based on her breach of the non-disparagement agreement. On March 21, 2013, the College followed through with its statements in its Letter, and served Ms. Potts with a complaint for breach of contract in the County Court for Larimer County (the "Breach of Contract Action").

Over a year later, the EEOC filed this lawsuit against the College. The EEOC's only surviving claim alleges that the College did not file the Breach of Contract Action based on Ms. Potts' breach of the Agreement, but instead that the College's motive was to retaliate against Ms. Potts for her filing a charge of age discrimination. The EEOC pursues this claim even though the Letter informing Ms. Potts that the College would pursue return of the $7,000.00 in court if she did not voluntarily return the money was sent and received by Ms. Potts **two weeks before she alleged discrimination for the very first time.**

## ANALYSIS

As Ms. Potts is the charging party in this case, the College sought the production of a limited set of documents in her possession in discovery.[3] The EEOC has now declined to produce any such documents. It instead provided 41 pages of objections and responses to the College's discovery requests.[4]

The EEOC first took the position that all documents relevant to this action were contained within the EEOC's administrative file. After identifying specific documents that were

---

[3] Even before discovery started, the EEOC agreed that it would be required to produce any documents or information in Ms. Potts' possession that the College properly requested in discovery, and that it would be bound to produce any such information directed to be produced by court order. *See* Discovery Conferral Emails, attached as Exhibit D.

[4] Indeed, half of the length of this motion (a full eight pages) consists of the recitation of the EEOC's lengthy objections and responses to the three discovery requests at issue.

not contained in their administrative file, the EEOC subsequently produced a handful of additional emails obtained from their investigative staff regarding communications with Ms. Potts. However, the EEOC has refused to conduct a search to provide any emails from Ms. Potts' account (potts-deb@comcast.net). Likewise, the EEOC has refused to provide any information from Ms. Potts social media accounts, including from her LinkedIn account, of which her dispute with CollegeAmerica originated. Pursuant to Fed. R. Civ. P. 37, the College therefore moves to compel the production of these limited categories of documents.[5]

## REQUEST FOR PRODUCTION NO. 8:

**8.** All emails sent or received by Ms. Potts between September 1, 2012 to the present, containing any of the following keywords:

| | |
|---|---|
| • discriminat![6] | • old |
| • retaliat! | • illegal |
| • lawsuit! | • unlawful |
| • negotiat! | • EEOC |
| • agreement! | • ACCSC |
| • contract! | • CASI |
| • bonus! | • CollegeAmerica |
| • disparag! | • college |
| • silenc! | • Ken! |
| • scam! | • Barnhart |
| • scum! | • Barney |
| • unemployment | • BT |
| • comply | • Gerber |
| • honor | • Juhlin |
| • enforceable | • Rozann |
| • not enforceable | • Nathan |

---

[5] The College previously noticed the deposition of Ms. Potts in anticipation of receiving documents responsive to the requests identified in this motion. Because no such documents were provided, the parties agreed to postpone the deposition of Ms. Potts until this motion is addressed by the Court.

[6] An exclamation point indicates a wild card search, including any letters appended to the end of the word, to incorporate various forms of the same word.

- age
- Larson

**EEOC's Response**:    Objection. This RPD is not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). With this RPD, Defendant seeks, inter alia, to inject the merits of its State Lawsuit against Ms. Potts into the present lawsuit, even though the merits and outcome of the State Lawsuit are irrelevant. It also appears that Defendant seeks information regarding Ms. Potts' motivation and/or the reasonableness of Ms. Potts' decision to file her charge of discrimination. Like Title VII of the Civil Rights Act of 1964, the ADEA has two retaliation clauses – the Opposition Clause and the Participation Clause. *See* Title VII, 42 U.S.C. § 2000e-3(a); ADEA, 29 U.S.C. § 623(d). The ADEA's Participation Clause expressly states that it is unlawful to discriminate because an individual "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). By contrast, the ADEA's Opposition Clause states that is unlawful to discriminate because an individual "opposed any practice made unlawful by this section." *Id.* The Tenth Circuit has held that this difference in language is significant and affords participation far greater protection than opposition. *See Vaughn*, 537 F.3d at 1151-52 analyzing identical language found in Title VII). Indeed, the court in *Vaughn* expressly rejected a reasonableness standard with respect to the Participation Clause in favor of the plain reading of the statute, which states that "any" participation is protected. *Id.* Here, EEOC's retaliation claim is premised on the Participation Clause of the anti-retaliation provision of the ADEA, 29 U.S.C. § 623(d), which mirrors the Participation Clause in Title VII, 42 U.S.C. §2000e-3(a). The EEOC claims Ms. Potts participated in a

