**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv- 01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA,

      Defendant.

---

**PLAINTIFF EEOC'S MOTION FOR RECONSIDERATION OF COURT'S
ORDER DISMISSING PLAINTIFF'S SECOND CLAIM FOR RELIEF [ECF 16]**

---

**INTRODUCTION**

Plaintiff Equal Employment Opportunity Commission ("EEOC," "Commission," or "agency"), pursuant to Federal Rule of Civil Procedure 54(b), respectfully moves for reconsideration of this Court's Memorandum Opinion and Order, issued on December, 2, 2014 ["Order" - ECF 16], dismissing the EEOC's Second Claim for Relief. Reconsideration is requested because superseding authority has been handed down by the U.S. Supreme Court, *see Mach Mining, LLC, v. EEOC*, 575 U.S. ___, 135 S. Ct. 1645 (April 29, 2015). Additionally, reconsideration is requested because this Court inadvertently erred in its determinative factual finding that "[a]t the time the EEOC issued its findings in the Letter of Determination, it was unaware of the existence or terms of the Separation Agreements." In fact, the Separation Agreements were first provided to the EEOC in May 2013, months before the EEOC issued its

1

Letter of Determination in December 2013.  The EEOC therefore requests this Court to reverse its prior Order dismissing the Second Claim and find that the Commission's conciliation efforts were legally sufficient under the new *Mach Mining* standards, or alternatively, reverse its prior Order dismissing the Second Claim and order the parties to engage in further conciliation efforts on the viable Second Claim.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

On August 3, 2015, Steven L. Murray, attorney for Plaintiff EEOC, conferred in good faith with Thomas Werge, attorney for Defendant, via a telephone conference, concerning this Motion to Reconsider. Defendant opposes this Motion.

## BACKGROUND

This is a public enforcement action brought by the EEOC against Defendant College America Denver, Inc. n/k/a Center for Excellence in Higher Education, Inc., d/b/a College America ("CollegeAmerica' or "Defendant"), to enforce the Age Discrimination in Employment Act of 1968, as amended ("ADEA"). The EEOC's complaint made three claims for relief under the ADEA:  1) CollegeAmerica's written agreement with Debbie Potts violated the ADEA by interfering with Potts's rights under the ADEA and the EEOC's ability to investigate charges of discrimination; 2) CollegeAmerica's form Separation Agreements[1] violated the ADEA by interfering with signatories' rights under the ADEA and the EEOC's ability to investigate charges of discrimination; and 3) CollegeAmerica retaliated against Potts for filing charges of discrimination. [Compl., ECF 1]

CollegeAmerica moved to dismiss all three claims in June 2014. [ECF 6]. With respect to

---

[1] The EEOC will reference all form severance agreements as Separation Agreements for consistency with the Court's terminology. [Order, ECF 16].

the Second Claim at issue here, CollegeAmerica argued that this Court lacked jurisdiction "because the EEOC did not specifically raise it or engage in conciliation on it . . . [and] because there is no cause of action for violation of Section 626(f)" [*Id*. at 3]. The EEOC responded to Defendant's motion [ECF 10], and Defendant replied [ECF 11]. The EEOC's request to file a surreply was denied. [ECF 12, 13].

The Court issued its Order on December 2, 2014. [ECF 16]. With respect to the Commission's Second Claim the Court found: 1) "[a]t the time the EEOC issued its findings in the Letter of Determination, it was unaware of the existence or terms of the Separation Agreements," and 2) the EEOC did not attempt to conciliate its allegations that the Separation Agreements violate the ADEA. [*Id*. at 10-13]. In reaching the latter finding, the Court relied on the former finding, stating: "Any conciliation attempts reflected in [the letter of determination] were necessarily unrelated to the Separation Agreements since the EEOC was unaware of their existence or terms at this time." [*Id*. at 12-13]. The Court, in turn, ruled: "The EEOC's Second Claim for Relief must therefore be dismissed for lack of jurisdiction as a result of the EEOC's failure to satisfy the jurisdictional prerequisites of notice and conciliation." [*Id*. at 13].[2]

