IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-CV-01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER
EDUCATION, INC., d/b/a COLLEGEAMERICA

        Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR
RECONSIDERATION OF COURT'S ORDER DISMISSING
PLAINTIFF'S SECOND CLAIM FOR RELIEF**

---

Defendant CollegeAmerica Denver, Inc., n/k/a Center for Excellence in Higher

Education, Inc. d/b/a CollegeAmerica ("CollegeAmerica" or the "College" or "Defendant")

submits the following Response in opposition to Plaintiff EEOC's August 4, 2015 Motion for

Reconsideration ("Motion for Reconsideration" or "Motion") (Doc. 50) of the Court's December

2, 2014 Order dismissing the EEOC's Second Claim for Relief (Doc. 16.)

## INTRODUCTION

The EEOC asks this Court to reverse its well-reasoned decision, issued over eight months

ago, dismissing the EEOC's Second Claim for Relief. The primary premise for the EEOC's

Motion—that the Supreme Court's decision in *Mach Mining, LLC v. EEOC*, 575 U.S. ___, 135

S. Ct. 1645 (April 29, 2015) warrants reconsideration—is mistaken. The decision in *Mach*

*Mining* does not change in any respect the validity of this Court's determination that Plaintiff's Second Claim should be dismissed.

The remaining issues in the EEOC's Motion for Reconsideration were all raised, thoroughly briefed, and carefully considered by this Court almost a year ago in connection with the College's Motion to Dismiss. The EEOC's attempt to rehash these issues in its Motion for Reconsideration should be rejected. Moreover, Plaintiff's Motion should be denied as untimely.

Because of the passage of time since these issues were addressed by the Court (almost a year ago), Defendant will briefly review the key facts relevant to Defendant's Motion to Dismiss. As discussed in detail in that Motion (Doc. 6.), this case is not about any acts of alleged age discrimination. It is about a one-page settlement agreement that Charging Party Debbi Potts negotiated with the College six weeks **after she voluntarily quit** her job with the College (the "Potts Settlement Agreement," attached hereto as Exhibit 1). After quitting her job, Ms. Potts filed a claim with the Wyoming Department of Labor ("DOL") asserting that the College owed her a $7,000 bonus. The College responded to the DOL complaint by showing that Ms. Potts had not earned any bonus and that all bonuses were at the sole discretion of the College. While that claim was pending, and without the involvement of lawyers, Ms. Potts and CollegeAmerica's CEO, Eric Juhlin, negotiated a **very simple** settlement agreement to resolve these issues, the negotiations resulting in the Potts Settlement Agreement.[1] Under the terms of that agreement, the College agreed to pay Ms. Potts $7,000 and to not oppose her claim for unemployment benefits

---

[1] Mr. Juhlin had the assistance of the College's General Counsel in drafting the initial agreement that was proposed to Ms. Potts, but she rejected that agreement and submitted an agreement that she prepared. Mr. Juhlin and Ms. Potts then negotiated from the agreement Ms. Potts drafted, ultimately resulting in the Settlement Agreement that they both signed.

in exchange for, *inter alia*, Ms. Potts's agreement not to "intentionally and with malicious intent . . . disparage the reputation of" the College. (Agreement, Doc. 6-1.) **The Potts Settlement Agreement was not a severance or separation agreement and in fact had nothing to do with severance—it was a negotiated release and settlement of a disputed claim almost two months after Ms. Potts had voluntarily resigned from employment with the College.**

On April 30, 2014, the EEOC filed its Complaint asserting three causes of action against the College. The Second Claim alleged that the College's form severance agreements violated Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4). (Compl., Doc. 1.) This new claim was a surprise to the College. First, Ms. Potts has never signed a severance agreement with the College, nor was she ever given the option of signing a severance agreement. The College's form severance agreements are used for employees who are laid off or, in some circumstances, terminated, but not for employees who quit. (*See* Decl. of Matthew Gerber, Doc. 6-10, ¶¶ 5, 20.) Second, at no time during the administrative proceedings before the EEOC had the EEOC put the College on notice of any issues it had with the College's form severance agreements—the EEOC's Letter of Determination ("LOD") only requested a tolling agreement for "employees who have signed the same or similar severance agreements" as the agreement signed by Ms. Potts. (LOD, Doc. 6-5 at 2.) Contrary to the argument made now for the second time by the EEOC, the EEOC's request for a tolling agreement for employees who were similarly situated to Ms. Potts **did not** provide the College with any notice that the EEOC was contemplating the extensive challenges to the College's standard, multi-page employee severance agreements that the Commission raised in its Second Claim for Relief. Finally, consistent with the fact that, until it filed this lawsuit, the proceedings before the EEOC had dealt exclusively with the settlement

agreement between the College and Ms. Potts, the EEOC had never attempted to conciliate the issues it tried to raise in its Second Claim. (*See* Doc. 6-10, ¶ 21.)

