**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA,

      Defendant.

---

**PLAINTIFF EEOC'S REPLY IN SUPPORT OF ITS MOTION FOR
RECONSIDERATION (ECF 50).**

---

It is telling that Defendant College America would lead its Response (ECF 56) with arguments of timeliness and prejudice, which have no bearing on the merits of EEOC's motion for reconsideration. As with prior arguments about conciliation itself, the company wants off on technicalities. The law, however, does not support a denial based on timeliness or prejudice, which Defendant fails to demonstrate. Moreover, the recent Supreme Court decision in *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015), which is what EEOC's motion is really about, rejects attempts to game the conciliation process as a means of dismissing claims of discrimination brought by the EEOC. Rather than dismiss claims for failure to give "the requisite information about the charge or attempt to engage in a discussion about conciliating the claim," the Supreme Court stated that the appropriate remedy is to make the parties engage in conciliation. *Id*. at 1656. This, along with new guidance on the extent of judicial review of

-1-

conciliation, is new law which ought to be applied to this case. *Id*. As such reconsideration is appropriate. Additionally, Defendant, albeit in a footnote, concedes that this Court made a critical factual error when it determined that, prior to conciliation, EEOC did not have access to the form severance agreements underlying EEOC's second claim for relief. ECF 56, pp. 11-12, fn. 3.  Because this error formed the basis for the Court's decision to dismiss EEOC's second claim (ECF 16, pp. 11-13), reconsideration is also appropriate. Under the proper legal standard and now armed with a corrected timeline, this Court should reject the various deflections and distractions contained in Defendant's Response and reverse its dismissal of EEOC's second claim.

## <u>REPLY</u>

In what appears to be a pattern of telling only part of the story, Defendant's introduction asserts that this case "is about a one-page settlement agreement that Charging Party Debbi Potts negotiated with the College . . . ." Resp. at 2 (ECF 56). That agreement may be what Defendant wants this case to be about. But it has never been *all* this case is about.

Debbi Pott's agreement with Defendant constituted only the first of EEOC's claims for relief. EEOC's claimed that the agreement violated the ADEA by prohibiting Ms. Pott's from filing charges of discrimination or cooperating with EEOC in investigating charges of discrimination. *See* Compl., at ¶¶ 7-11, 40-42. (ECF 1). That first claim was dismissed as moot after Defendant represented, despite the words of the settlement agreement, that it would never interpret the agreement as preventing Potts from filing charges with EEOC or participating in an investigation. *See* Order, at 6-8 (ECF 16)

EEOC also alleged that the College retaliated against Pott's by suing her after she filed a

charge of discrimination. Compl. at ¶¶ 11-23, 43-45(Third Claim for Relief) (ECF 1). That claim is alive and proceeding with discovery.

Finally, EEOC asserted a claim based on the form severance agreements used by the company. Compl. at ¶¶ 24-33, 40-42 (Second Claim for Relief) (ECF 1). This claim, like the claim involving Potts' Agreement, is premised on the fact that the form severance agreements can be read to interfere with signatories' rights to file charges and participate in EEOC proceedings. This Court dismissed the claim based on a failure to provide notice and conciliate the claim. *See* Order at 11-13 (ECF 16). This claim, EEOC's second claim, is the focus of the present Motion for Reconsideration. EEOC asks that this Court reconsider its prior ruling based on 1) intervening Supreme Court precedent, and 2) a clear, albeit inadvertent, error of this Court in its prior decision.

Defendant makes several arguments to try to keep this Court from reestablishing EEOC's second claim for relief. Each of these will be debunked below.

A. *There was clear error -- EEOC was in possession of the form agreements months before issuing its Letter of Determination.*

Defendant argues that EEOC's second claim was a "surprise" because Pott's never signed a "severance agreement" with Defendant. ECF 56 at 3. The company implies that it had no idea the EEOC was concerned with the use of the form severance agreements and that the company only provided the agreements to the EEOC as part of conciliation to show the agreement was not like the one signed by Potts. *Id.* This sleight of hand is a half truth. Unfortunately, it erroneously informed this Court's analysis. This misfortunate misdirection continued since this error was the core feature of this Court's analysis and resulting order dismissing EEOC's second claim. *See* Order, at 11-13 (ECF 16).

