IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-01232-LTB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

COLLEGEAMERICA DENVER, INC., n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., d/b/a COLLEGEAMERICA,

    Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

    This case is before me on Plaintiff Equal Opportunity Employment Commissions's (the "EEOC") Motion for Reconsideration of Court's Order Dismissing Plaintiff's Second Claim for Relief [Doc # 50]. After consideration of the motion, all related pleadings, and the case file, I deny the EEOC's motion.

**I. Background**

    By Order dated December 2, 2014 (the "Order"), I granted Defendant CollegeAmerica Denver, Inc.'s ("CollegeAmerica") motion to dismiss the EEOC's Second Claim for Relief. *See* Doc # 16. This claim alleged that the Separation Agreements that CollegeAmerica provided to the EEOC in connection with the EEOC's investigation of Debbi Potts' charges of discrimination denied employees other than Potts the full exercise of their rights under the Age Discrimination in Employment Act (the "ADEA") and interfered with the statutorily assigned

responsibility of the EEOC and FEPAs to investigate charges of discrimination in violation of Section 7(f)(4) of the ADEA, 29 U.S.C. § 626(f)(4). *See* Complaint, Doc # 1, ¶¶ 41-42. Dismissal of this claim was based on my conclusion that I had no jurisdiction over this claim as a result of the EEOC's failure to satisfy the ADEA requirements of notice and conciliation.

The EEOC now asks me to reconsider the dismissal of its Second Claim for Relief based on the subsequent United States Supreme Court case of *Mach Mining, LLC v. EEOC,* ___ U.S. ___, 135 S. Ct. 1645 (2015) and a purportedly erroneous factual finding made in the Order.

## II. Standard of Review

Under Rule 54(b), Fed. R. Civ. P, a district court has discretionary authority to revise its interlocutory orders prior to the entry of final judgment adjudicating all of the claims and all of the parties' rights and liabilities. *Anderson v. Deere & Co.,* 852 F.2d 1244, 1246 (10th Cir. 1988). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to reconsider may not be used "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

## III. Analysis

### A. The Timeliness of the EEOC's Motion for Reconsideration

Before getting to the substance of the EEOC's arguments, I first address CollegeAmerica's argument that the EEOC's motion should be denied on the basis that it is untimely.

The Order is dated December 2, 2014. Thus, the EEOC inexplicably waited eight months to file its motion for reconsideration based in part on a purportedly erroneous factual finding that was evident at the time the Order was issued. In fact, the EEOC noted this error, albeit in a brief footnote, in a proposed surreply it sought to file to CollegeAmerica's motion to dismiss. *See* Doc #12, p. 11 n. 3. In addition, the EEOC did not file its motion for reconsideration for more than three months after the Supreme Court issued its decision in the *Mach Mining* case which the EEOC argues dictates the reversal of the dismissal of its Second Claim for Relief.

Tellingly, the EEOC fails to offer any explanation for the lengthy delay in the filing of its motion for reconsideration. Not only is the EEOC's wholly unexplained delay in filing its motion to reconsider unreasonable in and of itself, but it has also placed CollegeAmerica in the untenable position of potentially having to start the discovery process which is nearing completion all over again. Under these circumstances, I deny the EEOC's motion as untimely. Nonetheless, in the absence of Tenth Circuit authority recognizing such a denial as an appropriate exercise of my discretionary authority under Rule 54(b), I will proceed to address the EEOC's substantive arguments.

**B. The EEOC's Knowledge of the Separation Agreements**

In the Order, I found that the EEOC was unaware of the existence or terms of the Separation Agreements at the time it issued its December 20, 2013 Letter of Determination. Based in part on this finding, I proceeded to find that the EEOC could not rely on the Letter of Determination to satisfy the notice and conciliation requirements of the ADEA with respect to the Separation Agreements. The EEOC argues that this finding was in error and directs my attention to their statement that CollegeAmerica provided the EEOC with copies of the

Separation Agreements *during the investigation* of Potts' three charges of discrimination. *See also* Complaint, ¶ 24 ("In responding to the charges of discrimination, CollegeAmerica provided EEOC copies of [the Separation Agreements] ...").

Though it was not clear from its response to CollegeAmerica's motion to dismiss, the EEOC has now, through reference to several exhibits that must be viewed in conjunction with one another, affirmatively established that CollegeAmerica first provided copies of the Separation Agreements to the EEOC in May of 2013, or well before the EEOC issued the Letter of Determination. CollegeAmerica does not dispute that this was the case but argues that this fact should not alter my previous analysis. I agree.

