## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv- 01232-LTB-SKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

v.

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA,

     Defendant.

---

## AMENDED CONSENT DECREE

---

## I.  RECITALS

1.     The Equal Employment Opportunity Commission ("EEOC"), an agency of the United States of America, filed the above-captioned lawsuit against CollegeAmerica Denver, Inc. n/k/a Center for Excellence in Higher Education, Inc., d/b/a CollegeAmerica (herein, "CollegeAmerica").

2.     The EEOC's remaining claim[1] in this action alleges that CollegeAmerica violated Section 7(f)(4) of the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers' Benefits Protection Act of 1990 ("OWBPA"), 29 U.S.C. § 626(f)(4), when CollegeAmerica entered into a certain agreement with its former employee, Debbi Potts, on

---

[1] The EEOC's Second and Third Claims for Relief have previously been resolved. (ECF Nos. 16, 64, and 137.) Only the EEOC's First Claim for Relief is now pending on remand. (ECF Nos. 168, 169.)

1

September 1, 2012 (the "Agreement" (ECF No. 1-1)), and thereafter brought suit against Ms. Potts in Larimer County Court, Larimer County, Colorado Case No. F13C31608 (the "Larimer County Action"), alleging that Ms. Potts had breached that Agreement and seeking money damages from her.

3.      The parties to this Consent Decree ("Decree") are the Plaintiff EEOC and the Defendant CollegeAmerica (referred to collectively herein as "the Parties").  The Charging Party, Ms. Debbi Potts, is a party to this Decree only with respect to the terms of Paragraphs 14 and 19.

4.      The Parties desire to avoid further litigation by settling the remaining claim in this action, the EEOC's First Claim for Relief, by means of this Decree.

5.      Other than by the terms expressly included herein, this Decree does not alter any party's rights and does not concede or imply any party's position(s) as to the underlying facts and allegations.  By entering into this Decree, CollegeAmerica does not admit to any violation of law or wrongdoing whatsoever.  By entering into this Decree, the EEOC does not approve or endorse the legality of any actions or conduct by CollegeAmerica.  By agreeing to Paragraph 19, Ms. Potts does not admit to any liability or wrongdoing; nor does she endorse or approve any actions or conduct by CollegeAmerica.

6.      The Parties agree and stipulate to the jurisdiction of this Court and its power to enter this Decree.

7.      This Decree is final and binding upon the Parties as to the issues resolved, as well as upon their successors and assigns.

8.      For purposes of resolving the remaining disputed claim, the Parties jointly request this Court to adjudge as follows:

*IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:*

## II.  JURISDICTION

9.       The Court finds that this Court has jurisdiction over the Parties and the subject matter of this lawsuit.  This Decree conforms to the Federal Rules of Civil Procedure and the ADEA, and does not derogate from the rights and privileges of any Party or Charging Party.

## III. ISSUES RESOLVED

10.       This Decree fairly resolves the issues alleged by the EEOC and constitutes a complete resolution of the EEOC's remaining claim under the ADEA and OWBPA, arising from Ms. Potts' Charges of Discrimination filed with the EEOC (Charge Nos. 32K-2013-00047; 846-2013-18672; and 541-2013-01485), and alleged in the First Claim for Relief asserted in the EEOC's Complaint and Jury Trial Demand ("Complaint" (ECF No. 1)).

11.       CollegeAmerica and its officers, agents, employees, and successors shall cooperate in the implementation of this Decree.

## IV. GENERAL PROVISIONS

12.       **Compliance with Federal EEO Laws —** Nothing in this Decree shall be construed to limit or reduce CollegeAmerica's obligation to comply with the statutes and regulations enforced by the EEOC, including the ADEA and OWBPA, Title VII of the Civil Rights Act of 1964; the Americans With Disabilities Act; the Equal Pay Act; and the Genetic Information Nondiscrimination Act.

13.       **Severability –** If one or more provisions of this Decree is rendered unlawful or unenforceable by act of Congress or by decision of this Court or another court, the Parties shall

attempt to agree upon what amendments to this Decree, if any, are appropriate to effectuate the purposes of this Decree.  In any event, the unaffected provisions will remain enforceable.