statutorily-established right to file a charge of discrimination, and that Defendant retaliated against her for doing so by filing and continuing to litigate the State Lawsuit against her. Thus, any e-mails sent or received by Ms. Potts between September 1, 2012, to the present (other than those e-mails Defendant already knew about at the time it filed its State Lawsuit against Ms. Potts) are irrelevant. All that matters in this post-employment retaliation case is whether Defendant sued Ms. Potts because she filed a charge of discrimination. *See Semsroth*, 555 F.3d at 1184; *McGarry*, 175 F.3d at 1201. Ms. Potts' e-mails will not shed light on Defendant's motives.

Objection. With this RPD, Defendant improperly seeks discovery for its State Lawsuit to which it is not entitled and/or Defendant is engaged in a fishing expedition for purposes of other contemplated retaliatory litigation. "Although the scope of discovery under the federal rules is broad, however, parties may not engage in a "fishing expedition" in an attempt to obtain evidence to support their claims or defenses." *Convergys Corp.*, 2007 U.S. Dist. LEXIS 9131 at *10 (citing *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000)). Defendant's January 11, 2013, letter, Exhibit C, quotes electronic communications Defendant claims violated the September 1, 2012, agreement and upon which Defendant claims its State Lawsuit is premised. If electronic communications (such as e-mails) are in any way relevant to the EEOC's claim and/or Defendant's defenses in this lawsuit – and it is the EEOC's position that they are not – then the only electronic communications/e-mails that are conceivably so relevant are those quoted in Defendant's Exhibit C, which are already in Defendant's possession. Objection. This RPD, with its review of Ms. Potts' personal e-mail account, is an

unnecessary intrusion on Ms. Potts' privacy. Moreover, it creates an unnecessary and disproportionate burden in a case where the damages EEOC seeks are limited to costs and attorneys fees, presently totaling less than $3,000. The EEOC is not seeking to recover back pay on behalf of Ms. Potts in this case, and it cannot seek compensatory or punitive damages on behalf of Ms. Potts under the ADEA.

Objection. Various search terms proposed by Defendant appear overbroad and irrelevant to this suit, even if applied to Defendant's e-mails, let alone Ms. Potts' e-mails.

## Discussion

The EEOC has refused to provide any documents in the possession of the charging party, Ms. Potts. Most specifically, it has refused to conduct any search of her emails. Instead, the EEOC simply provided two and a half pages of lengthy objections to this single discovery request. The EEOC takes the untenable position that no email communications in the possession of Ms. Potts could lead to the discovery of admissible evidence. To the contrary, there are many topics that Ms. Potts' email and social media communications could address that would be directly relevant to the issues in this case. Examples would be communications showing that (1) Ms. Potts had no intention when she signed the Agreement to honor the commitments she made in the Agreement; (2) Ms. Potts knew she was engaging in conduct that violated the Agreement; (3) she dared the College to sue her and would claim discrimination if it did; (4) claims that the Agreement was a joke and that the College would never discover that she was not going to honor it; (5) expressing to friends and former colleagues that she was going to file an EEOC charge so that, when the College filed the lawsuit, she could claim it was discriminatory. These are just a few examples of the type of information that could be included

in the documents the College has requested that would be highly relevant to the reasonableness

of the College's belief that she violated the Agreement and would directly refute the EEOC's

position that the College filed the lawsuit in retaliation for the fact that Ms. Potts filed the first

(of her many) EEOC charges.[7]

Moreover, as the sole charging party, Ms. Potts is likely the key witness for the EEOC in

this matter. As such, her emails are particularly discoverable for the purposes of cross examining

and impeaching her testimony. *See, e.g., Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D.