On April 29, 2015, the Supreme Court ruled in the case of *Mach Mining, LLC, v. EEOC*, 575 U.S. ___, 135 S. Ct. 1645 (2015), which ruling changed the legal standards applicable in this case. The question in *Mach Mining* was whether and to what extent courts may review the EEOC's conciliation efforts. *Id*. at 1651. In a nutshell, the Court held that judicial review was available, but only a "relatively barebones review." *Id*. at 1656. If, as part of that barebones

---

[2]  The Court also dismissed the EEOC's first claim as moot, but allowed the EEOC to proceed with its third claim of retaliation, as to which the parties are presently engaged in discovery. [ECF 16].

review, a court finds that the EEOC "did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim," the remedy is not to dismiss, but to "order the EEOC to undertake the mandated efforts to obtain voluntary compliance." *Id.*

## STANDARD OF REVIEW

Review of interlocutory orders such as the one at issue here are governed by Federal Rule of Civil Procedure 54(b), which provides in pertinent part: "any order which adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b*); Raytheon Constructors, Inc. v. Asarco Inc.,* 368 F.3d 1214, 1217 (10th Cir.2003); *Albright v. Attorney's Title Ins. Fund,* 2008 WL 376247, at *2 (D. Utah Feb. 11, 2008). "The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: '[D]istrict courts generally remain free to reconsider their earlier interlocutory orders.'" *Anderson Living Trust v. WPX Energy Prod., LLC*, __ F.R.D. __, 2015 WL 4040616, at *21 (D.N.M. June 24, 2015)(quoting *Been v. O.K. Indus.,* 495 F.3d 1217, 1225 (10th Cir. 2007));. *Sec. Serv. Fed. Credit Union v. First Am. Mortgage Funding, LLC,* 906 F. Supp. 2d 1108, 1111 (D. Colo. 2012).

While motions for reconsideration are left to the sound discretion of the court, the Tenth Circuit has held that "[g]rounds warranting a motion to reconsider include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)(citation omitted); *Sec. Serv. Fed. Credit Union v. First Am. Mortgage Funding, LLC,* 906 F. Supp. 2d 1108, 1111 (D. Colo. 2012). "Thus, a motion for reconsideration

is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete,* 204 F.3d at 1012 (internal citation omitted).

Here, there has been intervening Supreme Court precedent which directly addresses the standard for reviewing conciliation and the appropriate remedy if the EEOC fails to meet its obligation to conciliate. Moreover, it appears this Court misapprehended the basic chronology of events with respect to when the EEOC received from Defendant the standard Separation Agreements and this misapprehension drove the decision to dismiss the EEOC's Second Claim. To prevent manifest injustice to the public interest the EEOC is tasked with serving, this Court should reconsider and reverse its Order as to the EEOC's Second Claim for relief.

## LEGAL ARGUMENT

### A. *Mach Mining* Created A New Legal Standard Directly Applicable To The Present Circumstance.

The Supreme Court granted certiorari in *Mach Mining* to "address whether and to what extent" the EEOC's attempts to conciliate are "subject to judicial consideration." 135 S.Ct. at 1651. Thus, the case is directly relevant to Defendant's assertion in this case that it lacked notice and an opportunity to conciliate the EEOC's Second Claim. [Motion, at 12-16, ECF 6].

To begin, in addressing whether courts have authority to review the EEOC's efforts at conciliation, the Supreme Court spoke in terms of "prerequisites" and "preconditions" to suit, not in terms of the jurisdiction of the courts to hear Title VII claims. 135 S.Ct. at 1651-52. In fact, the term "jurisdiction" appears nowhere in the Court's opinion. The Court held that some limited court review is appropriate to ensure that the EEOC was meeting the prerequisites to suit, but that if the EEOC's conciliation efforts are found wonting, the remedy is a stay for further settlement discussion, not dismissal. *Id.* at 1656.   This holding was the final death knell for any

argument that conciliation is a jurisdictional basis for dismissal because the court lacks jurisdiction.