The EEOC's Motion for Reconsideration repeatedly discusses the fact that the College had provided the EEOC with copies of its form severance agreement. However, it was undisputed in the briefing before this Court on Defendant's Motion to Dismiss, and confirmed in the Court's Order, that the College provided the form severance agreements **only** for purposes of confirming for the EEOC that the Potts Settlement Agreement **was not a severance agreement, and bore no resemblance to the form severance agreements that the College did use when employees were laid off or terminated**.

As a result, the College moved to dismiss the claim. (Doc. 6.) The EEOC submitted an exhaustive, 59-page opposition to the College's Motion. (Doc. 10.) In its Response, the EEOC thoroughly evaluated all of the issues (with the exception of the significance of the Supreme Court's decision in *Mach Mining*) that it is asking this Court to revisit in its Motion for Reconsideration.

In a well-reasoned decision, this Court granted the Motion to Dismiss Plaintiff's Second Claim. (Doc. 16.) The Court made specific findings regarding (1) the one-page Potts Settlement Agreement, (2) the fact that the College's form severance agreements were completely unrelated to and different from Potts Settlement Agreement, and (3) that the College's form severance agreements had been provided to the EEOC by CollegeAmerica for the sole purpose of confirming for the EEOC that Potts had never signed a severance agreement.

## <u>LEGAL ARGUMENT</u>

A partial dismissal is an interlocutory order. *See James v. Dunbar*, No. 09-CV-02479-PAB, 2010 WL 3834335, at *1 (D. Colo. Sept. 27, 2010); *Skelly Oil Co. v. Zimmerman*, 332 F.2d 618, 619 (10th Cir. 1964). Pursuant to Federal Rule of Civil Procedure 54(b), the district court has discretionary authority to review and revise such interlocutory rulings prior to entry of final judgment. *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991); *see* Fed. R. Civ. P. 54(b). Despite such general discretion, "to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-CV-00037-PAB-CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010), *aff'd*, 633 F.3d 951 (10th Cir. 2011); *see also Bradley v. Denver Health & Hosp. Auth.*, No. 08-CV-02587-PAB-KMT, 2011 WL 766951, at *1 (D. Colo. Feb. 24, 2011). "[T]o succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000), *aff'd*, 16 F. App'x 959 (10th Cir. 2001) (internal quotation marks omitted); *accord Foster v. Mountain Coal Co., LLC*, 61 F. Supp. 3d 993, 998 (D. Colo. 2014); *JTS Choice Enters., Inc. v. E.I. DuPont De Nemours & Co.*, No. 11-CV-03143-WJM-KMT, 2014 WL 3605866, at *2 (D. Colo. July 22, 2014); *Ayyad v. Holder*, No. 05-CV-02342-WYD-MJW, 2014 WL 4747451, at *2 (D. Colo. Sept. 24, 2014). "The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the [c]ourt to his or her way of thinking." *Anderson Living Trust v. WPX Energy Prod., LLC*, No.

CIV 12-0040 JB/KBM, 2015 WL 4040616, at *23 (D.N.M. June 24, 2015). Mere disagreement

with the court's ruling does not warrant reconsideration. *See JTS Choice Enters., Inc.*, 2014 WL

3605866, at *6; *Fye v. Oklahoma Corp. Comm'n*, No. CIV.03 1477 C, 2006 WL 2792673, at *2

(10th Cir. 2008).

I.     **THE EEOC'S MOTION FOR RECONSIDERATION IS UNTIMELY**

   A.     **The Court's Order Challenged in the EEOC's Decision Was Issued on December 2, 2014, and the *Mach Mining* Decision Was Issued by the Supreme Court on April 29, 2015.**

   The EEOC's delay in filing its Motion is sufficient reason, standing alone, to deny the

Motion. *See Fisher v. Sw. Bell Tel. Co.*, No. 07-CV-0433-CVE-FHM, 2009 WL 936712, at *6

(N.D. Okla. Apr. 6, 2009), *aff'd*, 361 F. App'x 974 (10th Cir. 2010); *see also White v. Am.

Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990). Although Federal Rule of Civil Procedure

54(b) grants district courts discretion to reconsider interlocutory orders "at any time before the

entry of a judgment adjudicating all the claims," courts consider prejudice to a non-moving

party, fairness, and judicial economy when utilizing such discretion. Fed. R. Civ. P. 54(b);

*Bradley*, 2011 WL 766951, at *2; *JTS Choice Enters., Inc.*, 2014 WL 3605866, at *6. In

addition, "although judges are 'not necessarily required to do so,' they commonly circumscribe

'their broad discretion to revisit interlocutory orders . . . by incorporating . . . analyses' from

Rules 59 and 60 . . . ." *Colorado Cas. Ins. Co. v. Brock USA LLC*, No. 11-CV-02527-DME-

KMT, 2013 WL 4550416, at *1 (D. Colo. Aug. 28, 2013) (quoting *United Fire & Cas. Co.*, 2010

WL 420046, at *3).

   Courts in this Circuit have found a motion for reconsideration to be "untimely" when

filed three-and-a-half months after the court granted partial summary judgment. *See Hunt v.*

*Green*, 376 F. Supp. 2d 1043, 1055 (D.N.M. 2005). In *Bradley v. Denver Health*, the plaintiff

moved for reconsideration almost four months after the court denied her motion to amend the

complaint. 2011 WL 766951, at *1. The plaintiff argued that the motion was proper and timely

in light of an alleged change of law. *Id.* The court disagreed, emphasizing that the plaintiff

sought reconsideration nearly two months after the issuance of the law-changing opinion. *Id.* at

*6. The court characterized this time lapse as "an unreasonable period of delay to file a motion to

reconsider" and denied the motion as prejudicial to the defendant. *Id.*; *see also United States v.*

*Lyman*, 166 F.3d 349 (10th Cir. 1998) (denying motion to reconsider because the party brought it

eight months after the entry of default judgment).

       This precedent confirms that the EEOC's Motion is untimely. The EEOC's Second Claim

was dismissed by this Court on December 2, 2014. (Doc. 16.) The U.S. Supreme Court issued its

opinion in *Mach Mining* on April 29, 2015. 135 S. Ct. 1645. The EEOC did not move for

reconsideration until August 4, 2015, over eight months following the Court's original Order

dismissing the Second Claim. (*See* Doc. 16.) As discussed below, the College disagrees that

*Mach Mining* created a new legal standard applicable in this case. However, assuming *arguendo*,

that it did, the delay of almost 13 weeks in filing the Motion after the *Mach Mining* decision was

decided, standing alone, warrants denial of the Motion. *See Bradley*, 2011 WL 766951; *Lyman*,

166 F.3d 349.

       **B.      Granting the Motion at This Stage in the Litigation Process Would Prejudice
               Defendant.**

       Revival of the Second Claim at this stage in the litigation would significantly prejudice

the College and cause substantial delay in the resolution of this case. Less than two weeks prior

to the date the EEOC moved for reconsideration, the parties filed a stipulated request to modify

the deadlines in the Scheduling Order. (Ord. Granting Parties' Joint Mot. to Modify Deadlines in Scheduling Order, Doc. 47.)[2] The parties mutually agreed that the deadline for serving written discovery is August 31, 2015, which is only three days away. (*Id.*) Pursuant to the modification, the deadline for completion of discovery, including depositions, is November 16, 2015, and the current trial date is June 20-22, 2016. (*Id.*) All of these deadlines would have to be changed if, at this late stage, the EEOC is permitted to begin litigating the issues relating to the College's form severance agreement that the EEOC attempts to assert in its Second Claim.

Reinstatement of the Second Claim will result in an extensive amount of additional discovery, far more extensive than has been necessary for the parties to address the issues raised in the EEOC's remaining Third Claim for Relief. For example, even though the events that led to the signing of the Potts Settlement Agreement are unique to Ms. Potts, in discovery, the EEOC attempted to require the College to provide information relating to every employee, or former employee, with whom the College had entered into an agreement containing a non-disparagement clause within the last ten years. (*See* Exhibit 2, Interrog. No. 5.) It is a virtual certainty that, if its Motion to Reconsider is granted, the EEOC will seek to conduct similar discovery for every individual who executed a severance agreement with the College going back to 2005. This discovery would dwarf the discovery that the parties have undertaken to date. The parties would be unable to meet any of the extended deadlines upon which they agreed—and which this Court approved—just weeks ago.