The timeline, however, is now clear. After dancing around the issue, in footnote 3 of its Response (ECF 56, pp. 11-12, fn 3), Defendant admits that in May 2013 it provided EEOC with the "form severance agreements" that are at the basis of EEOC's second claim for relief.  May 2013 is nearly seven full months before the EEOC issued its letter of determination ("LOD"), which initiated the conciliation process mandated by the ADEA. *See* LOD (ECF 6-5).

From this fact, several observations inherently follow. First, and most importantly, this Court incorrectly concluded that the EEOC could not have provided notice of or conciliated issues related to the "form severance agreements" because EEOC did not have them when it issued its LOD. *See* Order, at 11-13 (ECF16). The EEOC had the agreements in May of 2013. Defendant admits that EEOC had the agreements in May 2013. ECF 56, p. 11-12, fn. 3. The underlying finding by the Court was wrong. Because this error was so fundamental to this Court's analysis, the dismissal of the EEOC's second claim should be reconsidered on this ground alone.

 Second, when EEOC told Defendant as part of its letter of determination that the agency wanted the College to "(a) toll[] the charge-filing period for employees who have signed the same or similar severance agreements; [and] (b) revis[e] ***the form severance agreement*** to comply with the terms of the Older Workers Benefit Protection Act," Defendant had to know that the EEOC was concerned with the "form severance agreements" previously provided to the Commission. *See* LOD (ECF 6-5) (emphasis added). This language plainly refers to 1) persons other than Debbi Potts, 2) "form severance agreement" beyond the "settlement agreement" signed by Debbi Potts, and 3) remedies beyond the needs of Debbi Potts. *Id*.

Third, it cannot be disputed that, among other concerns it had, the EEOC was at least

trying to engage Defendant in a revision of its form severance agreements. Whether Defendant appreciated this fact is another matter, one which is clearly in dispute.  Under the legal standard of *Mach Mining*, however, the question is not what Defendant says it knew, but what EEOC did to put Defendant on notice.

Even if it were important to prove what Defendants actually knew, circumstantial evidence would support the notion that Defendant very well knew that EEOC was concerned with the form severance agreements. First, EEOC directly references them in the LOD (ECF 6-5). Second, Defendant specifically references the LOD language about form severance agreements in subsequent correspondence to EEOC. *See* Martin Letter, at 1 (ECF 6-7). Third, it is inconsistent for Defendant to argue, on the one hand, that Potts did not sign a form severance agreement and, on the other hand, say that EEOC's language asking to modify the "form severance agreement" was insufficient to put College America on notice about the form severance agreement. ECF 56, p. 3 (*See e.g.*, "The Potts Settlement Agreement was not a severance or separation agreement and in fact had nothing to do with severance . . .")

In sum, now that Defendant has acknowledged (ECF 56 at 11-12, fn 3) that the "form severance agreements" were in the possession of the EEOC prior to the issuance of its LOD, a fair reading of that document shows there to have been notice of the EEOC's concerns with the Defendant's form severance agreements and other persons who might have been impacted by the impermissible language.  ECF 6-5.  It was less than helpful to this Court's analysis that the Defendant's earlier Reply (ECF 11, p. 14and now in its Response (ECF 56, at p. 4)("College's from severance agreement had been provided to the EEOC by CollegeAmerica for the sole purpose of confirming for the EEOC that Potts had never signed a severance agreement." )

Defendant continues to make reference to form severance agreements being produced after the issuance of the LOD. While technically true, that reference fails to advise the court that the same form severance agreements had been produced by the Defendant to the EEOC in May of 2013, well prior to the issuance of the LOD.  This Court now knows the central feature of its analysis of Defendant's understanding of the LOD was error. ECF 16, pp. 11-13. The real facts should be applied to the legal framework outlined in *Mach Mining*.

   B.  *Mach Mining changed the applicable legal standard and necessarily impacts the prior order dismissing EEOC's second claim*

College America argues that *Mach Mining* should not apply because *Mach Mining* ostensibly does not contemplate a failure to provide notice, but only situations of bad faith conciliation. Setting aside the fact that the alleged failure to provide notice was based on a faulty timeline of events created by Defendant's own misleading insinuations, Defendants are simply incorrect that *Mach Mining* did not address the question of notice. The Court's discussion of EEOC' obligation to attempt conciliation expressly incorporates the need to provide notice:

> So the EEOC, to meet the statutory condition, must tell the employer about the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance. . . . If the Commission does not take those specified actions, it has not satisfied Title VII's requirement to attempt conciliation.