The Letter of Determination specifically references Potts as the charging party and her three charges of discrimination against CollegeAmerica and advises CollegeAmerica that the EEOC had determined that CollegeAmerica discriminated against Potts in violation of the ADEA and sought to use an unlawful and invalid waiver to interfere with Potts' protected rights under the ADEA. *See* Ex. 5 to Motion to Dismiss. Although the Letter of Determination goes on to request that CollegeAmerica, among other things, revise its form severance agreement to comply with the ADEA and make it clear that employees retain the right to file charges and cooperate with the EEOC, *id.,* it does not reference the Separation Agreements in the section stating its findings of unlawful practices by CollegeAmerica.

In response to the Letter of Determination, CollegeAmerica sent the EEOC a letter in which it noted the requested change to its "form severance agreement" and clarified that the agreement Potts signed following her resignation was distinguishable from its form severance agreements, *i.e.* the Separation Agreements. *See* Ex. 7 to Motion to Dismiss. Thus, not only did

the Letter of Determination fail, on its face, to provide CollegeAmerica with clear notice that the Separation Agreements were part of the EEOC's investigation, but it is apparent from CollegeAmerica's subsequent communications that it did not understand that to be the case. After receiving CollegeAmerica's correspondence, there is no evidence that the EEOC revised or supplemented the Letter of Determination or otherwise notified CollegeAmerica that the scope of its investigation had expanded beyond Potts' charges of discrimination to include the Separation Agreements.

Furthermore, the fact that the EEOC had copies of the Separation Agreements well before it issued the Letter of Determination does not alter my finding that there is no evidence that the Separation Agreements were addressed at the parties' conciliation meeting or my conclusion that this meeting therefore likewise failed to provide the requisite notice to CollegeAmerica that these Agreements were part of the EEOC's investigation. As for whether the EEOC engaged in the requisite conciliation regarding the Separation Agreements, I next consider whether the *Mach Mining* case dictates a different conclusion than that set forth in the Order.

**B. The *Mach Mining* Case**

In *Mach Mining,* the Supreme Court considered whether and to what extent courts could review the EEOC's efforts at conciliation under Title VII. *Mach Mining, supra,* 135 S.Ct. at 1649 & 1651. After determining that a court may review the EEOC's conciliation efforts, the Supreme Court held that the proper scope of this review is limited to determining whether the EEOC fulfilled its obligation to "inform the employer about the specific allegation" by means which "properly describes both what the employer has done and which employees (or what class

of employees) have suffered as a result" and to "engage the employer in some form of discussion ... so as to give the employer an opportunity to remedy the alleged discriminatory practice." *Id.* at 1653 & 1655-56.

Notably, the *Mach Mining* case does not address Title VII's notice requirement which is comparable to that of the ADEA, *compare* 42 U.S.C. § 2000e-5(b) *with* 29 U.S.C. § 626(d)(2), and on which I partly relied in dismissing the EEOC's Second Claim for Relief. To the extent that notice is referenced in this case, it is only with respect to the fulfillment of the EEOC's duty to attempt conciliation of a discrimination charge. *Id.* at 1652 & 1655-56.

Moreover, the EEOC's conciliation efforts with respect to the Separation Agreements remain inadequate under the standards set forth in *Mach Mining*. Specifically, as set forth above, the EEOC failed to provide adequate notice to CollegeAmerica that the Separation Agreements were part of the EEOC investigation and findings of unlawful practices by CollegeAmerica. There is likewise no evidence that the Separation Agreements were part of the parties' discussions so as to give CollegeAmerica an opportunity to voluntarily revise them.

In *Mach Mining,* the Supreme Court included dictum that when a court finds in favor of an employer on the question of whether the requisite conciliation occurred, "the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance." *Id.* at 1656. This course of action, however, is not mandated under the circumstances of this case. As previously noted, the Supreme Court's analysis in *Mach Mining* is limited to Title VII's requirement of conciliation. In this case, I have concluded that the EEOC failed to satisfy both the notice and conciliation requirements of the ADEA.