### V.  RELIEF ENTERED AND TERMS OF SETTLEMENT

**A.    CollegeAmerica's Obligations and Commitments:**

14.    **Terms Related to the Larimer County Action**.

a.  CollegeAmerica agrees and commits to take no further actions in the Larimer County Action.  This includes, without limitation, taking no appeal, and filing no post-trial motions.

b.  CollegeAmerica waives and abandons any and all claims to recover costs and/or attorney's fees arising from the Larimer County Action.  This includes, without limitation, that CollegeAmerica hereby confirms that the satisfaction of judgment filed in the Larimer County Action on or around June 17, 2019 will not be withdrawn and constitutes a final satisfaction of all Ms. Potts' potential liabilities in the Larimer County Action.  CollegeAmerica also specifically waives and abandons any right to recover any costs in the Larimer County Action and will not require payment of or take any action to collect any costs, including those awarded by the Larimer County Court on or around June 24, 2019.  CollegeAmerica shall, within thirty (30) days of Court approval of this Decree, file an additional Satisfaction of Judgment in the Larimer County Action recording the costs awarded on or around June 24, 2019 as fully satisfied, without requiring any payment from Ms. Potts.

c.  CollegeAmerica shall take no future action(s) to enforce any part of the Agreement

4

in any forum and shall treat the Agreement as terminated as of the entry of this

Decree.   This commitment by CollegeAmerica is contingent on mutual

performance by Ms. Potts of the commitment in Paragraph 19, *infra*.

15. **Terms Related to Interpretation(s) of the Agreement**.

   a. The Agreement, a copy of which is docketed at ECF No. 1-1, included, among

others, the following terms:

Debbi Potts agrees to:

1) Commencing on September 1, 2012, to refrain from personally (or through the use of any third party) contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance that shall bring harm to CollegeAmerica, Denver Inc. and any of its related companies.  **[Herein, the "First Paragraph."]**

2) To direct any complaints or issues against CollegeAmerica Denver, Inc. or its related entities that may arise with disgruntled staff, students, or the public at large to CollegeAmerica's toll free compliant [*sic*] number 1-877-402-0954.  **[Herein, the "Second Paragraph."]**

3) To not intentionally with malicious intent (publicly or privately) disparage the reputation of CollegeAmerica, Denver Inc. or any of its related entities.  **[Herein, the "Third Paragraph."]**

   b. CollegeAmerica acknowledges and states all of the following with respect to the terms of the Agreement.

    i. As written, the First Paragraph of the Agreement is unenforceable under Section 7(f)(4) of the ADEA/OWBPA because it purports to prohibit the filing of a charge of discrimination with the EEOC,[2] and to prohibit cooperation with

---

[2]    As used in Part V of this Decree, all references to the EEOC, and to filing charges with, communicating with, and/or participating in investigations or proceedings conducted by the EEOC, also include and apply equally to the filing of charges with, communications with, and/or

an investigation or proceeding by the EEOC. This paragraph is therefore unenforceable to the extent it purports to restrict Ms. Potts' ability to file a charge(s) and to freely communicate with the EEOC.

ii.    Any attempt in the future to enforce the Agreement's prohibition against filing a charge or communicating with the EEOC or asserting any interpretation of the Agreement as restricting or intruding on Ms. Potts' ability to freely communicate and cooperate with the EEOC is prohibited. To the extent CollegeAmerica took any position(s) in litigation of the Larimer County Action that could be interpreted as asserting that Ms. Potts breached the Agreement by filing charges or by any communications with the EEOC, such position(s) has been withdrawn by CollegeAmerica and will not be asserted again in the future.

iii.    To the extent that CollegeAmerica previously interpreted the Second Paragraph of the Agreement to require Ms. Potts to provide notice to CollegeAmerica prior to filing a charge with the EEOC, CollegeAmerica withdraws that position(s) and will not reassert that position(s) in the future. CollegeAmerica acknowledges the provisions of Section 7(f)(4) and 29 C.F.R. § 1625.22(i).

iv.    CollegeAmerica has acknowledged and reaffirms that the Third Paragraph of the Agreement does not restrict Ms. Potts' communications with the EEOC under Section 7(f)(4) and 29 C.F.R. § 1625.22(i)(3).

---

investigations or proceedings conducted by any state government Fair Employment Practices Agency ("FEPA") and/or any Tribal Employment Rights Office ("TERO").

6

> v.    CollegeAmerica affirmatively states that neither CollegeAmerica nor Ms. Potts understood that any provision of the Agreement violated any statute or regulation when CollegeAmerica and Ms. Potts negotiated the Agreement.

16.    **Relief Governing Future Agreements.**  For a period of three years following entry of the Decree, any separation and/or severance contracts, or other written agreements that CollegeAmerica enters into with a current or former employee that include any release or waiver of any employment claims, any non-disparagement commitment by the employee, any agreement by the employee to keep the terms of the agreement confidential, or any other waiver by the employee of rights protected by any federal employment discrimination statute(s) (hereinafter collectively "Waiver Agreements") shall include disclaimer language materially providing that the contract or agreement is not intended to and does not prevent the employee from contacting, communicating with, providing information to, or filing a charge with the EEOC and that no terms of the contract or agreement are intended to or may be interpreted to restrict or otherwise interfere with the right and/or obligation to contact, cooperate with, provide information to, or participate in any investigation conducted by any government agency or commission, including the EEOC. This disclaimer language in each agreement shall be clearly set out in a separate paragraph that does not include unrelated terms or state any limitations on the employee's rights.  This provision applies only to agreements that waive an employee's rights under statutes enforced by the EEOC, including Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act; the Genetic Information Nondiscrimination Act; the Age Discrimination in Employment Act; and the Equal Pay Act.

17.   **Enforcement Provisions**.

    **a.**   <u>Notification of Rights</u>:  Within 60 days of entry of this Decree, CollegeAmerica shall include in its anti-discrimination policy(ies) language materially providing that if any employee has a complaint that either CollegeAmerica's policies or any federal employment law has been violated, or believes they have experienced workplace discrimination or other unlawful employment practices, they have the right to file a complaint with CollegeAmerica and/or with the EEOC and that no policy or agreement made with CollegeAmerica can alter or restrict the employee's rights to file charges with the EEOC and to freely communicate with the EEOC. CollegeAmerica shall certify in writing to the EEOC that this addition has been completed within 60 days of the entry of the Decree.

    **b.**   <u>Contract Disclosure & Review Procedures</u>:

        i.   Within thirty (30) days following entry of this Decree, the Parties will agree upon and select a third-party neutral monitor (the "Monitor") and will notify the Court of the selection of the Monitor and his or her identity.  In the event a replacement Monitor must be selected in the future, the parties will select and agree on the replacement within 45 days of learning of the need for the replacement.  If the parties cannot agree upon an initial or replacement Monitor, they will submit the names of alternative proposed Monitors to the Court for the Court's selection.

        ii.   CollegeAmerica shall provide copies of all Waiver Agreements subject to Paragraph 16 with separating employees to the Monitor for a period of three years as follows.  On the date nine (9) months following the final approval of the Court

of this Decree, or the first business day thereafter, CollegeAmerica shall provide to the Monitor copies of all Waiver Agreements subject to Paragraph 16 that CollegeAmerica entered into during the preceding nine (9) months (*i.e.*, beginning from the date of final Court approval of this Decree).  CollegeAmerica shall then provide to the Monitor copies of all Waiver Agreements subject to Paragraph 16 entered into during each of the next two 12-month periods, on the dates when each of those 12-month periods end, *i.e.*, on the dates falling 21 months and 33 months after final Court approval of this Decree, respectively (or the next following business day). The Monitor will, in each instance, provide notice to counsel for the EEOC confirming his or her receipt of such agreements and the number received.

iii.    The Monitor will review the submitted agreements (1) to confirm compliance with the disclosure obligation stated in Paragraph 16 of this Decree, above, and (2) to confirm that the agreements do not include the terms contained in Paragraph 1 of the Agreement, do not include a term requiring the signing employee(s) to notify CollegeAmerica of any discrimination complaint as a condition precedent to the employee's right to file a charge with the EEOC, and do not include any non-disparagement commitment by the employee that purports to restrict the employee's communications with the EEOC.  This Decree does not prohibit or affect any non-disparagement contract term that does not restrict or purport to restrict the employee's communication with the EEOC.

iv.    The Monitor will provide reports of his or her findings simultaneously to the EEOC and CollegeAmerica, within 60 days of each receipt of agreements

from CollegeAmerica. The report(s) will summarize the number and dates of agreements reviewed, will describe any follow-up communications with CollegeAmerica or its employees or any other actions taken by the Monitor to confirm compliance with this Decree, and will identify any instances of non-compliance with this Decree. If the Monitor identifies any non-compliance or raises other concerns, his or her report to the Parties will describe those issues. Each report will set a schedule and procedure for the Parties to provide any inquiries or responses to the report.

v.    CollegeAmerica shall cooperate with the Monitor, including responding to any questions or inquiries the Monitor may have and verifying that the Monitor has received all agreements subject to review. The Monitor will have the right to separately contact and communicate directly with current or former employees of CollegeAmerica in the event of identified concerns of non-compliance related to one or more contracts or agreements. If the Monitor believes that CollegeAmerica has not adequately responded to his or her concerns, he or she will have discretion to notify the EEOC of the contract or agreement at issue and the identity of the employee or former employee.

vi.    All costs of, and payments to, the Monitor will be borne by CollegeAmerica.

18.    **Training:** CollegeAmerica shall provide one-time training regarding non-waivable employee rights related to charge-filing and communications with the EEOC. This training shall specifically cover compliance with the OWBPA and its waiver provisions. This training shall be provided to all employees and/or officers who have authority to sign on behalf of

CollegeAmerica any Waiver Agreements subject to Paragraph 16 above.  The training shall be provided by a qualified outside vendor or an attorney who was not previously involved in this litigation and who has not represented CollegeAmerica in any other matter within the last five years.  The training shall be completed within 60 days of the entry of the Decree and CollegeAmerica will provide written certification to counsel for the EEOC upon its completion.

**B.    Ms. Potts' Obligations:**

19.    Ms. Potts agrees and commits to take no further action(s) in the Larimer County case ("Larimer County Action").  This includes, without limitation, taking no appeal, and filing no post-trial motions.  This commitment by Ms. Potts is subject to mutual performance by CollegeAmerica of its obligations in Paragraph 14, *supra*.  Ms. Potts is represented by counsel in the Larimer County Action and advised by the same counsel in this action.

**VI.  RETENTION OF JURISDICTION AND ENFORCEMENT OF DECREE**

20.    This Court shall retain jurisdiction of this cause for purposes of compliance with this Decree and entry of such further orders or modifications as may be necessary or appropriate to protect the Court's authority and to effectuate equal employment opportunities for employees**.**

21.    There is no private right of action to enforce CollegeAmerica's obligations under the Decree or Ms. Potts's obligations under Paragraph 19, *supra*, and only the EEOC, or its successors or assigns, may enforce compliance herewith.

22.    The EEOC may petition this Court for an order to require compliance with this Decree.  Should the Court determine that CollegeAmerica has not complied with this Decree, appropriate relief, including extension of this Decree for such period as may be necessary to remedy its non-compliance, may be ordered**.**

11

## VII.  NON-DEROGATION OF EEOC RIGHTS

23.     Nothing in this Decree shall be construed to preclude the EEOC from bringing suit to enforce this Decree in accordance with the enforcement provisions of Section VIII ("Enforcement of Consent Decree").

24.     The EEOC reserves all rights to proceed with respect to matters not covered in this Decree and to secure relief on behalf of aggrieved persons not covered by this Decree.  This reservation is subject to, and does not alter the scope or finality of, the Court's previously-entered Orders and Judgment as to the Second and Third Claims for Relief.  (ECF Nos. 16, 64, and 137.)

25.     Charges Filed After the Effective Date:  Any charges alleging discrimination or unlawful employment practices by CollegeAmerica that are filed with the EEOC and/or any FEPA or TERO after the effective date of this Decree will be processed by the EEOC in accordance with its standard procedures.

## VIII.  ENFORCEMENT OF CONSENT DECREE

26.     **Enforcement by EEOC**.   If the EEOC concludes in good faith that CollegeAmerica has breached this Decree, the EEOC may petition this Court to obtain compliance with the Decree.  Prior to filing such a petition, the EEOC will seek informal resolution by notifying counsel for CollegeAmerica in writing of the alleged breach and providing CollegeAmerica thirty (30) days to try to reach a resolution of the issue and/or by responding to any Monitor's report and engaging CollegeAmerica and the Monitor as contemplated in Paragraph 17, *supra*.

27.     **Expedited proceedings**.  The provisions of this section do not prevent the EEOC from bringing an issue before the Court if the EEOC makes a determination in good faith that the

circumstances require immediate Court action.

## IX.  EEOC AUTHORITY

28.      With respect to matters or charges outside the scope of this Decree, this Decree in no way limits the powers of the EEOC to seek to eliminate employment practices or acts made unlawful by any of the statutes over which the EEOC has enforcement authority, and do not arise out of the claims asserted in this lawsuit.  Nothing in this Decree alters the scope or finality of the Court's previously-entered Orders and Judgment as to the EEOC's Second and Third Claims for Relief.  (ECF Nos. 16, 64, and 137.)

## X.  COSTS AND ATTORNEY'S FEES

29.      Each party shall be responsible for and shall pay all of its own costs and attorneys' fees in this action and all claims and defenses raised in it.  The parties stipulate that under the terms of this Decree, neither party is the prevailing party for purposes of Fed. R. Civ. P. 54(d), 29 U.S.C. § 216(b), and/or 42 U.S.C. § 1988, and CollegeAmerica specifically withdraws any claim or entitlement to recover or be paid costs previously claimed by CollegeAmerica and awarded by the Clerk of Court prior to the remand from the Court of Appeals.  (*See* ECF Nos. 140, 149.)

## XI.  MISCELLANEOUS PROVISIONS

30.      **Amendment**.  By mutual written consent of all the Parties hereto, and approval of the Court, this Decree may be amended in the interest of justice and fairness in order to execute the provisions involved.

31.      **Implementation**.  CollegeAmerica shall take all steps that may be necessary to fully effectuate the terms of this Decree.

13

## XII.  NOTICE

32.      Unless otherwise indicated, any notice, report, or communication required under

the provisions of this Decree shall be sent by certified mail, postage prepaid, as follows:

Nathan D. Foster                              Raymond W. Martin, Esq.
Rita Byrnes Kittle                            Wheeler Trigg O'Donnell LLP
EEOC Denver Field Office                      370 Seventeenth Street, Suite 4500
303 E. 17th Avenue, Suite 410                 Denver, Colorado 80202
Denver, CO 80203

14

## XIII. SIGNATURES

44.      The parties agree to the entry of this Decree subject to final approval by the Court.

**SO ORDERED this 15th day of November, 2019.**

BY THE COURT:

_s/Lewis T. Babcock_____
Hon. Lewis T. Babcock
United States District Judge

15

By Consent:

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

By: _____

Date: _11/11/2019_

_____
Debbi Potts
Charging Party

Date:
_11/11/2019_

Approved as to form:

_____
Nathan D. Foster
Trial Attorney
EEOC Denver Field Office
303 E. 17th Ave, Suite 410
Denver, CO 80203
*Attorney for Plaintiff EEOC*

COLLEGEAMERICA DENVER, INC.,
n/k/a CENTER FOR EXCELLENCE IN
HIGHER EDUCATION, INC.,
d/b/a COLLEGEAMERICA

By: _____
Eric S. Juhlin, CEO

Date: _10/31/2019_

_____
Raymond W. Martin
Wheeler Trigg O'Donnell LLP
370 Seventeenth St., Suite 4500
Denver, CO 80202
*Attorney for Defendant*

*This Agreement may be executed in numerous counterparts, all of which shall be considered one and the same agreement. For purposes of this Agreement, facsimile or electronic signatures shall be considered original signatures.*