632, 640 (D. Colo. 2012) (compelling the production of documents that "would likely reveal

bias, interest or motive for any witness's testimony").

The EEOC claims that the College is simply attempting to impermissibly inject the merits

of the Breach of Contract Action into this lawsuit. This is not the case now, nor ever has been the

College's intent. The simple fact is that the Breach of Contract Action is directly tied to this

lawsuit because the EEOC is attempting to prove the College filed the lawsuit based on

retaliation, and not because Ms. Potts violated the Agreement. Thus, the EEOC has placed at

issue the underlying merits of the state court action. The College has always taken the firm

position that it filed the state suit because Ms. Potts breached the Agreement. The College thus

seeks emails that could provide critical and relevant evidence relating to Ms. Potts conduct,

including proof that she breached the Agreement and never intended to honor her promises in the

---

[7] The EEOC's reliance upon the distinction between the participation and opposition clauses is misplaced. Even the case repeatedly cited by the EEOC suggests that if a charging party's participation "is a sham or is fraudulent," it is questionable as to whether the participation clause could protect such conduct. *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1152 n.2 (10th Cir. 2008). Regardless, for purposes of discovery, discerning whether the charging party filed a charge of discrimination based on actual concerns about discriminatory conduct or instead as an attempt to immunize herself from an otherwise valid breach of contract action, is discoverable.

Agreement.[8] The College's discovery clearly seeks production of information that could be relevant and calculated to lead to the discovery of other relevant and admissible evidence.

Further, the EEOC's claims regarding the cost effects of conducting such a search are also misplaced. First, the College proposed that the parties jointly retain a computer specialist, at the College's expense, to conduct the search and provide only responsive emails. The only burden remaining would be in conducting a limited privilege review. The College has also discussed with the EEOC entering into a Fed. R. Evid. 502(d) order to avoid any inadvertent waiver of privilege. With the entry of a Rule 502(d) order and the hiring of an independent expert there would be no expense whatsoever to the EEOC.

With regard to the scope of the terms, the College previously offered to confer with the EEOC to try to reach agreement on search terms that the EEOC would agree were calculated to lead to relevant emails. In response, the EEOC stated that it was not interested in limiting the terms because it would not produce any responsive emails. In an effort to narrow this dispute, the College hereby agrees to limit its request to responsive emails from September 1, 2012 (the date of the Agreement) to March 21, 2013 (the date Ms. Potts was served in the Breach of Contract Action). Ms. Potts emails are discoverable in this suit, and the College respectfully requests that the Court compel all responsive emails to be produced.

**REQUEST FOR PRODUCTION NOS. 9 & 10:**

**9.** The content from Ms. Potts' personal Facebook account, including her timeline, profile, photographs, friends, notes, groups, likes, and messages, from September 1, 2012 to the present,

---

[8] The College already independently received some such evidence from a third party. In commenting about Barbara Thomas, a distinguished and seasoned female executive with the College, Ms. Potts called her an "old hag." *See* Email from Potts, Dec. 1, 2012, attached as Exhibit E.

containing any reference to the September 1, 2012 Agreement, the January 11 Letter, any

criticism or complaint about CollegeAmerica, the services provided by CollegeAmerica or

CollegeAmerica employees or representatives, Ms. Potts' claim that CollegeAmerica retaliated

against her, or any other information related to the allegations in the Third Claim for Relief of

the Complaint.

**EEOC's Response**:   Objection. This RPD is not reasonably calculated to lead to the

discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). With this RPD, Defendant

seeks, inter alia, to inject the merits of its State Lawsuit against Ms. Potts into the present

lawsuit, even though the merits and outcome of the State Lawsuit are irrelevant. It also

appears that Defendant seeks information regarding Ms. Potts' motivation and/or the

reasonableness of Ms. Potts' decision to file her charge of discrimination. Like Title VII

of the Civil Rights Act of 1964, the ADEA has two retaliation clauses – the Opposition

Clause and the Participation Clause. *See* Title VII, 42 U.S.C. § 2000e-3(a); ADEA, 29

U.S.C. § 623(d). The ADEA's Participation Clause expressly states that it is unlawful to

discriminate because an individual "has made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C.

§ 623(d). By contrast, the ADEA's Opposition Clause states that is unlawful to

discriminate because an individual "opposed any practice made unlawful by this section."

*Id.* The Tenth Circuit has held that this difference in language is significant and affords

participation far greater protection than opposition. *See Vaughn*, 537 F.3d at 1151-52

(analyzing identical language found in Title VII). Indeed, the court in Vaughn expressly

rejected a reasonableness standard with respect to the Participation Clause in favor of the

plain reading of the statute, which states that "any" participation is protected. *Id.* Here, EEOC's retaliation claim is premised on the Participation Clause of the anti-retaliation provision of the ADEA, 29 U.S.C. § 623(d), which mirrors the Participation Clause in Title VII, 42 U.S.C. §2000e-3(a). The EEOC claims Ms. Potts participated in a statutorily-established right to file a charge of discrimination, and that Defendant retaliated against her for doing so by filing and continuing to litigate the State Lawsuit against her. Thus, the content of Ms. Potts' personal Facebook account containing any reference to the September 1, 2012, agreement, the January 11, 2013, letter, any criticism or complaint about CollegeAmerica, the services provided by CollegeAmerica, or CollegeAmerica employees or representatives are irrelevant. All that matters in this post-employment retaliation case is whether Defendant sued Ms. Potts because she filed a charge of discrimination. *See Semsroth*, 555 F.3d at 1184; *McGarry*, 175 F.3d at 1201.

Objection. With this RPD, Defendant improperly seeks discovery for its State Lawsuit to which it is not entitled and/or Defendant is engaged in a fishing expedition for purposes of other contemplated retaliatory litigation. "Although the scope of discovery under the federal rules is broad, however, parties may not engage in a 'fishing expedition' in an attempt to obtain evidence to support their claims or defenses." *Convergys Corp.*, 2007 U.S. Dist. LEXIS 9131 at *10 (citing *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000)). Defendant's January 11, 2013, letter, Exhibit C, quotes electronic communications Defendant claims violated the September 1, 2012, agreement and upon which Defendant claims its State Lawsuit is premised. If electronic communications (such as Facebook posts or messages) are in any way relevant to the

11

EEOC's claim and/or Defendant's defenses in this lawsuit – and it is the EEOC's position

that they are not – then the only electronic communications/Facebook posts or messages

that are conceivably so relevant are those quoted in Defendant's Exhibit C, which are

already in Defendant's possession.

Objection. Omnibus phrasing, such as "refers to," "reflects," or in this case

"related to," lack necessary specificity. *See Western Res., Inc.*, 2001 U.S. Dist. LEXIS

24647, at **10-11 (requests for production must be reasonably specific). EEOC should

not have "to guess or move through mental gymnastics . . . to determine which of many

pieces of paper may conceivably contain some detail, either obvious or hidden, within the

scope of the request." *Cardenas*, 230 F.R.D. at 623.

Subject to and without waiving the foregoing objections, the EEOC responds as

follows. There are no references to Ms. Potts' claim that CollegeAmerica retaliated

against her or any other information related to the allegations in the Third Claim for

Relief of the Complaint posted on or through Ms. Potts' personal Facebook account, and

the EEOC is advised there never were.

**10.** The content of any other personal social media account, web blog, or other electronically

accessed internet or remote location used by Ms. Potts, including, but not limited to, LinkedIn,

Instagram or Twitter, from September 1, 2012 to the present, containing any reference to the

topics identified in Request for Production 9 above.

**EEOC's Response**:   Objection. This RPD is not reasonably calculated to lead to the

discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). With this RPD, Defendant

seeks, inter alia, to inject the merits of its State Lawsuit against Ms. Potts into the present

lawsuit, even though the merits and outcome of the State Lawsuit are irrelevant. It also appears that Defendant seeks information regarding Ms. Potts' motivation and/or the reasonableness of Ms. Potts' decision to file her charge of discrimination. Like Title VII of the Civil Rights Act of 1964, the ADEA has two retaliation clauses – the Opposition Clause and the Participation Clause. *See* Title VII, 42 U.S.C. § 2000e-3(a); ADEA, 29 U.S.C. § 623(d). The ADEA's Participation Clause expressly states that it is unlawful to discriminate because an individual "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). By contrast, the ADEA's Opposition Clause states that is unlawful to discriminate because an individual "opposed any practice made unlawful by this section." *Id.* The Tenth Circuit has held that this difference in language is significant and affords participation far greater protection than opposition. *See Vaughn*, 537 F.3d at 1151-52 (analyzing identical language found in Title VII). Indeed, the court in Vaughn expressly rejected a reasonableness standard with respect to the Participation Clause in favor of the plain reading of the statute, which states that "any" participation is protected. *Id.* Here, EEOC's retaliation claim is premised on the Participation Clause of the anti-retaliation provision of the ADEA, 29 U.S.C. § 623(d), which mirrors the Participation Clause in Title VII, 42 U.S.C. §2000e-3(a). The EEOC claims Ms. Potts participated in a statutorily-established right to file a charge of discrimination, and that Defendant retaliated against her for doing so by filing and continuing to litigate the State Lawsuit against her. Thus, the content of Ms. Potts' other personal social media accounts, web blogs, or other electronically accessed internet or remote location containing any

reference to the September 1, 2012, agreement, the January 11, 2013, letter, any criticism or complaint about CollegeAmerica, the services provided by CollegeAmerica, or CollegeAmerica employees or representatives are irrelevant. All that matters in this post-employment retaliation case is whether Defendant sued Ms. Potts because she filed a charge of discrimination. *See Semsroth*, 555 F.3d at 1184; *McGarry*, 175 F.3d at 1201.

Objection. With this RPD, Defendant improperly seeks discovery for its State Lawsuit to which it is not entitled and/or Defendant is engaged in a fishing expedition for purposes of other contemplated retaliatory litigation. "Although the scope of discovery under the federal rules is broad, however, parties may not engage in a 'fishing expedition' in an attempt to obtain evidence to support their claims or defenses." *Convergys Corp.*, 2007 U.S. Dist. LEXIS 9131 at *10 (citing *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000)). Defendant's January 11, 2013, letter, Exhibit C, quotes electronic communications Defendant claims violated the September 1, 2012, agreement and upon which Defendant claims its State Lawsuit is premised. If electronic communications (such as Facebook posts or messages) are in any way relevant to the EEOC's claim and/or Defendant's defenses in this lawsuit – and it is the EEOC's position that they are not – then the only electronic communications/Facebook posts or messages that are conceivably so relevant are those quoted in Defendant's Exhibit C, which are already in Defendant's possession.

Objection. This RPD is vague, ambiguous, overbroad, and unduly burdensome on its face because it seeks "[t]he content of any other personal social media account, web blog, or other electronically accessed internet or remote location," without specificity;

14

moreover it is unclear what is meant by "electronically accessed … remote location."

Discovery request are overly broad and unduly burdensome when they couch their

inquiry in terms of "every" or "all" and other such similar omnibus and indiscriminate

language. *See Hiskett*, 180 F.R.D. at 405; *Mackey*, 167 F.R.D. at 197-98. Omnibus

phrasing, such as "refers to," "reflects," or in this case "concerning," when applied to any

matter in the entire Complaint, makes a request for production overly broad on its face.

*See Western Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2001 U.S. Dist. LEXIS

24647, at **10-11 (D. Kan. Dec. 5, 2001) (requests for production must be reasonably

specific). EEOC should not have "to guess or move through mental gymnastics . . . to

determine which of many pieces of paper may conceivably contain some detail, either

obvious or hidden, within the scope of the request." *Cardenas v. Dorel Juvenile Group,*

*Inc.*, 230 F.R.D. 611, 623 (D. Kan. 2005).

Subject to and without waiving the foregoing objections, the EEOC responds as

follows. There are no [non-privileged] references to Ms. Potts' claim that

CollegeAmerica retaliated against her or any other information related to the allegations

in the Third Claim for Relief of the Complaint posted on or through any other personal

social media account, web blog, or other electronically accessed internet or remote

location, and the EEOC is advised there never were.

**Discussion**

For Request Nos. 9 and 10, the College hereby limits its request to any responsive

information contained in Ms. Potts' (1) Facebook Messaging, and (2) LinkedIn Messages. As

with Request No. 8, the College also limits the responsive messages to be between the dates of September 1, 2012 and March 21, 2013.

The College incorporates the discussion of the basis for compelling the production of such documents as set forth above regarding Request No. 8. These documents are particularly relevant in this case because it was Ms. Potts' own social media messages, sent on LinkedIn.com, that included the disparaging statements about the College and formed the basis for the Breach of Contract Action, disproving the EEOC's retaliation claim in this lawsuit. *See* LinkedIn Messages, Dec. 1, 2012, attached as Exhibit F. Despite specific requests on this issue, the EEOC does not appear to have conducted any search of Ms. Potts' LinkedIn Messaging and Facebook Messaging.[9] These social media messaging services operate much like email accounts, sending written communications from one party to another. The College asks the Court to compel that a search be undertaken of these two information sources, and that all responsive documents be produced.

**WHEREFORE**, CollegeAmerica respectfully requests that the Court enter an order compelling Plaintiff to respond to its Requests for Production Nos. 8, 9, and 10, as set forth above.

---

[9] In fact, the original messages that Ms. Potts exchanged with another former CollegeAmerica employee on LinkedIn on December 1 and 2, 2012 were not even produced by the EEOC. Although the College certainly has copies of these specific documents, there very well could be similar documents and communications showing other actions by Ms. Potts that evidence her intentional efforts to violate the terms of the Agreement, and improperly shield herself from liability by filing a baseless charge of discrimination. As discussed above, these documents are directly relevant to this action brought by the EEOC and they also, at the very least, are directly discoverable for the purposes of impeaching and showing the bias against the College from the EEOC's charging party and principal witness.

Dated:  July 27, 2015.                    Respectfully submitted,


                                          *s/  Thomas E.M. Werge*
                                          Raymond W. Martin (#8055)
                                          Craig R. May (#32267)
                                          Thomas E.M. Werge (#42726)
                                          Wheeler Trigg O'Donnell LLP
                                          370 Seventeenth Street, Suite 4500
                                          Denver, CO  80202-5647
                                          Telephone:  303.244.1800
                                          Facsimile:  303.244.1879
                                                  martin@wtotrial.com
                                                  may@wtotrial.com
                                                  werge@wtotrial.com

                                          Attorneys for Defendant CollegeAmerica

**<u>CERTIFICATE OF SERVICE (CM/ECF)</u>**

I hereby certify that on July 27, 2015, I electronically filed the foregoing **DEFENDANT COLLEGEAMERICA'S MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Raymond W. Martin**
  martin@wtotrial.com, lkuhn@wtotrial.com, creasey@wtotrial.com

- **Craig Ruvel May**
  may@wtotrial.com, ganderson@wtotrial.com, shaw@wtotrial.com, winiarski@wtotrial.com

- **Thomas Eilif Miller Werge**
  werge@wtotrial.com, christman@wtotrial.com

- **Sean Ratliff**
  sean.ratliff@eeoc.gov,rochelle.harris@eeoc.gov,kathy.wade@eeoc.gov,mary.oneill@eeoc.gov,rita.kittle@eeoc.gov,karen.morrison@eeoc.gov

- **Steven L. Murray**
  steven.murray@eeoc.gov

*s/  Julie Christman for Thomas E.M. Werge*