After its initial ruling that some judicial review is appropriate, the Court then addressed the standard of review. *Id*. at 1653-56. In doing so, the Court rejected Mach Mining's attempts to "do a deep dive into the conciliation process" and to import notions of "good faith" from the National Labor Relations Act. *Id*. at 1653-54. Title VII, the Court held, speaks in terms of "eliminating" unlawful discrimination, not in terms of "reciprocal duties of good-faith negotiation." *Id*. at 1654. Moreover, Congress clearly provided broad discretion to the EEOC to decide:

> whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield. So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiation positions, and the content of its demands for relief.

*Id*. Accordingly, the Court held that a "barebones review" was all that was necessary. *Id*. at 1656. The Court explained:

> [T]he EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of "reasonable cause." Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result. And the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice. Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute.

*Id*. at 1655-56. In other words, courts are obligated to defer to the EEOC with respect to "how to conduct conciliation efforts and when to end them." *Id*. at 1656. Likewise, the court should "look [ ] only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.*, statements made or positions taken) during those discussions." *Id*.

Although *Mach Mining* arose in the Title VII context, the ADEA's conciliation requirement closely resembles the corresponding conciliation requirement in Title VII such that courts do not distinguish between the two provisions when analyzing the appropriate scope of review. *Compare* 29 U.S.C. § 626(b) with 42 U.S.C. § 2000e-5(b); *see also Arizona ex rel. Goddard v. GEO Grp., Inc.*, No. 10-cv-1995-PHX-SRB, 2012 WL 8667598, *9, n. 14 (D. Ariz. April 17, 2012) (comparing conciliation provision of Title VII with that of ADEA and observing that "[b]ecause of the similarity of these provisions, . . . interpretations of one provision are useful in cases arising under the other." (internal citations and quotations omitted)).  Indeed, *Mach Mining* has already been applied in the context of the ADEA. *See* Order Denying Mot. to Dismiss, *EEOC v. Blinded Veterans Association* ("*BVA*"), No. 14-2102, (D.D.C. July 7, 2015)(attached as Ex. 1).

The holding in *Mach Mining* requires reconsideration of this Court's decision dismissing the EEOC's Second Claim, "for lack of jurisdiction as a result of the EEOC's failure to satisfy the jurisdictional prerequisites of notice and conciliation." [ECF 16, p.13].  The EEOC respectfully submits that under the new *Mach Mining* standards, applied to the actual facts of this case as reflected in the record evidence previously presented, the EEOC conciliation efforts were legally sufficient, but that if the Court finds them insufficient to meet the *Mach Mining* standard, the remedy is to stay the case for further settlement discussions regarding the Second Claim, not dismissal for lack of jurisdiction.

**B.   The EEOC's Conciliation Efforts Are Legally Sufficient Under the New *Mach Mining* Standards.**

*Mach Mining* requires consideration of two factors: (a) whether the EEOC provided Defendant notice of the alleged violation; and (b) whether the Defendant had the opportunity to

discuss with the EEOC how to remedy the alleged violation.  As to the Second Claim, regarding the Defendant's standard Separation Agreements, the salient events are set forth below.

On January 25, 2013, Potts filed her first charge of discrimination against College America, and CollegeAmerica received notice of the charge on March 18, 2013. [(EECO Response to Motion to Dismiss") ECF 10, p. 5]. Potts filed a second charge of discrimination against CollegeAmerica on April 8, 2013. [ECF 10, p. 5]  In May 2013, during the EEOC's investigation, Defendant provided the EEOC with two position statements, and copies of its standard Separation Agreements, in response to the two EEOC charges filed by Potts [ECF, 6-3, 6-4. (Def's May 3, 2013 position statements to the EEOC, noting attached Separation Agreements; specifically ECF 6-3, p. 5, ¶ 8, discussed below in greater detail)].  Several months after receiving the form Separation Agreements, the EEOC issued its Letter of Determination ("LOD") dated December 20, 2013, finding reasonable cause to believe that Defendant had discriminated against Ms. Potts, *and "other affected individuals."*  The EEOC's LOD invited Defendant to participate in conciliation, and proposed various forms of relief; including relief specific to the form Separation Agreements. In particular, the EEOC's LOD advised the Defendant:

> [X] **ADEA Interim Relief Issues:** Section 7(b) of the ADEA, 29 U.S.C. § 626(b), requires the Commission to attempt to eliminate alleged unlawful practices and obtain voluntary compliance with the ADEA's requirements before bringing any action in court. This determination will serve as notice that the Commission has begun conciliation in accordance with this requirement.

Thereafter, the EEOC proposed the following relief specific addressing the Separation Agreements:

> Therefore, we strongly urge Respondent's immediate voluntary compliance through the elimination of these practices and provision of appropriate relief to the Charging Party and any other persons adversely affected by them, as follows: . . . (2) entry into a publicly-filed Consent Decree containing, *inter alia,* the following provisions: (a) tolling the charge-filing period for employees who have signed the same or similar severance agreements; (b) revision of the form severance agreement to comply with the terms of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) [3] and to make clear, inter alia, that employees retain the right to file charges and cooperate with the Commission; (c) communication with Respondent's workforce regarding their right to file charges; and (d) training of supervisors, managers, and human resources professionals regarding employees' rights to file charges and cooperate with the Commission . If no action is taken by Respondent within five (5) business days of receipt of this letter to eliminate the practices in question and make whole the Charging Party and other affected persons, the Commission will consider filing suit in the United States District Court for the District of Colorado and requesting appropriate relief, including but not limited to, any or all of the above-described remedies.

[ECF 6-5]. There should be no dispute that the EEOC's LOD put Defendant on notice that the Separation Agreements were considered to be unlawful because in a letter dated January 10, 2014, Defendant responded to the LOD, acknowledging that "part of the Determination seeks to have the College revise 'the form severance agreement to comply with the terms of the Older Workers Benefit Protection Act.'" [ECF 6-7]. Defendant concedes that on March 25, 2014, an in-person conciliation meeting was held between the parties at the Commission's offices. [ECF 6, p. 14, final ¶].

Based on the foregoing facts, the conciliation is sufficient to meet the two requirements under the new *Mach Mining* standards. First, the language of the LOD plainly put Defendant on

---

[3] The OWBPA is an integrated part of the ADEA, not a free-standing, independent statute. *See Mass. v. Bull HN Info. Sys., Inc.*, 16 F.Supp.2d 90, 105 (D. Mass. 1998) ("[a]s an amendment to the ADEA, the OWBPA was introduced into the code not as a free-standing statute, but as multiple modifications to various existing sections of the ADEA").

notice that the EEOC considered the company's form Separation Agreements to violate employees' rights under the ADEA.  Any doubt as to whether Defendant was on notice of the alleged violation is resolved by Defendant's own subsequent response dated January 10, 2014, acknowledging that the EEOC was seeking to revise the form Separation Agreements.  Second, Defendant was afforded the opportunity to discuss the alleged violation and potential remedies. Defendant initially had the opportunity to discuss the form Separation Agreements in its January 10, 2014 response, where it acknowledged the issue but declined to discuss it further.  Then, when the parties met in person on March 25, 2014, Defendant again had the opportunity to discuss the form Separation Agreements, and how to remedy the deficiencies.  Thus, both elements of the *Mach Mining* review are met, and the conciliation was sufficient as a matter of law.

### C.  The Court Erred In Its Chronology Of Events.

The fundamental factual error made by the Court was its finding that the EEOC was unaware of the form Separation Agreements until after the EEOC issued its LOD. [ECF 16, at 11].  As discussed above, however, Defendant sent the form Separation Agreements to the EEOC in May 2013, during the EEOC's investigation, and several months before the EEOC's LOD dated December 20, 2013.  In concluding the EEOC was unaware of the standard Separation Agreements, this Court relied on an assertion by CollegeAmerica, in stating: "CollegeAmerica also asserts that it provided copies of the Separation Agreements to the EEOC after the EEOC issued its Letter of Determination to clarify that the Agreement was not College America's form severance agreement as the EEOC mistakenly believed. *See* Ex. 7 to Motion."[Order, ECF 16, at 11]. The Defendant made this assertion in its Reply Brief, stating:

"Indeed, the College provided the form severance agreements in response to the Determination, to show the College (sic)[4] that the Potts Agreement was not a form severance agreement." [ECF 11, 9. 14 (emphasis original by Defendant)]. [ECF 11, p. 14]. While technically true, Defendant was telling only part of the story, omitting the fact that it had previously sent these documents to the EEOC in May 2013, as part of the investigation. [Resp. at 29, ECF 10]. The EEOC's Response Brief explains:

> [I]n responding to the charges *during the investigation*, CollegeAmerica provided EEOC with copies of four form Separation and Release Agreements. [(citing to ECF 1, ¶24 of Complaint); ECF 1-2, 1-3, 1-4, 1-5; Position Statement at 5 (list of attachments under #8) (ECF 6-3).]

[ECF 10, at 29 (emphasis added)]. By stating these Separation Agreements were sent "during the investigation," the EEOC intended to convey that they sent before the LOD, which issues after an investigation is completed.

The key to the chronology is in the EEOC's citations. The EEOC's Response to the Motion to Dismiss [ECF 10, p. 29] specifically cited to ECF 6-3, which is one of the Defendant's two May 3, 2013 position statements, signed by the General Counsel for College America. In this position statement [ECF 6-3], on page 5, under paragraph 8, the list of attachments includes "Separation and Release Agreements MM 359." The EEOC's Response brief also referenced the four Separation and Release Agreements [ECF 1-2, 1-3, 1-4, 1-5], each of which bears the designation "Separation and Release Agreements MM 359," indicating these are the same Separation Agreements Defendant provided with its aforementioned May 3, 2013 position statement. [ECF 6-3, p. 5, ¶ 8]. Therefore, the EEOC received the Separation

---

4 The reasonable interpretation relied upon by the Court was the Defendant intended to state: "to show the EEOC . . ."

Agreements approximately seven months *before* it issued its Letter of Determination on December 20, 2013. [LOD, ECF 6-5]. And consequently it was plain, albeit inadvertent, error for the Court to find that "[a]t the time the EEOC issued its findings in the Letter of Determination, it was unaware of the existence or terms of the Separation Agreements." [ECF 16, at 11].

Having established that the EEOC did know about the Separation Agreements prior to issuing its LOD, the language of the LOD and the relief sought therein plainly inform Defendant that the EEOC found the forms to violate employee rights under the ADEA, as Defendant itself acknowledged in its letter of January 10, 2013, responding to the LOD. Accordingly, the Court also erred in finding that the LOD "could not serve as notice to CollegeAmerica that the EEOC was alleging that the Separation Agreements violated the ADEA." [ECF 16, at 11-12].

Likewise, the Court erred in finding that "[a]ny conciliation attempts reflected in [the LOD] were necessarily unrelated to the Separation Agreements since the EEOC was unaware of their existence or terms at this time." [ECF 16, at 12-13]. Having discovered the objectionable form Separation Agreements during the investigation, the EEOC initiated conciliation through the LOD and sought "immediate voluntary compliance" through revision of the agreements, notice to employees of their right to file charges and cooperate with the EEOC, and training of management staff. [LOD, ECF 6-5]. In its January 10, 2014 letter, Defendant acknowledged that the Settlement Agreements were at issue, but then diverted back to talking about Potts, who has consistently been the focus of Defendant's ire. [ECF 6-7]. This diversion should not be viewed as a lack of knowledge as to what was at issue. During conciliation, Defendant knew the EEOC had copies of their form Separation Agreements because the Defendant's General Counsel sent

12

them to the EEOC on May 3, 2013 [ECF 6-3] (a fact omitted from both Defendant's Motion and Reply). CollegeAmerica chose not to address the issues relating to those agreements.

Defendant's focus on Potts continued into the in-person conciliation meeting, which Defendant admits occurred. [ECF 6, p. 14, final ¶].  Given Defendant's unwillingness to come to agreement with respect to Potts, however, the conciliation did not result in an agreement. *See Mach Mining*, 135 S.Ct. at 1654. Indeed, this case is similar to the facts in *EEOC v. BVA, supra.* In *BVA*, there were three charging parties, Ivie, Mathews, and Martinez. The employer argued that when the parties reached an impasse with respect to the Ivie claims, the EEOC should have engaged in "separate" conciliations of the Matthews and Martinez claims, but instead "prematurely halted" the conciliation discussions. [Ex. 1, p. 14, 3rd ¶].  The *BVA* court rejected this contention, stating: "This argument cannot be reconciled with the 'narrow' review of the conciliation process recognized in *Mach Mining*. *See* 135 S. Ct. at 1649." *BVA, supra*, [Ex. 1, p. 14, 4th ¶].  "The EEOC alone decides whether in the end to make an agreement or resort to litigation and it has the discretion to set the pace and *duration* of conciliation efforts." *BVA, supra*, *citing Mach Mining*, 135 S at 1654. (quotation of *BVA* opinion, internal quotations omitted - emphasis added by *BVA* court). *BVA, supra*, [Ex. 1, p. 16, 1st ¶].

Here, Defendant argues, like BVA did, that when the discussions about Potts came to impasse, the EEOC was nevertheless obligated to engage in additional discussions regarding the offending form Separation Agreements (even though Defendant itself had elected not to discuss the Separation Agreements at all).  The court should reject this argument for the same reasons it was rejected in *BVA* – because it is not within the narrow scope prescribed by *Mach Mining*.  In short, under *Mach Mining*, Defendant had the requisite notice that the EEOC had made a

determination that the Defendant's Separation Agreements violated employees' rights under the ADEA, and were encompassed by the EEOC's conciliation proposal. The class of individuals affected included anyone who signed these agreements.  Moreover, the EEOC tried "to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Mach Mining*, 135 S. Ct. at 1655-56. Consequently, the EEOC's conciliation efforts on the second claim are sufficient under the *Mach Mining* standards, and the claim should not have been dismissed.

Alternatively, to the extent this Court determines that Defendant has nevertheless shown "that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, . . . the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance." 135 S. Ct. at 1656.

## **CONCLUSION**

Wherefore, for all of the foregoing reasons, the Commission respectfully requests this Court to reverse its Order dismissing the Second Claim for relief, and find that the EEOC's conciliation efforts were sufficient as a matter of law, under the new *Mach Mining* standards. Alternatively, if the Court finds the EEOC's conciliation efforts to be deficient under *Mach Mining,* the Commission requests this Court to remand the Second Claim for further conciliation efforts to obtain voluntary compliance with the ADEA.

DATED: August 4, 2015.

Respectfully submitted,


*/s/ Steven L. Murray_____*
Senior Trial Attorney
Equal Employment Opportunity Commission
Denver Field Office
303 E. 17th Avenue, Suite 410
Denver, CO 80203
Telephone: 303.866.1304
E-Mail: steven.murray@eeoc.gov


EQUAL EMPLOYMENT
   OPPORTUNITY COMMISSION
Denver Field Office
303 East 17th Avenue, Suite 410
Denver, Colorado  80203

Attorneys for Plaintiff


**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on August 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Raymond W. Martin, Esq.
Craig R. May, Esq.
Thomas E.M. Werge, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-4647
Telephone: 303.244.1800
martin@wtotrial.com
may@wtotrial.com
werge@wtotrial.com

Attorneys for Defendant

*/s/ Steven L. Murray__*