---

[2] In the discussions between the EEOC and the College relating to the stipulated request to amend the Scheduling Order, the EEOC did not inform counsel for the College that it intended to file this Motion.

8

Because the issues the EEOC attempted to pursue in its Second Claim are so much broader than the claims relating to Ms. Potts, if the Motion for Reconsideration is granted, it will essentially require that the parties start the discovery process all over. If the EEOC is permitted at this late date to add its Second Claim, Defendant is confident that the EEOC will attempt to turn this litigation into a nationwide investigation into issues completely unrelated to the issues the parties have been litigating for the past nine months. The addition of broad, completely unrelated claims at this point in the litigation would unfairly prejudice the College and unnecessarily expand the scope of this litigation.

In addition to the fact that the EEOC's Motion for Reconsideration completely lacks merit, considerations of fairness and judicial economy clearly outweigh the EEOC's interest in getting "a second bite at the [] apple"—especially considering the EEOC's failure to explain its delay in filing the motion. *JTS Choice Enters.*, 2014 WL 3605866, at *6.

## II.    THE EEOC HAS FAILED TO ESTABLISH GROUNDS FOR RECONSIDERATION

A motion to reconsider "should be denied unless it clearly demonstrates" that (1) new evidence or legal authority has emerged, or (2) the prior ruling was in error. *Foster*, 61 F. Supp. 3d at 998; *Nat'l Bus. Brokers, Ltd.*, 115 F. Supp. 2d at 1256; *Bradley*, 2011 WL 766951, at *1; *see also Colorado Cas. Ins. Co.*, 2013 WL 4550416, at *1; *Vigil v. Colorado Dep't of Corr.*, No. 09-CV-01676-PAB-KLM, 2011 WL 1518660, at *1 (D. Colo. Apr. 20, 2011). For the moving party to succeed, "the basis for the second motion must not have been available at the time the first motion was filed." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Because the EEOC's Motion fails to establish conditions warranting reconsideration, the Court should deny its motion.

**A.      The Holding in *Mach Mining* Does Not Change the Outcome on Defendant's Motion to Dismiss.**

The EEOC argues that new legal authority has changed the law relating to its Second Claim, asserting that the holding in *Mach Mining* "directly addresses the standard for reviewing conciliation." (Doc. 50 at 4.) However, a close reading of *Mach Mining*, as well as subsequent decisions that analyze *Mach Mining*, reveal that the law controlling the EEOC's Second Claim remains unchanged.

1.      *Mach Mining* does not alter the statutory requirements for notice and conciliation.

Although *Mach Mining* admittedly addresses a permissible standard for judicial review of the EEOC's efforts to conciliate a charge, the standard addressed in the case concerns only the quality of the conciliation. *Mach Mining*, 135 S. Ct. at 1656. What *Mach Mining* does not address is the statutory-established requirement that the EEOC must "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance . . . through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). *Mach Mining* does not call into question the Court's dismissal of the Second Claim because the EEOC never gave notice of, or made any efforts to conciliate, the issues raised in the Second Claim.

In *Mach Mining*, the court refused to "do a deep dive into the conciliation process" to determine whether the EEOC conciliated in good faith because such a determination would flout "protection of the confidentiality of conciliation efforts" in employment discrimination matters. 135 S. Ct. at 1655; *see also EEOC v. Trucking Servs., Inc.*, No. 1:12-CV-00275-SEB, 2015 WL 3961180, at *30 (S.D. Ind. June 30, 2015) (relying on *Mach Mining* when reviewing the allegation that the EEOC acted in bad faith in the course of its mandatory conciliation).

Significantly, Mach Mining alleged that the EEOC failed to negotiate in good faith; **however, it never disputed that the EEOC had both provided notice and actually conciliated the claims**. *See id.* Thus, while addressing the scope of judicial review over the quality of the EEOC's investigation and conciliation, *Mach Mining* has not changed the fundamental principle: "conciliation efforts are insufficient if they do not give the employer an opportunity to remedy the discrimination." *EEOC v. GNLV Corp.*, No. 2:06-CV-01225-RCJ, 2015 WL 3467092 (D. Nev. June 1, 2015) (acknowledging this principle notwithstanding *Mach Mining* issued a month earlier). Clearly, in the absence of notice to the employer and **any** effort to conciliate, the Court correctly held that dismissal is the only appropriate remedy.

To support its argument that *Mach Mining* has changed the law controlling the EEOC's Second Claim, the EEOC relies on *EEOC v. Blinded Veterans Ass'n*, No. 14-2102, (D.D.C. July 7, 2015) (Doc. 50-1) ("*BVA*"). *BVA*, unlike this case, exemplifies the factual scenario to which *Mach Mining* applies. BVA argued that the EEOC had failed to (1) make good-faith efforts to conciliate because it did not "adhere to the *intent* of the conciliation requirement" and (2) make an independent investigation of the charges of discrimination at issue. (*Id.* at 14 (emphasis in original).) Relying on *BVA*, the EEOC argues that it "alone decides whether in the end to make an agreement or resort to litigation[,] and it has the discretion to set the pace and *duration* of conciliation efforts." (Doc. 50 at 13 (emphasis in original).) This point is simply irrelevant to resolution of the EEOC's Motion—relating to a situation where the EEOC failed to provide **any** notice[3] or engage in **any** effort to conciliate the issues raised in the Second Claim. The EEOC

---

[3] Defendant acknowledges that, in its Order on the College's Motion to Dismiss, the Court may have construed the College's argument that it provided copies of the Separation Agreements to the EEOC after the EEOC issued its LOD—to show that there was no similarity

also emphasizes that the court in *BVA* refused to compel the EEOC to engage in separate

conciliations with two aggrieved parties, when its conciliation with the third party reached an

impasse. (Doc 50-1 at 16.) What the EEOC does not mention, however, is that the EEOC was

unable to conciliate with the remaining parties because the defendant refused to discuss

settlements with any of the "charging parties" without a global settlement of all claims and all

parties.[4] (*Id.*)

Unlike BVA, in this case the College does not challenge the EEOC's good faith during

conciliation or the quality of the EEOC's investigation or conciliation efforts. In its Motion to

Dismiss, the College asserted, and this Court agreed, that the EEOC **never gave any notice and**

**never made any effort to conciliate the claims raised** in the Second Claim. (*See* Doc. 10 at 5-

10; Doc. 16 at 12-13.) Consistent with *BVA*, the EEOC failed to meet its statutory obligations

because it (1) failed to communicate the claim to the College, (2) did not allow the College to

respond, and (3) failed to engage in discussions concerning the form severance agreements. (*See*

(Doc 50-1 at 14.)

---

between the severance agreements and the Potts Settlement Agreement—as indicating that the
severance agreements had never been produced at any time prior to that. The EEOC correctly
points out in its Motion for Reconsideration that in the College's production to the EEOC in May
2013, an extensive number of policy documents were provided in response to Ms. Potts's first
charge of discrimination, including the form severance agreements. (Doc. 50 at 11.)
Significantly, in its Motion for Reconsideration, the EEOC acknowledges that, although it was
aware that the form severance agreements had been included in the extensive policy documents
that were provided in May 2013, the EEOC did not deem this fact significant enough to advise
the Court in the briefing on Defendant's Motion to Dismiss. This fact does not change in any
respect the analysis discussed above and in the College's Motion to Dismiss that the EEOC
failed to provide notice of the issues raised in its Second Claim.

[4] Another detail that the EEOC leaves out is that one such "charging party" in *BVA*
included the aggrieved party's wife, over whom the EEOC lacked jurisdiction. *Id.*

*EEOC v. GNLV Corp.*, No. 2:06-CV-01225-RCJ, 2015 WL 3467092 (D. Nev. June 1, 2015) more directly addresses the issues before this Court in light of *Mach Mining*. There, a casino dealer alleged a racially hostile work environment and retaliation claims against his employer. *Id.* at *1. The EEOC's investigation identified additional employees who claimed discrimination and retaliation: four other dealers and one kitchen steward. *Id.* The employer asserted that the EEOC failed to conciliate and provided no notice regarding these additional claims. *Id.* The EEOC moved for summary judgment on this affirmative defense. *Id.* at *2, 4-5, 7. In denying that motion, the court acknowledged the holding in *Mach Mining* that (1) the EEOC's duty to attempt conciliation is subject to limited judicial review, and (2) the EEOC's sworn affidavit is sufficient to show that the EEOC has met the conciliation requirement. *Id.* However, the court also noted that if "**the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute.**" *Id.* (quoting *Mach Mining*, 135 S. Ct. at 1648-49) (emphasis added). The court denied the EEOC's motion for summary judgment because it concluded there was evidence indicating that the EEOC had failed to conciliate violations in the defendant's kitchens—it had only conciliated violations on the casino floors. *Id.* at *5, 8. The decision confirms that the EEOC has a fundamental duty to put an employer on notice of a claim, in addition to its duty to conciliate.

CollegeAmerica, likewise, does not attack the **quality** of the EEOC's conciliation on the issues raised in the EEOC's Second Claim because there was no effort to conciliate the claim. Instead, its Motion to Dismiss was based on the fact that no notice and no effort to conciliate was

ever undertaken on the issues raised in the EEOC's Second Claim. The College provided

"credible evidence" in the form of the affidavit of Matthew Gerber, the College's General

Counsel, indicating that the EEOC failed to (1) provide any information about any issue

concerning form severance agreements (*see supra* note 3) and (2) engage in any conciliation

efforts relating to this claim. (*See* Doc. 6-10, ¶¶ 17-21.)[5] In full compliance with *Mach Mining*,

this Court conducted fact-finding to decide the limited dispute regarding the requisite notice and

conciliation. (Doc. 16 at 13.) The Court correctly found that the EEOC failed to provide notice to

the College and did not conciliate the form severance agreements claim. (*Id.*) Based on these

findings, it properly dismissed the Second Claim. (*Id.*)

> 2.     The remedy that *Mach Mining* directs does not apply to this case.

In its Motion, the EEOC correctly—albeit, out of context—cites *Mach Mining* for the

proposition that the EEOC "did not provide the requisite information about the charge or attempt

to engage in a discussion about conciliating the claim, . . . the appropriate remedy is to order the

EEOC to undertake the mandated efforts to obtain voluntary compliance." (Doc. 50 at 14

(quoting *Mach Mining*, 135 S. Ct. at 1656).) However, this remedy is only appropriate in cases

like *Mach Mining*, where the Commission gave notice and actually undertook some effort at

conciliation. *See Mach Mining*, 135 S. Ct. at 1655; *see also EEOC v. OhioHealth Corp.*, No.

2:13-CV-780, 2015 WL 3952339, at *4 (S.D. Ohio June 29, 2015) (referring to *Mach Mining*

when refusing to make the court "lead conciliation talks").

---

[5] The EEOC provided no sworn evidence then, and none now, to support an assertion that it provided notice of and conciliated the issues raised in the EEOC's Second Claim.

On the other hand, the law applicable to circumstances where the EEOC completely fails to provide notice or make any attempt to conciliate a claim remains unchanged—dismissal is proper. *See EEOC v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1267 (D. Colo. 2007); *Dunlop v. Res. Sciences Corp.*, 410 F. Supp. 836, 843 (N.D. Okla. 1976). Here, the College does not assert that the EEOC insufficiently conciliated. It previously proved that the EEOC completely failed to give notice or conciliate the Second Claim. Taking the EEOC's position to its logical conclusion, the EEOC would be able to file an action against any employer at any time without first providing any notice to the employer or attempting to conciliate, and the employer's only remedy would be to stay the case pending conciliation. Such a rule flies directly in the face of the EEOC's process of first requiring a charge, allowing for a response to that charge, issuing a determination, and conciliating the issue before initiating litigation. *See* 29 U.S.C. § 626(f); *Marshall v. Sun Oil Co. of Pennsylvania*, 592 F.2d 563, 565-66 (10th Cir. 1979) (holding that the "primary emphasis" of the ADEA is to use informal "conciliation to resolve disputes").

In sum, although *Mach Mining* clarified the scope of judicial review over the EEOC's good-faith conciliation efforts, it has affirmed a well-established rule that nothing in the pertinent law "withdraws the courts' authority to determine whether the EEOC has fulfilled its duty to attempt conciliation of claims." 135 S. Ct. at 1656; *see also Marshall v. Sun Oil Co. of Pennsylvania*, 952 F.2d 563, 565-66 (10th Cir. 1979) (holding that the EEOC must undertake "full and extensive" conciliation in an effort to resolve matters "wherever possible without resorting to formal litigation"); (Doc. 16 at 13.) *Mach Mining* is not an intervening change of law that would affect the dismissal of the EEOC's Second Claim. To the contrary, *Mach Mining* is

consistent with previous Tenth Circuit decisions supporting this Court's order dismissing the Second Claim.

As a result, the Court should deny the EEOC's Motion. *See Bradley*, 2011 WL 766951, at *2 (D. Colo. Feb. 24, 2011) (denying plaintiff's motion for reconsideration because the alleged intervening decision was inapplicable to the plaintiff's dismissed claim and would not have changed the outcome of the claim).

### B.     The EEOC Failed to Prove That the Prior Ruling Was Clearly in Error.

For a court to grant a motion for reconsideration, the moving party must present "a clear indication—one that manifests itself without the need for in-depth analysis or review of the facts—that the [c]ourt erred." *Anderson Living Trust*, No. 2015 WL 4040616, at *21-22. However, a motion to reconsider "is not at the disposal of parties who want to rehash old arguments." *Nat'l Bus. Brokers, Ltd.*, 115 F. Supp. 2d at 1256; *see also Foster*, 61 F. Supp. 3d at 998. "Motions for reconsideration are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete*, 204 F.3d at 1012; *see Vigil*, 2011 WL 1518660, at *1. A party moving for reconsideration faces an increased burden of production, which must be distinguished from the burden of persuasion. *Anderson Living Trust*, 2015 WL 4040616, at *23.

In its Motion, with the exception of its discussion of *Mach Mining*, the EEOC simply rehashes the arguments that this Court already rejected in dismissing the Second Claim. This is an inappropriate basis for reconsideration.

First, the EEOC requests reconsideration based on a "plain, albeit inadvertent, error" in the Court's conclusion that, at the time the EEOC issued its findings in its LOD, the EEOC was unaware of the existence or terms of the form severance agreements. (*See* Doc. 50 at 10-12.) The EEOC provides a detailed analysis of "the EEOC's citations" in an effort to clarify the essence of this alleged "plain error." (*See id.*) However, the EEOC never provides any explanation as to why the purported error is of significance. "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). Even if the EEOC established a factual error, any such error did not affect substantial rights or the fairness of the judicial proceeding.[6] Regardless of when the EEOC first received a copy of the form agreements, the Court found that the College's actions in providing copies of the form severance agreements did not make the agreements "a subject of investigation despite no indication from the EEOC that this was the case." (Doc. 16 at 12.) Still trying to challenge this finding, the EEOC merely rehashes the same arguments that this Court rejected the first time. (*See* Doc. 50 at 12 (alleging that the language of the LOD "plainly inform[ed]" the College that the form severance agreements violated the law).)[7]

---

[6] *See supra* note 3.

[7] Substantively, the EEOC never informed the College of any claim regarding the form severance agreements. Those agreements were never at issue with Ms. Potts. Ms. Potts entered into a one-page *settlement* agreement, six weeks after she voluntarily resigned from the College. (Doc. 1-1.) The College's form severance agreements bear no resemblance to the Potts Settlement Agreement. (*See* Doc. 6-10, ¶ 20.) They are offered to employees who, unlike Ms. Potts, are subject to involuntarily termination, with each agreement being much lengthier, seven or more pages in length. (*See* Docs. 1-2, 1-3, 1-4, 1-5.) In an effort to clarify this distinction and

Second, the EEOC attempts to convince the Court that the severance agreements were at issue during the conciliation process. (*See* Doc. 50 at 12-13.) The EEOC uses a substantively identical argument as the one it presented in its opposition to the motion to dismiss. (*Compare* Doc. 10 at 35-37, *with* Doc. 50 at 12-14.) This Court found that "[a]lthough the EEOC bears the burden of proving that it engaged in conciliation relating to the Severance Agreements, it provide[d] no evidence to counter Mr. Gerber's affidavit." (Doc. 16 at 12.) Although the EEOC still has failed to provide any contrary sworn statement, in an apparent effort to correct its oversight in responding to the Motion to Dismiss, the EEOC now attempts to point to other evidence. However, because this evidence was readily available to the EEOC at the time it opposed dismissal, the EEOC cannot introduce it in the Motion for Reconsideration for the first time. *See Servants of Paraclete*, 204 F.3d at 1012; *Vigil*, 2011 WL 1518660, at *1; *JTS Choice Enters., Inc.*, 2014 WL 3605866, at *6.

As noted above and in the Court's Order on Defendant's Motion to Dismiss (Doc. 16 at 10), the College does not dispute that the EEOC's LOD requested that the College enter into a tolling agreement for the charge filing period "for employees who have signed the same or similar severance agreements." (Doc. 6-5 at 2.) That statement, referring to agreements that were

---

explain that the form severance agreements held no relation to the Potts Settlement Agreement, the College provided copies of the form severance agreements to the EEOC. Even after being provided these documents, the EEOC never informed the College, nor issued any determination, alleging claims against the College based on the form severance agreements. The EEOC only issued a determination regarding Ms. Potts's claims. (*See* Doc. 6-5.) The EEOC simply never provided the College any notice whatsoever of the issues raised in Plaintiff's Second Claim—until the EEOC filed its Complaint in this Court. As such, the Court properly dismissed the Second Claim.

"the same or similar to" the agreement signed by Ms. Potts, does not in any manner reference the College's form severance agreements.

The rule is clear: a "[c]ourt analyzes motions to reconsider by picking up where it left off in the prior ruling—not by starting anew." *Anderson Living Trust*, 2015 WL 4040616, at *23. The EEOC wants to take "a second bite at the [] apple" and raises arguments that this Court has reviewed and rejected. *Id.*; *JTS Choice Enters., Inc.*, 2014 WL 3605866, at *6. Accordingly, the Court should deny the Motion.

## III.   THE EEOC'S SECOND CLAIM FAILS AS A MATTER OF LAW

Even assuming, *arguendo*, *Mach Mining* had changed the law in a manner that directly affected the Second Claim, the EEOC's Motion still fails as a matter of law. The EEOC asserts the Second Claim as an independent claim for a violation of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) ("OWBPA"). However, there is no independent claim for a violation of the OWBPA. The OWBPA identifies minimum requirements that a waiver of ADEA rights must meet, thus providing "a shield for plaintiffs in an ADEA action when an employer invokes the waiver as an affirmative defense." *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir. 1999). It does not, however, provide the sword of "an independent cause of action for affirmative relief." *Id.* at 1191-92; *accord Burden v. Isonics, Corp.*, No. 09-CV-01028-CMA-MJW, 2009 WL 3367071, at *7 (D. Colo. Oct. 15, 2009) (noting that the law "does not create an independent cause of action for affirmative relief other than declaratory or injunctive relief to negate the validity of the waiver, as it applies to an ADEA claim").

It is undisputed that the College never offered to enter into a severance agreement with Ms. Potts, and she never signed such an agreement. The Second Claim is nothing more than an

"independent cause of action for affirmative relief" regarding these form severance agreements for which no employees have made any allegations of discrimination. The EEOC is thus attempting to convert the OWBPA into an affirmative cause of action against the form severance agreements, which the Tenth Circuit has rejected. *See Whitehead*, 187 F.3d at 1191; *Burden*, 2009 WL 3367071, at *7. The Second Claim fails as a matter of law, and this Court properly dismissed it.

## CONCLUSION

The EEOC can demonstrate neither any justification for its delay in moving for reconsideration nor any change in controlling law that would affect the outcome of this Court's proper dismissal of the Second Claim. The EEOC also cannot prove that the dismissal was clearly in error. Finally, the Second Claim fails substantively as a matter of law. For these reasons, the College requests that the Court enter an order denying the EEOC's Motion for Reconsideration.

Dated:  August 28, 2015.                     Respectfully submitted,


                                             *s/Raymond W. Martin*
                                             Raymond W. Martin (#8055)
                                             Thomas E.M. Werge (#42726)
                                             Wheeler Trigg O'Donnell LLP
                                             370 Seventeenth Street, Suite 4500
                                             Denver, CO  80202-5647
                                             Telephone:  303.244.1800
                                             Facsimile:  303.244.1879
                                                    martin@wtotrial.com
                                                    werge@wtotrial.com

                                             Attorneys for Defendant CollegeAmerica

<u>**CERTIFICATE OF SERVICE (CM/ECF)**</u>

I hereby certify that on August 28, 2015, I electronically filed the foregoing

DEFENDANT'S RESPONSE TO PLAINTIFF EEOC'S MOTION FOR RECONSIDERATION

OF COURT'S ORDER DISMISSING PLAINTIFF'S SECOND CLAIM FOR RELIEF with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following email addresses:

- **Raymond W. Martin**
  martin@wtotrial.com, lkuhn@wtotrial.com

- **Craig Ruvel May**
  may@wtotrial.com, ganderson@wtotrial.com, shaw@wtotrial.com

- **Thomas Eilif Miller Werge**
  werge@wtotrial.com, christman@wtotrial.com

- **Steven L. Murray**
  steven.murray@eeoc.gov

- **Sean Ratliff**
  sean.ratliff@eeoc.gov, rochelle.harris@eeoc.gov, kathy.wade@eeoc.gov,
  mary.oneill@eeoc.gov, rita.kittle@eeoc.gov, karen.morrison@eeoc.gov

- **William Hobson**
  william.hobson@eeov.gov

*s/Jeffery A. Burgdoff*