*Mach Mining,* 135 S.Ct. at 1652. *Mach Mining*, therefore, is directly applicable to the case at hand and ought to be applied as subsequent, superseding precedent.

Here, this Court premised its dismissal of EEOC's second claim on a finding that "[a]t the time the EEOC issued its findings in the Letter of Determination, it was unaware of the existence or terms of the Separation Agreements. Thus, this letter could not serve as notice to

CollegeAmerica that the EEOC was alleging that the Separation Agreements violated the ADEA." ECF 16, pp. 11-12.  This was incorrect.  Unfortunately, this error in fundamental facts carried over into this Court's consideration of whether notice might be shown to have occurred during the conciliation process under the rationale of *EEOC v. Amer. Nat'l Bank*, 652 F.2d 117, 1185 (4th Cir. 1976) where this Court also determined "Any conciliation attempts reflected in this letter [of determination], however, were necessarily unrelated to the Separation Agreements since the EEOC was unaware of their existence or terms at this time." ECF 16, pp. 12-13. Defendant now admits that the fundamental premise of this finding was incorrect. ECF 56, pp. 11-12, fn. 3. The Court therefore must take another look at the language of the LOD itself, which expressly references a class that may have been affected by unlawful and invalid waivers, tolling of such provision, and reformation of "the form severance agreement." LOD (ECF 6-5). The LOD also expressly states: "This determination will serve as notice that the Commission has begun conciliation," and "If no action is taken by Respondent within five (f) business days of receipt of this letter to eliminate the practices in question and make whole the Charging Party and other affected persons, the Commission will consider filing suit . . . and requesting appropriate relief, including but not limited to, any or all of the above-described remedies." *Id*. Under the "barebones review" proscribed by *Mach Mining* (135 S.Ct. at 1656), this fulfills EEOC's duty to conciliate.

Defendant also takes issue with EEOC's alternative argument concerning proper remedies for failing to provide notice and opportunity to conciliate. Defendant argues that staying the case for further conciliation efforts is not appropriate where there was no notice. Resp. at 14 (ECF 56). First, as discussed above, there was notice and a conciliation offer in the

LOD (ECF 6-5). Second, the only post-*Mach Mining* case College America cites for its proposition is a case in which the court did in fact order a stay and further conciliation efforts. *Id.* (citing *EEOC v. OhioHealth Corp*, 2015 WL 392339 (S.D. Ohio June 29, 2015). Third, Defendant's doomsday scenario in which EEOC will willy-nilly start filing lawsuits without providing notice or attempting to conciliate is preposterous. *See* Resp. at 15.  ECF 56.   EEOC has a statutory obligation to attempt conciliate, which according to the Supreme Court, is met by providing notice of the claim and an opportunity to rectify the wrong. *Mach Mining*, 135 S.Ct. at 1652. The agency has no incentive to avoid this obligation even if the only remedy is to force EEOC to do what it was supposed to do. Most importantly though, Defendant ignores the plain language of the *Mach Mining* decision:

> If . . . the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim . . . the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance.

*Id.* at 1656 (citations omitted).

It is important to note that defendants generally, not just College America, have been playing the notice-and-conciliation game for several years now, attempting to have EEOC lawsuits dismissed on technical grounds. Such attempts are what prompted the Seventh Circuit to make the following observation:

> If an employer engaged in conciliation knows it can avoid liability down the road, even if it has engaged in unlawful discrimination, by arguing that the EEOC did not negotiate properly—whatever that might mean—the employer's incentive to reach an agreement can be outweighed by the incentive to stockpile exhibits for the coming court battle. . .
>
> The potential gains of escaping liability altogether will, in some cases, more than make up for the risks of not engaging in serious attempts at conciliation. And the stronger the EEOC's case on the merits, the stronger the incentive to use a failure-

> to-conciliate defense. We see no persuasive reason to find that a statute meant to encourage voluntary compliance on the part of employers implied a defense that would create such contrary incentives for them.

*EEOC v. Mach Mining, LLC*, 738 F.3d 171, 179 (7th Cir. 2013). Although the Supreme Court ultimately rejected the Seventh Circuit's holding that conciliation was not reviewable, the Court implicitly accepted the rationale above by eliminating the option of dismissal for failure to conciliate. *Mach Mining,* 135 S. Ct. at 1656 ("Should the court find in favor of the employer, the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance.")

This Court should reinstate EEOC's second claim for relief and either allow the case to proceed, or in the event of a finding that EEOC was somehow deficient in its conciliation efforts, stay the case to allow additional conciliation.

C. *To the extent EEOC is "rehashing" arguments, it does so under a new legal framework and with a corrected chronology.*

Defendant faults EEOC for simply "rehashing" prior arguments. It is true that some of the arguments and evidence in the EEOC's Motion to Reconsider are not significantly different than its prior arguments. But that is what one is supposed to do on a Motion for Reconsideration – apply new law to prior set of facts, or point out how the evidence on the record was clearly misconstrued. *See Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir.1995); *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).(" [G]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.") Indeed, Defendant would and did (albeit without pointing to anything specific) fault EEOC for ostensibly raising new arguments that could have been made previously. *See* Resp, at 18 (ECF

56). Thus, this Court should see the "rehashing" argument for what it is -- just another smoke screen to avoid the prospect of having to defend the College's form severance agreements in court.

Plaintiff has identified the Supreme Court's recent decision in *Mach Mining* as an intervening change in controlling law. The review permitted of the conciliation process after *Mach Mining*'s explication of it, reflects that the inquiry is narrow. In the conciliation process, *Mach Mining* teaches that how the EEOC chooses to do what it does in conciliation in terms of when and what to offer, how or even if to respond to counter-offers, when to settle and when to litigate are all matters beyond judicial review. Defendant's argument, for example, that in conciliation, the EEOC only discussed Debbi Potts and did not get into matters relative to the form severance agreements, even if true, represents that part of the conciliation process that *Mach Mining* says is part of the strategic decision making that Congress committed to the discretion of the EEOC. Any judicial review of such strategic decision-making is "judicial review [that] extends too far." *Mach Mining,* 135 S. Ct. at 1655.

Even if this Court concludes that there was a failure of notice or conciliation, *Mach Mining* determines that the remedy is to stay the proceeding and conciliation. Defendant's encouragement in its Response for this Court to disregard *Mach Mining* is one that is poorly grounded in its appreciation of this Court's obligations to apply the law and follow precedent.

Plaintiff has identified clear error and manifest injustice in this Court's conclusion that the form severance agreements were not produced until after the LOD issued. Those form severance agreements were in fact produced to the EEOC "during the investigation," prior to the issuance of the LOD and prior to conciliation as the EEOC represented in its Response to

Defendant's Motion to Dismiss. ECF 10 at pp. 29. It is unfortunate that this continues to be something which Defendant attempts to obfuscate, and indeed misstates in its Response. *See* ECF 56, at pp. 11-12, fn. 3("[The EEOC did not deem this fact significant enough to advise the Court in the briefing on Defendant's Motion to Dismiss." Defendant's logic is peculiar. Although the EEOC did, in fact, point out Defendant's misstatement in Plaintiff's Surreply, it is not a defense in meeting its obligations of candor to the Court for the Defendant to suggest that an opposing counsel failed to point out counsel's misrepresentation to the tribunal. The chronology which figured so prominently in this Court analysis was generated from an erroneous understanding of the relevant facts as they relate to when the EEOC had the form severance agreements which derived from a misleading statement in Defendant's Reply brief. ECF 11, p. 14. (Emphasis in original) ("Indeed, the College provided the form severance agreements <u>in response to the Determination</u>, to show the [court] that the Potts Agreement was not a form severance agreement.") The Court's chronology arose from Defendant's misleading representation and was fundamentally flawed. It lead this Court to conclusions that were error. Knowing the correct fact concerning when the EEOC had the form severance agreements and with the correct chronology helps this Court to understand language in the LOD that must have seemed mystifying without that understanding. Since this Court now knows that Defendant had the correct information about when the EEOC had the form severance agreements, language in the LOD referring to "any other persons adversely affected", "tolling the charge-filing period for employees who have signed the same or similar severance agreements", "revision of the form severance agreement to comply with the terms of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) and to make clear, *inter alia*, that employees retain the right to file

charges and cooperate with the Commission", "communication with Respondent's workforce regarding their right to file charge[s]" and a reference to "other affected persons" is language which must make much more sense to this Court under the circumstances of this case.

*D. EEOC's motion is not untimely.*

Defendant acknowledges that this Court has discretionary authority to reconsider prior interlocutory decisions such as the one at issue here. Resp. at 5 (ECF 56). Likewise, Defendant acknowledge that a change in law or clear error constitute grounds for reconsidering a prior interlocutory order. *Id*. at 9. Notwithstanding those admissions,  Defendant asks this Court to ignore an intervening change in controlling law (*Mach Mining*) and a clearly erroneous chronology based on the theory that EEOC waited too long to file its motion. *See* Resp. at 6 (ECF 56). In making the timeliness argument, however, Defendant expressly recognize that judges are not required to limit their "broad discretion to revisit interlocutory orders." *Id* (*citing Colorado Cas. Ins. Co. v. Brock USA LLC*, 2013 WL 4550416 (D.Colo. Aug 28, 2013). Thus, any case law in which a court may have decided not to reconsider a prior ruling based on concerns about timeliness are in no way binding on this Court.

Here, the EEOC's Motion for Reconsideration is not untimely. Plaintiff EEOC filed its motion within 95 days of the *Mach Mining* decision and many months prior to the trial date in this case. Discovery was, and still is, ongoing. The Supreme Court's decision in *Mach Mining* represented an intervening change in the controlling law.

Additionally, although it has been several months since the Court issued the Order in question, a careful review of this Court's Memorandum Opinion (ECF 16) and Defendant's Reply (ECF 11) shows that Defendant invited this Court's error of chronology. Although

EEOC attempted to point this error in chronology out as part of a proposed Surreply, it was not permitted to do so. *See* Proposed Surreply, at 11 n.3 (ECF 12-1); Order Denying Surreply (ECF 13).

Moreover, Defendant cites just three cases which it claims establishes a short time period for filing Motions for Reconsideration. Resp. at 6-7 (ECF 56). None of them support Defendant's position. The first case actually supports EEOC' position. In *Hunt v. Green* the motion for reconsideration came "long after the court's memorandum opinion order" and shortly before trial. 376 F. Supp. 2d 1043, 1055 (D.N.M. 2005). Nevertheless, the trial court in *Hunt* exercised its discretion to consider the motion even as it characterized the motion as "untimely." *Id*.

The second case cited by College America, *Bradley v. Denver Health,* actually has nothing to do with timeliness. *See Bradley v. Denver Health & Hosp. Auth.,* No. 08-CV-02587-PAB-KMT, 2011 WL 766951, at *1 (D. Colo. Feb. 24, 2011). It is unclear why Defendant cites it or from where Defendant's page references are coming.

Finally, *United States v. Lyman*, involved a Rule 60(b) motion brought eight months after entry of a default judgment. 166 F.3d 349, *4 (10th Cir. 1998)(unpublished). Here, EEOC is not appealing a final order under Rule 60(b), and the agency is nowhere near eight months out from the intervening Supreme Court caselaw it cites as a basis for its motion. Thus, Defendant fails to even provide a case remotely analogous to the present situation.

E.  *Having to defend against a proper claim is not prejudicial.*

In addition to timeliness, Defendant cites prejudice as a basis for denying EEOC's motion.  Resp. at 7-9 (ECF 56).  College America's claim in this respect is nothing short of

*chutzpah.*[1]  Defendant invited this Court's error by leading the Court to believe the EEOC did not have the form severance agreements prior to the issuance of the LOD.  *See* Reply, at pp. 14 (ECF 11).  Plaintiff sought to advise the Court of this error in its proposed Surreply (ECF 12-1, at 11 n. 3).   Defendant, which received a copy of the Surreply and presumably reviewed it, certainly could have filed a further notice advising this Court of its error.  It neglected to do so and this Court's erroneous chronology fatally compromised this Court's analysis of the plain language of the LOD.

Aside from Defendants complacency, this case is presently still in discovery. The trial setting is still nine months out. There is no good reason not to comply with the relevant law and to correct this Court's error occasioned by Defendant's mis-statement.

Moreover, unlike the "parade of horribles" offered up by Defendant, EEOC does not anticipate the type of extensive discovery that Defendant envisions. Recall that EEOC' second claim is a challenge to College America's use of a severance agreement which EEOC contends will prevent people from filing charges or cooperating in EEOC investigations. The relief that EEOC seeks with respect to the form severance agreements is purely equitable and involves voiding the offensive provisions in the agreement, requiring Defendant to reform its agreements, tolling any claims that might have been brought by any aggrieved party during the relevant period, and requiring Defendant to give notice to affected persons. *See* Compl. at 12-14 (ECF 1). As such, the claim can likely be resolved without extensive discovery.

---

[1] Defendant's argument in this respect resembles the proverbial murderer who murders his parents, then shamelessly seeks mercy from the court because he's an orphan.

Even if extensive discovery were required though, that is not an excuse for refusing to reconsider the dismissal of a potentially meritorious claim. And Defendants cite no caselaw to the contrary.

   F.  *Defendant's Alternative Argument Fails.*

Defendant also argues in the alternative, that even if EEOC is found to have engaged in conciliation, there is no independent claim for a violation of the Older Worker's Benefit Protection Act ("OWBPA"). Resp. at 19-20 (ECF 56). In doing so, College America implies that the OWBPA is an independent, stand-alone statute. Response at 19-20. It is not. Rather, the OWBPA amended the ADEA and is an integrated part of the ADEA. *See* 29 U.S.C. §626. Misinterpreting both the ADEA and *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1192 (10th Cir. 1999), Defendant claims *Whitehead* holds the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim and that there is not independent cause of action under the OWBPA Resp. at 19-20.  Defendant neglects to advise the Court that the only ADEA claim at issue in *Whitehead* was based solely on the *first* provision of the OWBPA amendments to the ADEA, 29 U.S.C. § 626(f)(1). 187 F.3d at 1191.  In contrast, the EEOC's Second Claim is premised on the fourth provision of the OWBPA amendments to the ADEA, 29 U.S.C. §626(f)(4). Complaint at ¶¶ 38, 41 (ECF 1). This provision states: "No waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission." 29 U.S.C. §626(f)(4). Because *Whitehead* involved an individual bringing a claim under § 626(f)(1), and this case involves the EEOC suing in the

public interest for a violation of §626(f)(4), *Whitehead* is inapplicable.

Defendant's citation to *Burden v. Isonics Corp.*, No. 09-CV-01028-CMA-MJW, 2009 WL 3367071 (D. Colo. Oct. 15, 2009) is not helpful to its argument either. *Burden*, like *Whitehead*, is distinguishable because it was a private action brought by a private plaintiff under 29 U.S.C. § 626(f)(1), not a public enforcement action brought by the EEOC under 29 U.S.C. § 626(f)(4).2009 WL 3367071 at *1. Moreover, the plaintiff in *Burden* conceded the claim under 29 U.S.C. § 626(f)(1) was inappropriate. 2009 WL 3367071 at *3.  Here, the EEOC makes no such concession about its claims under 29 U.S.C. § 626(f)(4) or the preclusive effect of *Whitehead*.[2]

## CONCLUSION.

The Supreme Court's decision on April 29, 2015 in *Mach Mining* represented an important change in the law, both with respect to the standards for reviewing conciliation challenges and the available remedies for any identified failure to conciliate. Additionally, Defendant has agreed that this Court was in error in its chronology. EEOC respectfully contends that this Court's analysis, which relied significantly on that erroneous chronology, would have been very different under correct facts. Combined, the new law and the clear factual error warrant reconsideration of the Court's prior Order (ECF 16) and reinstatement of EEOC's second claim for relief. Defendant fails to make any convincing arguments otherwise.

DATED September 18, 2015.

Respectfully submitted,

---

[2] For addition discussion of this issue, the EEOC refers the Court to its prior Response to the Motion to Dismiss. ECF 10, at 13-20, 38.

*/s/  William Hobson*
Trial Attorney
EEOC-Phoenix District Office
330 N. Central, Suite 690
Phoenix, Arizona 85012
(602) 640-5061 (phone)
(602) 640-5009 (fax)
E-Mail: william.hobson@eeoc.gov

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on September 18, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Raymond W. Martin, Esq.
Craig R. May, Esq.
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-4647
Telephone: 303.244.1800
martin@wtotrial.com
may@wtotrial.com

Attorneys for Defendant

*/s/ William Hobson*
William Hobson