A stay pending further conciliation efforts is also ill-suited to this case because, as a result of the EEOC's protracted delay in filing the current motion, the parties have proceeded with discovery relating to the remaining claim of retaliation against Potts and set deadlines accordingly. Allowing the EEOC to pursue its Second Claim for Relief after fulfilling the requirements of notice and conciliation would require additional discovery and could significantly delay resolution of the pending retaliation claim. I therefore conclude that dismissal of the EEOC's Second Claim for Relief is the appropriate remedy for the EEOC's failure to satisfy the ADEA's requirements of notice and conciliation with respect to this claim.

**C. CollegeAmerica's Alternative Argument for Dsimissal of the EEOC's Second Claim for Relief**

Because I dismissed the EEOC's Second Claim for Relief for lack of jurisdiction, I declined to address in my Order CollegeAmerica's alternative argument that this claim fails as a matter of law. I do so now though to further demonstrate that the dismissal of this claim was, and remains, proper.

In *Whitehead v. Oklahoma Gas & Elec. Co.,* 187 F.3d 1184 (10th Cir. 1999), the Tenth Circuit considered whether the Older Workers Benefit Protection Act (the "OWBPA"), which amended the ADEA and added provisions regarding the waiver of claims including Section 7(f)(4), "provide[s] plaintiffs with an independent cause of action for affirmative relief, other than declaratory or injunctive relief to negate the validity of the waiver, ***as it applies to an ADEA claim.***" *Id.* at 1191 (emphasis added). Relying on the Supreme Court's interpretation that the OWBPA "governs the *effect* under federal law of waivers or releases *on ADEA claims,*" the Tenth Circuit concluded that the OWBPA "simply determines whether an employee has, as a matter of law, waived the right to bring a[n] ... ADEA claim" and "does not, by itself, determine

7

in the first instance whether age discrimination has occurred." *Id.* at 1192-93.  The Tenth Circuit further concluded that the district court properly dismissed plaintiff-appellants' claim that a violation of the OWBPA was sufficient, by itself, to establish age discrimination under the ADEA.  *Id.* at 1193.

The EEOC asserts that this case is distinguishable from *Whitehead* because it involves a claim under Section 7(f)(4) of the OWBPA rather than Section 7(f)(1) which was at issue in *Whitehead*.   Section 7(f)(4) reads in its entirety as follows:

> No waiver agreement may affect the [EEOC's] rights and responsibilities to enforce this chapter. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the [EEOC].

There is no indication in the text of Section 7(f)(4) that it creates a independent cause of action, and the EEOC cites no case law holding that it does.

In *Wastak v. Lehigh Valley Health Network,* 342 F.3d 281(3rd Cir. 2003), the Third Circuit analyzed the language, structure, and legislative history of Section 7(f)(4) of the OWBPA at length in analyzing the plaintiff's argument that this provision rendered his otherwise valid and enforceable waiver of his right to bring an ADEA claim void.  The Third Circuit concluded that "[a]t most, the statutory language [of Section 7(f)(4)] can be read to mean only that a provision that purports to, for example, alter the EEOC's rights to pursue and investigate a claim that is filed, is unenforceable."  *Id.* at  289.  The Third Circuit proceeded to find that there was no violation of Section 7(f)(4) because the plaintiff did not allege that the challenged release affected the EEOC's rights and responsibilities or that his employer used it to justify interfering with his protected right to file an EEOC charge which he in fact did.

Here, Potts did not sign any of the Separation Agreements that are the basis of the EEOC's Second Claim for Relief and so her remaining claim for retaliation under the ADEA cannot be used to support this claim.  Furthermore, the EEOC has failed to identify any instance in which the waiver provisions in the Separation Agreements affected its rights and abilities to enforce the ADEA for the benefit of any other CollegeAmerica employee or were used to justify interfering with an employee's right to file an EEOC charge or participate in an EEOC investigation or proceeding.  Thus, even if Section 7(f)(4) of the OWBPA creates an independent cause of action under the ADEA which is doubtful in view of the Tenth Circuit's analysis in *Whitehead*, the EEOC's Complaint fails to adequately allege a violation of this provision of the OWBPA.  I therefore conclude that even if I had jurisdiction over the EEOC's Second Claim for Relief, this claim would fail as a matter of law.

## IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the EEOC's Motion for Reconsideration of Court's Order Dismissing Plaintiff's Second Claim for Relief [Doc # 50] is DENIED.

Dated: October   23  , 2015 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE